| | |
|---|---|
| Helen Davis Chaitman (hdc-4266) | Return Date: May 3, 2010 |
| BECKER & POLIAKOFF, LLP | Reply Date: April 26, 2010 |
| 21 East Front Street - Suite 400 | |
| Redbank, New Jersey 07701 | |
| (908) 303-4568 | |
| hchaitman@becker-poliakoff.com | |
|     -and- | |
| 45 Broadway - 11th Floor | |
| New York, New York 10006 | |
| (212) 599-3322 | |
| *Attorneys for Plaintiffs* | |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------
**LISSA CANAVAN, et al.,**

    **Plaintiffs**                         **HON. FAITH S. HOCHBERG**

**vs.**                                      **CIVIL ACTION NO. 10-954 (FSH)**

**STEPHEN HARBECK, et al.,**

    **Defendants.**
---------------------------------------------------------------

**PLAINTIFFS' OPPOSITION TO**
**MOTION TO SUBSTITUTE THE UNITED STATES AS A PARTY**

Plaintiffs submit this memorandum of law in opposition to the motion of Defendants David G. Nason and David J. Stockton (the "Alleged Federal Defendants") for an order substituting the United States as a party defendant in their place pursuant to the Westfall Act, 28 U.S.C. §§ 2671-2680. The motion should be denied because the Westfall Act is inapplicable to the conduct alleged in the complaint. Moreover, while the Alleged Federal Defendants suggest that Plaintiffs' remedy is to sue the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, the United States is immune from suit for the conduct alleged

in the complaint.  Thus, if the motion of the Alleged Federal Defendants were granted, the Plaintiffs would have no remedy for their fraudulent conduct.

As discussed more fully below, the Plaintiffs' are entitled to an evidentiary hearing (after limited discovery is completed) at which they will show that the substitution is improper because the Alleged Federal Defendants were not acting within the scope of their federal employment with respect to the conduct alleged in the complaint and because the claims against them are a recognized exception to the Westfall Act.

## THE ALLEGED FEDERAL DEFENDANTS' POSITION

The Alleged Federal Defendants claim that, under the Westfall Act, suits against the United States are the exclusive remedy of persons with claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their employment.  *See* 28 U.S.C. § 2679(b)(1). (Doc. 24-1, at 2).  When the Attorney General certifies, pursuant to 28 U.S.C. § 2679(d)(2), that a federal employee was acting within the scope of his employment at the time the claim at issue arose, any civil action that arises from the employee's conduct must be deemed to be against the United States and the United States is substituted for the individually named-defendant. (Doc. 24-1, at 2).  The Attorney General has delegated this responsibility to any Director of the Torts Branch, Civil Division, Department of Justice, under 28 C.F.R. § 15.4, and, under this authority, the Director of the Torts Branch has made such a certification for the Alleged Federal Defendants.  According to the Alleged Federal Defendants, this terminates their involvement in and responsibility for the intentional torts alleged in the complaint. (Doc. 24-1, at 2).

Under this theory, it would be impossible to recover against a government employee for intentional torts unless the Attorney General certified that the employee was acting outside the

2

scope of his employment.  This is particularly applicable to the present case where fraud is alleged because the FTCA does not waive sovereign immunity for fraud.  In fact, the FTCA specifically provides that there is no waiver of sovereign immunity here:  "The provisions of this chapter and section 1346(b) of this title shall not apply to (h) any claim arising out of . . . misrepresentation, deceit . . . ."  28 U.S.C. § 2680(h).

According to the Alleged Federal Defendants, the Attorney General's designee can unilaterally make the required certification and the lawsuit against the individuals magically disappears, no matter what is alleged against them.  In this "recasting of claims" process, the Attorney General, with an arbitrariness that would make the Red Queen blush, can conveniently decide that an act of fraud is within the scope of employment of the Alleged Federal Defendants and therefore the defendants, and the Government, can escape any liability.  Because the claims raised by the Plaintiffs are intentional torts for which the United States has not waived sovereign immunity, the effect of the substitution of the United States for the Alleged Federal Defendants is to grant them blanket immunity for their actions.

The potential for abuse of this procedure has not gone without notice from the United States Supreme Court.  In her plurality opinion for the Court in *Gutierrez de Martinez v. Lamagno*,  515 U.S. 417 (1995), Justice Ginsburg recognized the injustice of this procedure in cases just like this one where no *respondeat superior* liability would lie against the Government after the substitution. *Id.*  at 420.

### **THE ALLEGED FEDERAL DEFENDANTS ARE NOT ENTITLED TO IMMUNITY**

The Alleged Federal Defendants are not entitled to immunity from suit through the so-called substitution process for three reasons.  First, they are not being sued for actions taken by them within the course and scope of their Government employment; rather they are being sued

3

for their actions while working for a private insurance company, the Securities Investor Protection Corporation ("SIPC"), whose members are the SEC-regulated broker/dealers (the "Wall Street firms"), and solely in that capacity. Their Government employment is incidental to their service for SIPC and not an issue in this case. Second, the Westfall Act does not apply here because the Securities Investor Protection Act ("SIPA") specifically provides for liability of SIPC directors for "bad faith" conduct such as that alleged in the complaint. Third, the certification by the United States is subject to challenge by the Plaintiffs. They are entitled to an evidentiary hearing (following limited discovery) on the factual basis for the certification so they can demonstrate its inapplicability.

### A. The Plaintiffs are entitled to a hearing to test the certification.

The convenient certification by the Attorney General's designee is not entitled to "rubber stamp" approval. Instead, the certification is subject to judicial review. *See Martinez v. Lamagno,* 515 U.S. 428-30; *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995). As Justice Ginsburg observed, "nothing tied to the purpose of the legislation shows that Congress meant the Westfall Act to commit the critical 'scope-of-employment' inquiry to the unreviewable judgment of the Attorney General or her delegate." *Martinez v. Lamagno,* 515 U.S. at 426.

Where the United States would otherwise be liable after the substitution, the Attorney General's determination is more reliable. After all, he is acting against the financial interests of the Government in issuing the certification. Where the United States is immune from suit, however, "the impetus to certify becomes overwhelming." *Id*. at 427. This was expressly why the Attorney General herself sought review in *Lamagno*, recognizing the unmistakable risk that self interest could color the certification process. *Id.* at 425:

4

> Inevitably, the United States Attorney will feel a strong tug to certify, even when the merits are cloudy, and thereby "do a favor," both for the employee and for the United States as well, at a cost borne solely, and perhaps quite unfairly, by the plaintiff.

*Id*. at 428.

The present case presents the exact kind of risk with which the Court was presented in *Lamagno*, namely, a case where the Plaintiffs will be precluded from recovery if the United States is substituted as a party. In such a case, the Attorney General's certification is subject to judicial review and the Plaintiffs are entitled to discovery on the issue so that they can have a meaningful evidentiary hearing to determine whether the certification is correct.

Even before the Court decided *Lamagno,* and at a time when the right to challenge the Attorney General's certification decision was unclear, the Third Circuit outlined the procedure to be followed:

> If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits . . . On the other hand, if there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing . . .

*Aliota v. Graham,* 984 F.2d 1350, 1358 (3rd Cir. 1993).

The determination as to whether the certification by the Attorney General's designee in this case was proper will depend on mixed questions of law and fact as discussed below, including the factual determination under state law as to whether the Alleged Federal Defendants were acting within the scope of their employment and whether the claims against them fall within the Westfall Act's exception for claims under federal statutory law.

5

**B.      The Alleged Federal Defendants were not acting within the scope of their Government employment.**

The Alleged Federal Defendants are not entitled to blanket immunity under the Westfall Act because they were not acting within the scope of their Government employment when they perpetrated the fraudulent investment scheme alleged in the complaint. Instead, they were acting for the Wall Street firms that control SIPC and that stood to benefit financially from the investment insurance scheme. For this reason alone, the Westfall Act does not apply.

Whether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred. *See Garcia v. U.S.,* 62 F.3d 126, 127 (5th Cir. 1995) (citing *Williams v. United States,* 350 U.S. 857 (1955); *Aliota v. Graham,* 984 F.2d 1350 (3rd Cir. 1993)). New Jersey is the forum state for this case and, as this Court has recently decided, this Court will apply the law of New Jersey, including its choice of law rules, to determine the applicable law. *See Harper v. LG Electronics USA, Inc.,* 595 F. Supp. 2d 486, 489 (D.N.J. 2009). New Jersey subscribes to the more flexible governmental interest analysis in determining which state's law to apply. The court first looks to see if there is an actual conflict in the law of the various states whose law might apply and, if so, determines which state has the greater interest in resolving the conflict. *Id.* In tort cases such as this, the analysis centers on six different factors and is heavily fact intensive and, thus, not resolvable upon summary motion practice. *Id.*

At the hearing to evaluate the Attorney General's certification, a more in-depth analysis of the law to apply can be undertaken. For purposes of this memorandum, an examination of New Jersey law will suffice to demonstrate that the issues involved will require a factual analysis precluding the summary disposition of this issue sought by the Defendants. New Jersey is the

6

most likely applicable law given that the Plaintiffs reside in New Jersey and suffered the losses caused by the fraud of the Alleged Federal Defendants in New Jersey.

According to the Supreme Court, the scope of employment "sets the line" of liability. *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 423 (1995). To determine whether the Alleged Federal Defendants were acting within the scope of their employment when they committed the acts alleged in the complaint, New Jersey will apply the three-part test set forth in the Restatement (Second) of Agency § 228: (1) whether the act is of the kind that the servant was employed to perform; (2) whether the act occurred substantially within the authorized time and space limits; and (3) whether it was actuated at least in part by a purpose to serve the master. *Aperuta v. Pirrello,* 381 N.J. Super. 449, 461-62 (App. Div. 2005).

Numerous New Jersey courts have held that acts of fraud are not within the scope of an officer's or director's employment. *See Seimens Building Technologies, Inc. v PNC Financial Services Group, Inc.,* 226 Fed. Appx. 192, 195-97 (3rd Cir. 2007) (applying Restatement (Second) of Agency § 228, employee not acting within scope of employment in fraudulent check cashing scheme with bank customer); *Estate of Beim v. Hirsh,* 121 Fed. Appx. 950, 954-55 (3d Cir. 2005) (fraud claim against employee of Manufacturers Hanover Trust Company on check kiting conspiracy with bank customer not within scope of employment); *National Premium Budge Plan Corp. v. National Fire Ins. Co. of Hartford,* 97 N.J. Super. 149 (N.J. Super. L. 1967) (claim of fraud for making premium loans to fictitious insureds through forged verifications not within scope of employment); *United States ex rel. Haskins v. Omega Institute, Inc.,* 11 F. Supp. 2d 555, 564 (D.N.J. 1998) (suit by students under false claim act against school and officials for obtaining federal funding based on allegedly false statements about paralegal program, held that individual defendants were not acting within scope of employment in committing fraud):

> While defendants' positions with Omega may have required them to file, or cause to be filed certain documents with the government, their positions surely did not require them to file or cause to be filed false documents with the government, as plaintiffs' allege. Therefore, both as a matter of law and as a matter of fact, defendants "scope of employment" argument is without merit as to each and every defendant in this action.

*Id.* at 564.

It is indisputable that SIPC is a private insurance company, and not a government agency. The Alleged Federal Defendants are government employees. Nason is employed by the Department of the Treasury; Stockton is employed by the Board of Governors of the Federal Reserve System. (Doc. 24-2, at 2). They were appointed as directors of SIPC pursuant to SIPA. *See* 15 U.S.C. §§ 78ccc(C)(2)(A) & (B). However, the tortious acts alleged in the complaint were not committed by the Alleged Federal Defendants in the course of fulfilling their federal job responsibilities. They were essentially employees "on loan" to SPIC.

Being a federal employee does not immunize a person from liability. If it did, the Attorney General's certification of employment would be conclusive and binding on this Court. Clearly, working for the Treasury Department or the Federal Reserve Board is different from working for a private insurance company which represents the interests of the Wall Street firms. In this respect, therefore, the Alleged Federal Defendants are no different from government employees who serve on the board of a not-for-profit corporation that their employer approves of, but in no way accepts liability for. Certainly, the United States has not argued that it has accepted the legal responsibility for the tortious acts of the Alleged Federal Defendants.

Here, the Attorney General's certification provides no factual basis for the certification other than the fact of employment. After discovery into the specific actions taken by the Alleged Federal Defendants as SIPC board members, this Court will be able to conduct a meaningful

8

evidentiary hearing on the pending motion. At this point, as *Lamagno* requires, an evidentiary hearing is necessary to determine whether the Attorney General's certification can be accepted. .

### C. The alleged behavior falls within a Westfall Act exception.

Regardless of whether the behavior of the Alleged Federal Defendants was within the scope of their jobs with the Treasury and the Federal Reserve Board, they are not entitled to FTCA immunity because the claims asserted against them fall within an express exception to the Westfall Act. The Westfall Act does not apply to constitutional violations or where an action is brought "for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(1)(2)(B); *accord Davis v. United States,* 430 F. Supp. 2d 67, 72 (D. Conn. 2006) (FTCA does not apply to a *Bivens* claim against a government employee or when an injured plaintiff brings an action under a federal statute that authorizes recovery against a government employee).

Congress did not provide any specific explanation for the "federal statutory claims" exception. "[O]ther than [Congress'] general concern with preserving all pre-existing remedies available to victims of torts committed by federal employees," it is clear that § 2679(b)(2)(B) must have been added to ensure that all pre-existing statutory remedies would remain intact following the adoption of the Westfall Act. *See United States v. Smith,* 499 U.S. 160, 182-83 (1991); *accord Woods v. McGuire,* 954 F.2d 388, 391 (6th Cir. 1992) ("this exception was included to ensure that the Westfall Act did not alter available relief for violations of federal statutes for which there is a private right of action.").

As set forth in paragraphs 42-48 of the complaint (Doc. 1), SIPA expressly makes the directors liable for actions taken by them in bad faith. SIPA provides that "Neither SIPC nor any of its Directors, officers or employees shall have any liability to any person for any action taken

or omitted in good faith under or in connection with any matter contemplated by this chapter."
15 U.S.C. § 78kkk(C); see also *In re Adler, Coleman Clearing Corp.*, 1998 WL 551972, *32 (Bankr. S.D.N.Y. Aug. 25, 1998) (SIPA "contemplates that customers of a liquidating broker/dealer can sue SIPC when it has not acted in good faith in exercising its statutory rights and obligations.").

It would be bizarre indeed for Congress to create this basis for liability if it then intended to take it away through Westfall Act immunity.  The complaint alleges that SIPC's directors, including the Alleged Federal Defendants, engaged in a massive investment insurance fraud, which damaged the Plaintiffs.  This scheme, if proven, would fall within the federal statutory exception contained in the Westfall Act, and the Attorney General's certification is therefore erroneous as a matter of law.

## **CONCLUSION**

For the reasons set forth herein, the Plaintiffs respectfully request that the Court deny the motion of the Alleged Federal Defendants; allow Plaintiffs to take document discovery of the Alleged Federal Defendants; and then set a date for an evidentiary hearing.

April 19, 2010

                    BECKER & POLIAKOFF, LLP

            By:   /s/ Helen Davis Chaitman (hdc-4266)
                   21 East Front Street - Suite 400
                   Redbank, New Jersey 07701
                   hchaitman@becker-poliakoff.com
                   (908) 303-4568
                        -and-
                   45 Broadway
                   New York, New York 10006
                   (212) 599-3322
                   *Attorneys for Plaintiffs*