## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

------------------------------------------------------------------

LISSA CANAVAN, LESLIE GOLDSMITH, and
JUDITH KALMAN on behalf of themselves and      Civil No. 2:10-cv-00954-FSH-PS
all others similarly situated,

             Plaintiffs,

    vs.

STEPHEN HARBECK, ARMANDO J. BUCELO,
JR., TODD S. FARHA, WILLIAM H. HEYMAN,
WILLIAM S. JASIEN, DAVID G. NASON, MARK
S. SHELTON, and DAVID J. STOCKTON,

             Defendants.

------------------------------------------------------------------

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER OF CASE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR REFERRAL TO BANKRUPTCY COURT

---

GREENBAUM, ROWE, SMITH
& DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
(732) 549-5600
Attorneys for Defendants

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF THE CASE.................................................................................... 1

STATEMENT OF THE ISSUE................................................................................... 6

BRIEF OVERVIEW OF SIPA ................................................................................... 7

        A.    SIPC and Its Funds.................................................................................. 7

        B .   Nature of a SIPA Proceeding .................................................................. 8

        C.    The Initiation of the Proceeding and the Court's Jurisdiction ............ 9

        D.    Satisfaction of Customer Claims........................................................... 9

STATEMENT OF FACTS ........................................................................................ 10

ARGUMENT ............................................................................................................ 11

    I.    IN THE INTEREST OF JUSTICE, THIS CASE SHOULD BE
        TRANSFERRED TO THE COURT IN NEW YORK AS A CASE
        RELATED TO A TITLE 11 CASE................................................................ 14

        1.    Venue Is Improper In This Court........................................................... 14

            A.    Venue In Actions Based on Diversity (28 U.S.C. 1391(a)) ............. 14

            B.    Venue of Proceedings Related to Title 11 Cases (28 U.S.C.
                 §1409) ......................................................................................... 16

        2.    Transfer is Required to Correct Venue .................................................. 19

   II.    UNDER 28 U.S.C. §1631, THIS CASE SHOULD BE TRANSFERRED
        TO THE DISTRICT COURT IN NEW YORK AS THE COURT WITH
        EXCLUSIVE JURISDICTION ................................................................... 21

        Lack of Subject Matter Jurisdiction......................................................... 21

        Lack of Personal Jurisdiction.................................................................... 24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Abrams v. Gen. Nutrition Cos., Inc.,
　2006 WL 2739642 * 9 (D.N.J. Sept. 25, 2006) ........................................................ 17, 18, 20, 21

Barton v. SIPC,
　185 B. R. 701 (D.N.J. 1995) ............................................................................................................ 9

Bates v. C&S Adjusters, Inc.,
　980 F.2d 865 (2d Cir. 1992)............................................................................................................ 15

Borman v. Raymark Industries, Inc.,
　946 F.2d 1031 (3d Cir. 1991)........................................................................................................... 17

Britell v. United States,
　318 F.3d 70 (1st Cir. 2003) ............................................................................................................. 22

Cameron v. Thornburgh,
　983 F.2d 253 (D. C. Cir. 1993) ....................................................................................................... 15

Cannan v. EMC Packaging, Inc.,
　2009 WL 2580330 * 1 (D.N.J. August 18, 2009) .................................................................... 20, 21

Cottman Transmission Sys., Inc. v. Martino,
　36 F.3d 291 (3d Cir. 1994).......................................................................................................... 14, 15

D'Jamoos v. Pilatus Sircraft, Ltd.,
　566 F.3d 94 (3d Cir. 2009)........................................................................................................... 22, 24

Daniel v. Am. Bd. Emergency Med.,
　428 F.3d 408 (2d Cir. 2005)........................................................................................................... 15

Diane Peskin v. Irving H. Picard, Trustee,
　No. 09-01272 (BRL) (Bankr. S.D.N.Y.) ....................................................................................... 12

Dunlap v. Friedman's, Inc.,
　331 B.R. 674 (S.D. W.Va. 2005) ............................................................................................ 17, 18, 20, 21

Exchange National Bank v. Wyatt,
　517 F.2d 453 (2d Cir. 1975)............................................................................................................. 8

Frank M. Sheesley Co. v. Hes Constructors, Inc.,
　2007 WL 2823482 (W.D. Pa. Sept. 26, 2007) .......................................................................... 14, 15

Froelich v. Sequoia Leisure Holdings, Inc.,
　2009 WL 2016108 * 1 (D.N.J. Feb. 27, 2009) ........................................................................ 17, 18, 20, 21

ii

Gehling v. St. George's Sch. of Med., Ltd.,
   773 F.2d 539 (3d Cir. 1985) ........................................................................... 24

Gulf Ins. Co. v. Glasbrenner,
   417 F.3d 353 (2d Cir. 2005) ........................................................................... 15

IMO Indus. Inc. v. Kiekert, AG,,
   155 F.3d 254 (3d Cir. 1998) ........................................................................... 24

In re Amendt,
   169 Fed.Appx. 93 (3d Cir. 2006) ................................................................... 20

In re Bernard L. Madoff Inv. Sec. LLC,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) ...................................................... 1, 11

In re Bernard L. Madoff Investment Securities LLC,
   413 B.R. 137 (Bankr. S.D.N.Y. 2009) .................................................... 11, 12

In re Blinder, Robinson & Co.,
   135 B. R. 892 (D. Colo. 1991) ................................................................... 9, 21

In re Exclusive Industries Corp.,
   751 F.2d 806 (5th Cir. 1985) ......................................................................... 22

In re First Interregional Equity Corp.,
   218 B. R. 731 (Bankr. D.N.J. 1997) ................................................................ 9

In re Government Securities Corp.,
   972 F.2d 328 (11th Cir. 1992),
   cert. den., 507 U.S. 952 (1993) ....................................................................... 8

In re Investment Bankers, Inc.,
   4 F.3d 1556 (10th Cir. 1993),
   cert. den., 510 U.S. 1114 (1994) ..................................................................... 8

In re Lloyd Securities, Inc.,
   75 F.3d 853 (3d Cir. 1996) .............................................................................. 8

In re Zinchiak,
   406 F.3d 214 (3d Cir. 2005) ........................................................................... 17

In the Matter of Lewellyn,
   26 B.R. 246 (Bankr. S.D. Iowa 1982) ............................................................. 8

Jumara v. State Farm Ins. Co.,
   55 F.3d 873 (3d Cir. 1995) ........................................................................... 20

Langenkamp v. Culp,
   498 U. S. 42 (1990) ....................................................................................... 21

Leroy v. Great W. United Corp.,
    443 U.S. 173 (1979).................................................................................................. 14

Maritime Elec. Co. v. United Jersey Bank,
    959 F.2d 1194 (3d Cir. 1991)............................................................................... 16, 17

McLaughlin v. Arco Polymers, Inc.,
    721 F.2d 426 (3d Cir. 1983).................................................................................... 22

O'Connor v. Sandy Lane Hotel Co., Ltd.,
    496 F.3d 312 (3d Cir. 2007).................................................................................... 24

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984)............................................................................... 16, 17

SEC v. Albert & Maguire Sec. Co.,
    560 F.2d 569 (3d Cir. 1977)...................................................................................... 8

SEC v. Packer, Wilbur & Co.,
    498 F.2d 978 (2d Cir. 1974)...................................................................................... 8

SIPC v. Barbour,
    421 U. S. 412 (1975)................................................................................................. 7

Thomason Auto Group, LLC v.
    China America Cooperative Automotive, Inc.,
    2009 WL 512195 * 3 (D.N.J. 2009)................................................................... 16, 20

Uffner v. La Reunion Française,
    244 F.3d 38 (1st Cir. 2001)...................................................................................... 15

United States v. American River Transp., Inc.,
    150 F.R.D. 587 (C.D. Ill. 1993)............................................................................... 22

**Statutes**

15 U.S.C. §78aaa ......................................................................................................... 1

15 U.S.C. §78ccc(a)(2)(A).............................................................................................. 7

15 U.S.C. §78ccc(c)(2) .................................................................................................. 7

15 U.S.C. §78ddd(a)(1)................................................................................................... 7

15 U.S.C. §78ddd(f)....................................................................................................... 8

15 U.S.C. §78ddd(g)....................................................................................................... 8

15 U.S.C. §78ddd(h)....................................................................................................... 8

15 U.S.C. §78eee(a)(3) .................................................................................................. 9

15 U.S.C. §78eee(b)(2)(A)(i) ...................................................................................... 4, 9

15 U.S.C. §78eee(b)(2)(A)(ii) ...................................................................................... 9

15 U.S.C. §78eee(b)(4) ...................................................................................... 4, 9, 10

15 U.S.C. §78fff(a) ...................................................................................................... 8

15 U.S.C. §78fff(b) .......................................................................................... 8, 14, 18

15 U.S.C. §78fff-2(a)(2) .............................................................................................. 5

15 U.S.C. §78fff-2(b) .................................................................................................. 5

15 U.S.C. §78fff-2(c)(1)(B) ........................................................................................ 9

15 U.S.C. §78fff-2(c)(1)(C) ........................................................................................ 5

15 U.S.C. §78fff-3(a) .............................................................................................. 5, 9

15 U.S.C. §78fff-3(a)(1) ............................................................................................ 10

15 U.S.C. §78kkk(c) .................................................................................................. 13

15 U.S.C. §78lll(4) .................................................................................................. 4, 9

15 U.S.C. §78o(b) ...................................................................................................... 7

28 U.S.C. §1391(a) .............................................................................................. 14, 16

28 U.S.C. §1391(a)(1) ................................................................................................ 16

28 U.S.C. §1391(a)(2) ................................................................................................ 16

28 U.S.C. §1391(a)(3) ................................................................................................ 16

28 U.S.C. §1404(a) .................................................................................................... 20

28 U.S.C. §1406(a) .............................................................................................. 19, 20

28 U.S.C. §1409(a) ...................................................................................... 14, 16, 18

28 U.S.C. §1412 .................................................................................................. 19, 20

28 U.S.C. §157 ............................................................................................................ 6

28 U.S.C. §158(d)(2) .................................................................................................. 2

28 U.S.C. §1631................................................................................................................. 21

**Other Authorities**

1 Collier on Bankruptcy
  ¶4.05[4] (16th ed. 2009)......................................................................................... 19, 20

17 Moore's Federal Practice,
  §111.51[2] (3d ed. 2009).............................................................................................. 22

**Rules**

Fed. R. Civ. P. 4(i)(3) ........................................................................................................ 7

## STATEMENT OF THE CASE

On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") issued a decision in the liquidation proceeding under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA"),[1] of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor"), a securities broker-dealer. In re Bernard L. Madoff Inv. Sec. LLC, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). The decision related to the method for calculating customers' "net equity," that is, the amount owed to customers by BLMIS.[2]  In its decision, the Bankruptcy Court agreed with the position of, among others, the BLMIS Trustee, the United States Securities and Exchange Commission ("SEC"), and the Securities Investor Protection Corporation ("SIPC"), and held that a customer's net equity is the amount deposited by the customer with the broker less amounts withdrawn. The Court rejected arguments made by certain investors that what they were owed were the fake profits based on backdated but non-existent trades that appeared on phony account statements issued to them by BLMIS, all of which were invented by Bernard L. Madoff ("Madoff"), the principal of the firm. The Bankruptcy Court's ruling was embodied in an order dated March 8, 2010 ("Net Equity Order").[3]

The Trustee's position was that the customer should receive the amount deposited by the customer with BLMIS less any amounts withdrawn or paid to the customer and not the amount shown on the customer's last fictional account statement as asserted by the Plaintiffs herein ("Plaintiffs"). The account statements were fictitious because Madoff - creating the largest Ponzi

---

[1]  For convenience, references hereinafter to provisions of SIPA shall be to the United States Code but shall omit "15 U.S.C."

[2]  Under SIPA section 78lll(11), "net equity" is the difference between what the broker owes the customer and what the customer owes the broker.

[3]  The Net Equity Order is annexed to the affidavit of Alan S. Naar dated April 23, 2010 ("Naar Affidavit") as Exhibit A. BLMIS Case, Dkt. No. 2020.

scheme in history - never made any investments for any of his customers but created false profits from false backdated trades shown on false account statements. The Bankruptcy Court concluded that it "would be simply absurd" to honor the fictional account statements and to do so would "credit the fraud and legitimize the phantom world created by Madoff when determining Net Equity" and because "any dollar paid to reimburse a fictitious profit is a dollar no longer available to pay claims for money actually invested." 424 B.R. at 140-141. As the Court further noted, if this last fictitious account statement approach ("Fictitious Statement Approach") were used, certain investors who withdrew funds from BLMIS in an amount that exceeded their deposits ("Net Winners") would continue to recover funds from customer property at the expense of other investors who withdrew less money from BLMIS than they deposited ("Net Losers"), who recovered little or nothing from Madoff and whose investments were used to fund the very withdrawals that made the earlier investors Net Winners. The Court correctly recognized that adopting the Fictitious Statement Approach would only increase the harm caused to Net Losers and would improperly distribute customer funds based upon Madoff's Ponzi scheme--effectively having the Court consummate Madoff's crime--thus reducing the recoveries of those investors who had made no withdrawals, an unthinkable prospect.

Pursuant to 28 U.S.C. §158(d)(2), on March 8, 2010, the Bankruptcy Court entered a separate order certifying its Net Equity Order for immediate appeal to the United States Court of Appeals for the Second Circuit ("Certification Order").[4]

The Plaintiffs in the case before this United States District Court are direct or assertedly indirect claimants in the SIPA liquidation proceeding of BLMIS who unsuccessfully pursued the net equity issue before the Bankruptcy Court. Plaintiffs' counsel has appealed the Net Equity Order in

---

[4] The Certification Order is annexed to the Naar Affidavit as Exhibit B. BLMIS Case Dkt. No. 2022.

New York. Plaintiffs bring this action not only on their own behalf but on behalf of a purported Class, namely, those BLMIS investors who seek to have their claims satisfied according to the last Fictitious Statement Approach. See Complaint, ¶¶1 and 2 ("The class members are Madoff customers who ... are entitled to the prompt replacement of securities ... based upon their November 30, 2009 statements"). Defendants are past and present Directors of SIPC and its Chief Executive Officer/President. Although Plaintiffs purport to bring the suit against the Defendants in their individual capacities, the suit in fact is a thinly-veiled complaint against SIPC and the BLMIS Trustee, and an attempt to relitigate the net equity issue. This is apparent from a review of the relief sought in the Complaint where repeatedly, as shown below, the appropriateness of the net equity calculus is placed at issue.

The Plaintiffs characterize SIPC's position on net equity as "SIPC's Net Investment Policy." In their First Claim for Relief, the Plaintiffs contend that the "Defendants had no good faith basis under SIPA for the adoption of the SIPC Net Investment Policy...." Complaint, ¶211. Resolution of this claim necessarily requires this District Court to decide whether SIPC's position on net equity in the BLMIS Case is correct.

In their Second and Third Claims for Relief, Plaintiffs contend that Defendants allowed SIPC members to represent that investments were protected by SIPC and that SIPC's failure to advance funds to pay fictional "profits" based on trades that never occurred somehow is inconsistent with that representation. Thus, the Court would be required to decide whether claims for fake profits and backdated "trades" are protected under SIPA, i.e., the precise issue decided by the Bankruptcy Court in New York.

In their Fourth Claim, the Plaintiffs allege that "Defendants made a clear and definite promise" of protection "in the event their broker stole their money or their securities." Complaint, ¶231. Evaluating whether there was a breach of such a promise would require this Court to decide

3

whether the BLMIS investor is entitled under SIPA to more than just the return of funds or securities deposited by the investor with the broker and converted by the broker. In short, the Court must decide whether the investor is entitled to non-existent profits based on fictional backdated trades, again, the SIPA "net equity" issue decided by the Bankruptcy Court.

As the Plaintiffs informed this Court in a letter dated April 13, 2010, the Trustee in the BLMIS case has filed a motion seeking to enjoin the Plaintiffs from continuing this action in New Jersey.[5] It is beyond peradventure that to allow this suit to go forward in this forum will seriously disrupt the administration of the BLMIS liquidation proceeding in New York and will usurp the jurisdiction of the Bankruptcy Court as to matters that under SIPA are within its sole purview. Under SIPA sections 78eee(b)(2)(A)(i) and 78eee(b)(4), the Bankruptcy Court in New York has exclusive jurisdiction of the debtor and its property and hence, the sole power to decide what claimants are owed. Indeed, confronted with the Bankruptcy Court's March 1, 2010 decision, Plaintiffs' real goal in this litigation is the disruption of the BLMIS liquidation proceeding. The resolution of thousands of investor claims against BLMIS depends upon the calculation of the customer's net equity. In turn, whether net equity is measured according to the net amount deposited by the customer or according to the last fake account statement will impact literally how billions of dollars are to be distributed. In a SIPA case, customers share, pro rata, in "customer property," that is, property received, acquired or held by the broker for its customers. See SIPA §78lll(4). The BLMIS Trustee has collected over $1.4 billion of customer property to date, and is projected to collect billions more. Until customers' net equity becomes fixed, and the total value of claims against customer property is known, the Trustee will be unable to make a final distribution to customers. Likewise, the extent of SIPC advances which equal, within limits, the difference

---

[5] The Trustee's Complaint and supporting brief were attached to Plaintiffs' April 13, 2010 letter to the Court.

between the customer's net equity and his share of customer property depend on the resolution of the net equity issue. See SIPA 78fff-3(a). The measure of net equity has been decided by the Bankruptcy Court in New York and will be reviewed on appeal by the Second Circuit. A separate consideration of the same issue by this District Court, and in particular, a decision that is inconsistent with that of the Bankruptcy Court in New York, will cause delay and confusion in the liquidation proceeding.

Furthermore, while Plaintiffs argue that "Defendants wrongfully and in bad faith failed to 'promptly' pay the claims under the illegal SIPC Net Investment Policy, and had no fairly debatable reason for their failure to pay such claims", Complaint, ¶209, the reality is that under SIPA, SIPC is not, and clearly the individual Defendants are not, statutorily authorized to take the actions in question. In a SIPA liquidation proceeding, SIPC, in its corporate capacity, does not decide claims. Nor does it satisfy claims by the delivery of securities or cash to a claimant. Those responsibilities belong to the trustee in the case. SIPA §§78fff-2(a)(2) and 78fff-2(b). SIPC merely advances funds to a trustee, as requested by a trustee to satisfy claims that the trustee has determined. SIPA §78fff-3(a). In the BLMIS Case, although SIPC agreed with the Trustee's position, claims of the Plaintiffs and the class were determined not by SIPC, but by the Trustee. Any satisfaction of a claim or denial thereof would be by the Trustee, and not SIPC. SIPC would have no authority to pay a claimant directly. To the extent of any advance, its advance would be a claim against any fund of customer property. SIPA §78fff-2(c)(1)(C).

It bears repetition that the instant suit is not solely by the Plaintiffs, but purports to be a class action, whose objective is to have the individual Defendants pay not just the Plaintiffs but all investors advocating the Fictitious Statement Approach. It is, at its most basic, a blatant attempt to subvert the SIPA claims process, to undermine the procedures by which SIPC is to provide funds, and to accomplish what the Plaintiffs have failed to accomplish in New York. This, respectfully,

the Court should not tolerate.  For these reasons, as discussed more fully below, the case should be transferred to the United States District Court for the Southern District of New York ("New York District Court") for referral to the Bankruptcy Court as a case related to the BLMIS proceeding.[6] See 28 U.S.C. §157.

The Defendants submit this memorandum of law in support of their motion.

## STATEMENT OF THE ISSUE

The Plaintiffs filed claims in a SIPA liquidation proceeding in Bankruptcy Court in New York, placing in issue the calculation of what was owed to them by the Debtor, a securities brokerage firm in New York.  The calculation would impact whether the Plaintiffs would be entitled to share in customer property and the amount of any SIPC advance.   The Plaintiffs were unsuccessful in their assertion of what they were owed (their "net equity") before the Bankruptcy Court.   After oral argument regarding that issue before the Bankruptcy Court, the Plaintiffs instituted this action in the United States District Court in New Jersey seeking to place the issue of the calculation of net equity before a different federal judge than the judge with exclusive jurisdiction to resolve that issue.  In New Jersey, the Plaintiffs seek payment of their "net equity," as interpreted by them, not from funds advanced by SIPC, but from SIPC officials.  Under these facts, the issue is:

> Whether the New Jersey case properly is transferred to New York on the ground that it is related to the SIPA liquidation proceeding of BLMIS pending in the Bankruptcy Court in New York and on the basis that adjudication of the complaint in New Jersey will disrupt the administration of the SIPA liquidation proceeding by interfering with the distribution of billions of dollars to thousands of investors.

---

[6] Under an Order filed by the New York District Court on July 11, 1984, under 28 U.S.C. §157(a), all Title 11 cases and those arising in or related to a Title 11 case, are referred to the bankruptcy judges for that District.  This is consistent with SIPA.  Although the application for a SIPA protective decree is filed by SIPC in federal District Court, if the application is granted, the District Court removes the proceeding to the Bankruptcy Court for that District.  See SIPA §78eee(b)(4).

The Defendants respectfully submit that the case should be transferred to New York.

## BRIEF OVERVIEW OF SIPA

Because an understanding of SIPA and the nature of the proceeding is useful to a resolution of the issue, a brief discussion of SIPA, its purposes and relevant provisions, is provided below.

### A.    SIPC and Its Funds

The instant suit is against the Chief Executive Officer/President of SIPC, and past and present members of the Board of Directors of SIPC. The SIPC Board is comprised of seven Directors, five of whom are appointed by the President of the United States and confirmed by the United States Senate. The remaining two Directors are chosen from among the officers and employees of the Treasury and Federal Reserve and are appointed, respectively, by the Secretary of the Treasury and the Federal Reserve Board. SIPA §78ccc(c)(2).[7]

In 1970, Congress enacted SIPA and thereby created SIPC to provide limited protection to customers of failed securities brokers or dealers. See SIPC v. Barbour, 421 U. S. 412, 415-416 (1975). SIPC is a non-profit membership corporation whose members include most interstate broker-dealers. Membership in SIPC is automatic upon registration as a broker or dealer with the SEC under section 15b of the Securities Exchange Act of 1934, 15 U.S.C. §78o(b). SIPA §78ccc(a)(2)(A).

Among other things, SIPA requires SIPC to establish a "fund" via assessments upon its members. §78ddd(a)(1). If SIPC's funds should become inadequate, SIPA authorizes a borrowing

---

[7]  As Government Directors on the SIPC Board, Defendants Nason and Stockton performed their duties in that capacity on behalf of the United States. Pending before the Court is a motion to substitute the United States for these Defendants. As Government Directors on the SIPC Board, Defendants Nason and Stockton performed their duties in that capacity on behalf of the United States. Under Fed. R. Civ. P. 4(i)(3), the Plaintiffs were required to serve process on the individuals, as well as on the United States. To the extent that service has not been made upon or acknowledged by the United States, the Court thus lacks personal jurisdiction over Defendants Nason and Stockton who do not waive any affirmative defenses based on insufficient service.

against the U.S. Treasury of up to one billion dollars. §78ddd(f), (g), and (h). The SIPC Fund is "a quasi-public fund," SEC v. Packer, Wilbur & Co., 498 F.2d 978, 985 (2d Cir. 1974), that is available to satisfy customer claims within certain limits. "SIPA was not designed to provide full protection to all victims of a brokerage collapse. Its purpose was to extend relief to certain classes of customers" Id. at 983.

### B.    Nature of a SIPA Proceeding

A proceeding under SIPA is a bankruptcy liquidation of the failed SIPC member against whom an application for a protective decree has been filed. SIPA §78fff(a). See, e.g., SEC v. Albert & Maguire Sec. Co., 560 F.2d 569, 572 (3d Cir. 1977); Exchange National Bank v. Wyatt, 517 F.2d 453, 457-459 (2d Cir. 1975); In the Matter of Lewellyn, 26 B.R. 246, 253 (Bankr. S.D. Iowa 1982). To the extent consistent with SIPA, the proceeding is to "be conducted in accordance with and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7" of the Bankruptcy Code. SIPA §78fff(b). Because the liquidation is conducted "as though" it were being conducted as a chapter 7 liquidation and "in accordance with" the provisions that apply to a chapter 7 case, all of the provisions, both procedural and substantive, that apply to such a case apply to the SIPA proceeding, unless inconsistent with SIPA. See In re Lloyd Securities, Inc., 75 F.3d 853, 858 (3d Cir. 1996) (concluding that SIPA "requires that a SIPA proceeding be treated like a chapter 7 bankruptcy case"), citing In re Government Securities Corp., 972 F.2d 328, 330, n.1 (11th Cir. 1992), cert. den., 507 U.S. 952 (1993) (rejecting claim that §78fff(b) makes applicable only procedural and not substantive Bankruptcy Code provisions, as plain language of section "makes no such distinction, and explicitly incorporates ... the Bankruptcy Code"); In re Investment Bankers, Inc., 4 F.3d 1556, 1564 (10th Cir. 1993), cert. den., 510 U.S. 1114 (1994) (§78fff(b) "indicates that Congress intended SIPA liquidation proceedings to be treated, in most important respects, identical to a traditional bankruptcy case under title 11"); Barton

8

v. SIPC, 185 B. R. 701, 703 (D.N.J. 1995) ("SIPA proceedings are treated like bankruptcy proceedings"); In re First Interregional Equity Corp., 218 B. R. 731, 736 (Bankr. D.N.J. 1997) ("SIPA proceeding is conducted as a liquidation under Chapter 7").

### C.    The Initiation of the Proceeding and the Court's Jurisdiction

SIPC protection is available only to customers of SIPC member broker-dealers that are in liquidation under SIPA.  A firm is placed in liquidation upon an application by SIPC to a federal District Court.  SIPA §78eee(a)(3).  Upon the filing of the application, among other things, the District Court "shall have exclusive jurisdiction of such debtor and its property wherever located," as well as "exclusive jurisdiction of any suit against the trustee with respect to a liquidation proceeding."  SIPA §§78eee(b)(2)(A)(i) and (ii).  If the Court grants SIPC's application, it orders the brokerage placed in SIPA liquidation, appoints a trustee for the firm, and removes the proceeding to the United States Bankruptcy Court for that District.  SIPA §78eee(b)(4).  Upon removal of the case, the Bankruptcy Court has "all of the jurisdiction, powers, and duties" conferred by SIPA upon the District Court.

### D.    Satisfaction of Customer Claims

Among other things, in the liquidation proceeding, the SIPA trustee processes claims and satisfies those that are allowed.  Allowed "customer" claims are based on the customer's net equity. The customer's net equity is satisfied through a pro rata distribution of customer property, and to the extent of any shortfall therein, through a SIPC advance.  SIPA §§78fff-2(c)(1)(B) and 78fff-3(a).  See In re Blinder, Robinson & Co., 135 B. R. 892, 896 (D. Colo. 1991) (in order to determine a customer's pro rata share of all customer property, the trustee must determine the customer's net equity).  Generally, customer property is all cash and securities received, acquired or held by the brokerage for its customers, including converted customer property that the trustee has recovered through third party actions.  §78lll(4).  The SIPC advance is $500,000 per customer.  Of the

9

$500,000, up to $100,000 may be used to satisfy the portion of any claim that is for cash only. §78fff-3(a)(1). It bears emphasis that SIPC merely advances funds to a trustee. There is no direct payment or satisfaction of claims by SIPC in its corporate capacity.

## STATEMENT OF FACTS

On December 15, 2008, upon an application by SIPC, the New York District Court entered an order placing BLMIS in SIPA liquidation, appointing Irving H. Picard, Esquire ("the Trustee"), as trustee to administer the proceeding, and removing the case to the Bankruptcy Court for that District, consistent with SIPA section 78eee(b)(4). Naar Affidavit, Exhibit C.

On December 23, 2008, the Bankruptcy Court issued an Order ("Claims Procedure Order") in the proceeding authorizing the Trustee to give notice of the commencement of the proceeding and to mail claim forms to customers and other creditors. Naar Affidavit, Exhibit D. Consistent with SIPA, the Order also established procedures for the submission of claims to the Trustee. Those procedures required the Trustee to determine the claims and to notify claimants of his determinations. The procedures also created a process for obtaining Court review if any claimant disagreed with the Trustee's determination.

Plaintiffs Kalman and Goldsmith filed claims in the SIPA proceeding. Complaint, ¶¶19, 20. Plaintiff Canavan did not, but asserts that she is a "customer" of BLMIS because she is an investor in Lapin Children LLC ("Lapin") and filed an objection to the denial of the Lapin claim. Id., ¶18. Plaintiffs Kalman and Goldsmith filed objections in the Bankruptcy Court to the Trustee's determination of their claims, and together with Lapin (although its claim had not yet been determined), filed responses opposing a motion by the Trustee to affirm his position with respect to net equity.[8] The Trustee's position was that the customer should receive back the actual amount

---

[8] See BLMIS Case, Exhibit A to Trustee's Motion for an Order Upholding Trustee's Determination Denying "Customer" Claims for Amounts Listed On Last Customer Statement, Affirming Trustee's

deposited by the customer with the broker less any customer withdrawals, and not the false amount shown on the customer's fictional account statement. The Trustee's motion was argued on February 2, 2010 -- a few weeks before this lawsuit was filed in New Jersey -- and a decision, unfavorable to the Plaintiffs, was rendered by the Bankruptcy Court on March 1, 2010. In re Bernard L. Madoff Inv. Sec. LLC, supra, 424 B.R. 122.

## ARGUMENT

The instant suit is the latest in a series of actions taken by Helen Davis Chaitman, Esquire, Plaintiffs' counsel ("Counsel"), to contest the proper interpretation of "net equity" under SIPA. Counsel has attempted to advance her position regarding "net equity" at every turn and through every procedural vehicle. It bears mention that in addition to pursuing a claim in the BLMIS liquidation proceeding in which she herself has a personal stake, Counsel represents investors with utterly irreconcilable financial interests in the position she espouses. See In re Bernard L. Madoff Investment Securities LLC, 413 B.R. 137, 140, n.3 (Bankr. S.D.N.Y. 2009). To a mathematical certainty, some of Counsel's clients will receive less money, while other of her clients will receive more money, if she prevails in her net equity argument in the liquidation.[9]

---

Determination of Net Equity, And Expunging Those Objections With Respect to the Determinations Relating to Net Equity, dated October 16, 2009. (Naar Affidavit, Exhibit E, BLMIS Case, Dkt. No. 524). See also, id., Schedule A to Sonnenschein Investors' Opposition to the Trustee's Motion for an Order Upholding Trustee's Determination Denying "Customer" Claims for Amounts Listed on Last Statement, Affirming Trustee's Determination of Net Equity and Expunging Those Objections With Respect to the Determinations Relating to Net Equity, dated November 13, 2009 (Naar Affidavit, Exhibit F, BLMIS Case, Dkt. No. 784).

[9] Plaintiffs' Counsel represents both Net Losers (investors who have yet to recover their initial deposit) and Net Winners (investors who withdrew more than they deposited and received other investors' money in the form of false profits). If the Fictitious Statement Approach is followed, then Net Winners, who would otherwise be owed nothing (having recovered all of their money from BLMIS while the firm was in business) would have a claim for any false profits shown on their last account statement. Since customer property is shared pro rata, customer property that would be distributed under the Trustee's approach only to Net Losers would now be shared with Net

While pursuing her challenge to net equity through the claims process, Plaintiffs' Counsel has not limited her actions to that process, however. Ignoring the Court's Claims Procedure Order, she attempted to force, by a separate suit against the Trustee, a premature, and potentially inconsistent, ruling concerning the proper construction of "net equity." Thus, on June 10, 2009, Plaintiffs' Counsel filed on behalf of three BLMIS investors, an adversary proceeding against the Trustee, in the New York Bankruptcy Court, seeking a declaration that the Trustee's interpretation of net equity was incorrect, and asserting, similar to the instant case, a claim for damages for an alleged breach of fiduciary duty by the Trustee. Diane Peskin v. Irving H. Picard, Trustee, No. 09-01272 (BRL) (Bankr. S.D.N.Y.) ("Peskin"). In Peskin, Plaintiffs' Counsel filed a 64-page memorandum of law in support of a motion for summary judgment that the Court rejected as ultra vires and premature. (Peskin, Dkt. Nos. 23 and 26). Counsel also submitted a 62-page opposition to a motion by the Trustee to dismiss the case. (Peskin, Dkt. No. 30). Both documents were restatements of Counsel's arguments on net equity.

The Bankruptcy Court dismissed the suit against the Trustee. In re Bernard L. Madoff Investment Securities LLC, 413 B. R. 137, 140 (Bankr. S.D.N.Y. 2009). Plaintiffs' Counsel filed an appeal to the District Court for the Southern District of New York, and that appeal remains pending. Diane Peskin v. Irving H. Picard, Trustee, No. 09-CV-8730 (JGK) (S.D.N.Y.).

Plaintiffs' Counsel attempted to obtain premature review of the net equity issue in other ways as well. She objected to two successive sets of fee applications filed by the SIPA Trustee and his counsel in the liquidation proceeding, grounding her objections in both cases upon the purported misapplication of the "net equity" definition. (BLMIS Case, Dkt. Nos. 351 and 1055). When the Bankruptcy Court rejected her objections and granted both sets of fee applications (BLMIS Case,

---

Winners. Thus, under Plaintiffs' Counsel's approach, those clients who are Net Winners would receive more money at the expense of those clients who are Net Losers.

Dkt. Nos. 363 and 1078), Plaintiffs' Counsel in each instance filed a motion seeking permission for leave to take an interlocutory appeal of each order granting fees. (BLMIS Case, Dkt. Nos. 367 and 1115.) The District Court for the Southern District of New York denied the first of those motions. Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Case No. M47 (GBD), Memorandum Decision and Order, filed on January 11, 2010 (S.D.N.Y.). The second remains pending.

Dissatisfied with the outcome of her efforts in the Courts of the Southern District of New York, Plaintiffs' Counsel seeks a decision on net equity in a new venue from a different judge, naming SIPC's President and Directors as defendants as the vehicle to accomplish her forum shopping. Plaintiffs' Complaint is premised, again, on Plaintiffs' Counsel's objection to the "net equity" calculation applied by the Trustee and endorsed by SIPC. Thus, all of the damages claimed by Plaintiffs – and all of the legal theories upon which they make those claims – stem from the application of that calculus by the SIPA Trustee in the BLMIS proceeding.

As SIPA provides the Bankruptcy Court for the Southern District of New York with exclusive jurisdiction over suits against BLMIS, the estate's property, and the Trustee for the estate, naming the SIPA Trustee as the defendant in this suit would require Plaintiffs' Counsel to bring the suit in the New York Bankruptcy Court, where her construction of "net equity," and her suit against the Trustee already have been rejected. Accordingly, in a clear attempt to avoid the jurisdiction of the New York Bankruptcy Court, Plaintiffs' Counsel has elected to name SIPC officials as defendants. Furthermore, because under SIPA §78kkk(c), those officials are immune from liability for actions taken or omitted in good faith under or in connection with a SIPA matter, Plaintiffs' Counsel includes in the Complaint a specious allegation of bad faith.

## I.  IN THE INTEREST OF JUSTICE, THIS CASE SHOULD BE TRANSFERRED TO THE COURT IN NEW YORK AS A CASE RELATED TO A TITLE 11 CASE

This case should be transferred to the New York District Court because venue based on diversity is improper in this District and because the case is related to a SIPA case that is to be treated as though it were a title 11 case.  SIPA §78fff(b).

### 1.    Venue Is Improper In This Court

#### A.    Venue In Actions Based on Diversity (28 U.S.C. 1391(a))

The venue provisions of title 28 are designed to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial" and to ensure economy in the expenditure of judicial resources.  See, e.g., Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) (quoting Leroy v. Great W. United Corp., 443 U.S. 173 (1979) (emphasis in original)); Frank M. Sheesley Co. v. Hes Constructors, Inc., 2007 WL 2823482 at * 3 (W.D. Pa. Sept. 26, 2007).  As pertinent to this case, the propriety of venue in this District is governed by Sections 1391(a) and 1409(a) of title 28.

Under Section 1391(a) of title 28, except as otherwise provided by law, a civil action where subject matter jurisdiction is based solely on diversity of citizenship may be brought only in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  See 28 U.S.C. § 1391(a) (emphasis added).

In determining whether a "substantial part of the events or omissions giving rise to the claim" occurred in the forum district, the court must identify those alleged events or omissions

14

giving rise to the claim, determine where those events or omissions occurred, and determine whether a "substantial" portion of those events or omissions occurred within the forum district. See, e.g., Cottman, 36 F.3d at 295; Sheesley, 2007 WL 2823482 at 3. See also, Daniel v. Am. Bd. Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005); Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). As the Third Circuit has emphasized, "the test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'…" See Cottman, 36 F.3d at 294. Again, the focus of the inquiry must be on the nature of the dispute and location of the alleged events or omissions which triggered it. See Cottman, 36 F.3d at 295 (triggering event in trademark case is illicit "passing off" of item violating trademark); Sheesley, 2007 WL 2823482 at * 3. See also, Uffner v. La Reunion Française, 244 F.3d 38, 43 (1st Cir. 2001) (sinking of yacht was triggering event in insurance contract dispute, even though sinking unrelated to contract itself); Bates v. C&S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992) ("Bates") (claim under Fair Debt Collection Practices Act triggered by receipt of collection notice).

The substantiality requirement is intended to preserve the element of fairness so that a defendant is not haled into a district having no real relationship to the dispute. See Cottman, 36 F.3d at 294. The term "substantial" is to be taken seriously by the courts, and the current law is "at most a marginal expansion" of the previous venue provision, which limited venue to the district "in which the claim arose." Bates, 980 F.2d at 867. See Cottman, 36 F.3d at 294; Sheesley, 2007 WL 2823482 at 3. See also Daniel, 428 F.3d at 432. Indeed, "determination of substantiality under the current rule 'may at times seem to take on [the] flavor' of the older 'best forum' analysis." Sheesley, 2007 WL 2823482 at * 3 (quoting Cottman, 36 F.3d at 294). See also, Gulf Ins., 417 F.3d at 357; Cameron v. Thornburgh, 983 F.2d 253, 257 (D. C. Cir. 1993).

15

Venue is not proper in this district, as none of criteria set out in Section 1391(a) of title 28 are satisfied here. None of the Defendants reside in this district, making Section 1391(a)(1) inapplicable. (See Complaint ¶¶ 21-28.) Section 1391(a)(2) is inapplicable because no "substantial part of the events or omissions giving rise to" the claims in Plaintiffs' Complaint occurred in this district, and Plaintiffs do not allege the contrary. BLMIS was operated primarily in the Southern District of New York, and the events underlying the fraud perpetrated through that entity occurred there. SIPC is located in Washington, D.C., and the alleged representations, statements, and decisions about which Plaintiffs complain all occurred in the District of Columbia, assuming, arguendo, they occurred at all. Thus, the events purportedly "triggering" this lawsuit all occurred outside this District, making venue under Section 1391(a)(2) unavailable here. Finally, Section 1391(a)(3) is inapplicable because there is another district in which the action may otherwise be brought. As discussed below, if anywhere, venue is proper in the Southern District of New York.

**B.     Venue of Proceedings Related to Title 11 Cases (28 U.S.C. §1409)**

Section 1409(a) of title 28 creates a significant exception to the general venue provisions of Section 1391. Under Section 1409(a), except in ways not pertinent here, a proceeding "related to" a bankruptcy case may be commenced in the district in which the bankruptcy case is pending.[10] See 28 U.S.C. §1409(a). As used in Section 1409(a), the term "related to" is exceptionally broad. See, e.g., Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1210 (3d Cir. 1991); Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); Thomason Auto Group, LLC v. China America Cooperative Automotive, Inc., 2009 WL 512195 * 3 (D.N.J. 2009) (unpublished decision) ("Thomason Auto Group"); Froelich v. Sequoia Leisure Holdings, Inc., 2009 WL 2016108 * 1

---

[10] 28 U.S.C. §1409(a) provides:

> Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district in which such case is pending.

(D.N.J. Feb. 27, 2009). The proceeding need not be against the debtor or the debtor's property, and, instead, may involve only litigants not party to the debtor's bankruptcy. See Pacor, 743 F.2d at 994; Thomason Auto Group, 2009 WL 512195 at * 3. The Third Circuit has repeatedly emphasized the breadth of the "related to" standard, explaining that:

> A proceeding is "related to" a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

See Maritime Elec., 959 F.2d at 1211 (quoting Pacor, 743 F.2d at 994). See also In re Zinchiak, 406 F.3d 214, 226 (3d Cir. 2005) ("related to" test is broad and "extends to any related lawsuit or proceeding, including third party proceedings"); Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3d Cir. 1991).

Consistent with the breadth of this standard, and with the principles of fairness and judicial economy underlying the venue provisions generally, the courts have long recognized a strong presumption favoring concentration of all proceedings "related to" a bankruptcy case in the district where that case is pending – the "home court" of the bankruptcy. See, e.g., Froelich, 2009 WL 2016108 at * 2 ("[i]n general, the forum where the bankruptcy case is pending is the proper venue for all actions 'related to' that bankruptcy case"); Abrams v. Gen. Nutrition Cos., Inc., 2006 WL 2739642 * 9 (D.N.J. Sept. 25, 2006) (same); Dunlap v. Friedman's, Inc., 331 B.R. 674, 678 (S.D. W.Va. 2005) (there is a "well-settled presumption that 'related to' proceedings should be litigated in the 'home court'"). The "home" bankruptcy court is generally most familiar with the estate, and matters and issues "related to" it, and thus is in the best position to adjudicate "related to" disputes with maximum efficiency and with the greatest sensitivity to the impact of such adjudications on the

17

administration of the estate.  Further, as the court with jurisdiction over that estate, the "home court" has an obvious interest in expeditious and effective resolution of disputes "related to" the estate. Cf., Dunlap, 331 B.R. at 681.

As discussed above, a SIPA liquidation proceeding is to be conducted "in accordance with," and "as though it were being conducted" under provisions of title 11 unless inconsistent with SIPA. SIPA §78fff(b).  Because there is no inconsistency, for venue purposes, the SIPA proceeding must be treated as a title 11 case.  This case is not only "related to" the BLMIS liquidation within the meaning of Section 1409(a) of title 28, it is based totally on that liquidation.  See 28 U.S.C. § 1409(a); Froelich, 2009 WL 2016108 at * 1.  As a matter of law, there is a strong presumption favoring the transfer of this case, and all others "related to" the BLMIS liquidation in the Bankruptcy Court, the "home court" for that liquidation.  See, e.g., Froelich, 2009 WL 2016108 at * 2; Abrams, 2006 WL 2739642 at * 9; Dunlap, 331 B.R. at 678.

The resolution of the net equity issue is proceeding apace in New York and indeed, because of its importance, the issue has been certified for accelerated appellate review,  To a certainty, a different decision by this Court on net equity will create confusion and disrupt significantly the administration of the estate in New York.  The distribution of billions of dollars will be placed on hold while customers who have yet to recover amounts invested with BLMIS wait to see whether they need to share recoveries with persons with claims for false profits.  If this Court undertakes to review the net equity issue, it is inevitable that an appeal will be taken of its decision.  Thus, investors will be forced to await the resolution of the issue by not one, but two, Courts of Appeals. This outcome is made even more repugnant by the fact that a key party, the Trustee, the person charged with distributing customer and estate property under SIPA, will have had no say on the issue of net equity in this Court.

## 2.  **Transfer is Required to Correct Venue**

Where a case "related to" a pending bankruptcy is filed in an improper venue, there are two provisions of title 28 that govern change of venue, and there is some disagreement in the case law concerning which provision is properly applicable. See 1 Collier on Bankruptcy ¶4.05[4] (16th ed. 2009) ("Collier"). Section 1406(a), the general provision governing the disposition of improperly venued cases, provides that a court shall either dismiss such a case or, if in the interest of justice, shall transfer the case "to any district or division in which it could have been brought."[11] See 28 U.S.C. §1406(a). Section 1412, which applies only to "a case or proceeding under title 11," authorizes a district court to transfer such a case to a district court for another district either "in the interest of justice" or "for the convenience of the parties."[12] See 28 U.S.C. §1412.

There are significant differences between these sections. Section 1406(a) applies only to cases in which venue in the original court is improper, whereas Section 1412 applies to cases of both proper and improper venue. See, e.g., 1 Collier ¶ 4.05[2]. Further, dismissal is optional under Section 1406(a), but is not permitted under Section 1412. Id. Dismissal or transfer is mandatory under Section 1406(a), but discretionary under Section 1412. Id. Finally, under Section 1406(a), transfer may be made only to a district "in which it (the case) could have been brought" - i.e., one in which venue is proper and in which the court has personal jurisdiction over the defendant - while transfer under Section 1412 is subject to no such restriction. Id.

---

[11]  28 U.S.C. §1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

[12]  28 U.S.C. §1412 provides:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Although Section 1412 does not use the term "related to," this Court, along with many others, has held that Section 1412 governs all changes of venue in cases "related to" a case pending under title 11.  See, e.g., Cannan v. EMC Packaging, Inc., 2009 WL 2580330 * 1 (D.N.J. August 18, 2009) (unpublished); Abrams, 2006 WL 2739642 at * 8; Dunlap, 331 B.R. at 676-80.  See also, 1 Collier ¶ 4.05[4].  In fact, consistent with the "home court" presumption favoring concentration of all matters "related to" a bankruptcy in the district where the bankruptcy is pending, this Court has repeatedly invoked Section 1412 to order such transfers.  See, e.g., Thomason Auto Group, 2009 WL 3491163 at ** 4-7; Cannan, 2009 WL 2580330 at * 1; Froelich, 2009 WL 2016108 at * 2; Abrams, 2006 WL 2739642 at ** 9-10.

Because venue is improper in this district, the Court should transfer this case to the New York District Court pursuant to Section 1412 and/or Section 1406(a) of title 28.  As noted, venue is presumptively favored there.  Moreover, as that forum is intimately familiar with the net equity issue raised by this action, and as that issue lies at the center of the BLMIS liquidation, a transfer to the Southern District of New York would maximize efficiency in the use of judicial resources and, most importantly, would ensure consistency in the administration of the BLMIS estate.  In short, transfer is clearly "in the interest of justice" within the meaning of Sections 1412 and 1406(a).[13]

---

[13] Sections 1412 and/or 1404(a) provide added alternatives for transfer for the convenience of the parties.  The only meaningful difference between the two sections is that Section 1404(a) - the provision of general applicability – only allows transfer to a venue in which the case "might have been brought" originally.  While there is split in the courts concerning which provision applies to transfers of cases "related to" a pending bankruptcy, this Court has repeatedly held that Section 1412, not Section 1404(a), is the governing provision.  See, e.g., Thomason Auto Group, 2009 WL 3491163 at ** 4-7; Cannan, 2009 WL 2580330 at * 1; Froelich, 2009 WL 2016108 at * 2; Abrams, 2006 WL 2739642 at ** 9-10.  The Third Circuit has identified a host of factors that, in general, may be relevant to a motion for change of venue for the convenience of the parties.  See In re Amendt, 169 Fed.Appx. 93, 96 (3d Cir. 2006); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).  In cases "related to" a bankruptcy pending in another jurisdiction, however, this Court has routinely applied the "home court" presumption favoring venue in the district where the bankruptcy is pending, and generally has ordered transfer to that district absent compelling circumstances militating against such transfer.  See, e.g., Thomason Auto Group, 2009 WL

## II.  UNDER 28 U.S.C. §1631, THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT COURT IN NEW YORK AS THE COURT WITH EXCLUSIVE JURISDICTION

**Lack of Subject Matter Jurisdiction**

Although thinly disguised as an action for consumer fraud and quasi-contractual damages, the real purpose of this action by Plaintiffs is to relitigate the denial of their interpretation of net equity in a forum other than the forum vested with subject matter jurisdiction to make that decision. Plaintiffs' action is, in substance, an action against the BLMIS estate and its property over which the New York Bankruptcy Court has exclusive jurisdiction.[14]  Ordinarily, a Court must dismiss an action if it lacks subject matter jurisdiction.  If, however, the Court lacks subject matter jurisdiction over an action because a federal statute vests exclusive jurisdiction in a specified Court, the Court may transfer the action to the proper Court, in lieu of dismissal, pursuant to section 1631 of title 28. See 28 U.S.C. §1631.

---

3491163 at ** 4-7; Cannan, 2009 WL 2580330 at * 1; Froelich, 2009 WL 2016108 at * 2; Abrams, 2006 WL 2739642 at ** 9-10.  See also, Dunlap, 331 B.R. at 681.  There are no such compelling circumstances here as, indeed,  both the presumption of "home court" venue and overriding considerations – in the form of judicial economy and consistency in the administration of the BLMIS estate – militate in favor of a transfer of the case to the New York District Court.

[14]  Moreover, having filed claims (directly or indirectly) in the liquidation proceeding, the Plaintiffs have submitted themselves to the jurisdiction of the New York Bankruptcy Court and to the resolution of the net equity issue by that Court. See Langenkamp v. Culp, 498 U. S. 42, 44 (1990); In re Blinder, Robinson & Co., 135 B. R. 892, 896 (D. Colo. 1991) (in SIPA case, by filing a claim against bankruptcy estate, claimant subjects himself to Bankruptcy Court's equitable power).

Section 1631[15] is broadly phrased to provide a federal court with the authority to transfer an action to "any other court in which the action...could have been brought," so long as: (1) "there is a want of jurisdiction" in the court in which the action was originally filed; and (2) transfer "is in the interest of justice." See id. See also, McLaughlin v. Arco Polymers, Inc., 721 F.2d 426, 429 (3d Cir. 1983) (Section 1631 "is broadly drafted to allow transfer between any two Federal courts"); United States v. American River Transp., Inc., 150 F.R.D. 587, 590 (C.D. Ill. 1993) ("[T]he impetus for this legislation (section 1631) was the jurisdictional confusion caused by the creation of specialized federal courts...which have jurisdiction over certain matters"); 17 Moore's Federal Practice, §111.51[2] (3d ed. 2009) ("Moore's"). The courts have routinely invoked Section 1631 to transfer cases to the particular courts having exclusive subject matter jurisdiction over them. See, e.g., Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003); In re Exclusive Industries Corp., 751 F.2d 806, 808-09 (5th Cir. 1985); 17 Moore's, §111.51[2] and n.7. Along with a number of other courts nationwide, the Third Circuit has extended the application of Section 1631 to cases in which the court lacks personal jurisdiction over the defendant. D'Jamoos v. Pilatus Sircraft, Ltd., 566 F.3d 94, 107-11 (3d Cir. 2009).

Where applicable, Section 1631 creates a presumption in favor of the transfer, in lieu of dismissal, of a case over which a federal court lacks subject matter jurisdiction, or in which it lacks personal jurisdiction over the defendant. See, e.g., Britell, 318 F.3d at 73-75. The presumption

---

[15] In relevant part, 28 U.S.C. §1631 provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

may be rebutted only upon a showing that, under the totality of circumstances, dismissal is "in the interest of justice." Id. at 71.

All of the claims asserted in the Complaint in this case fall within the Bankruptcy Court's exclusive jurisdiction over the property of the BLMIS estate. Those claims – including alleged bad faith failure to pay insurance claims, fraud, violation of the New Jersey Consumer Fraud Act, and promissory estoppel – all stem from the alleged inconsistency between various representations purportedly made by the Defendants concerning SIPC protection and the substance of the Trustee's "net equity" calculation.    (See, e.g., Complaint ¶¶ 1-17.)    The following passage from the Complaint, which abounds in hyperbole and fanciful, baseless conspiracy theories, summarizes the basis for all of Plaintiffs' claims:

> SIPC's Net Investment Policy was adopted by the Directors in bad faith and in direct contradiction of their statutory duty, with the sole intention of saving SIPC billions of dollars by disqualifying thousands of Customers from receiving SIPC insurance.    The Policy is in direct contravention of SIPA, its legislative history, SIPC's regulations, and SIPC's representations to investors and to the courts over the 38 years of its existence prior to the formulation of the Net Investment Policy.
>
> By virtue of SIPC's Net Investment Policy, the defendants have perpetrated a fraud upon the Customers and are personally liable, jointly and severally, for the damages that SIPC's Net Investment Policy has caused to Customers in the full amount of their lost investments.

(Complaint ¶¶ 15, 16 (emphasis added).)    Thus, Plaintiffs' objection to the SIPA Trustee's "net equity" calculus is the linchpin of their Complaint, and any disposition of their claims on the merits would require a ruling on that objection and on the correctness of that calculation.

As Plaintiffs themselves implicitly acknowledge, however, the substance of the applicable "net equity" calculus is critical to the administration of the BLMIS estate, and will affect the allocation and disposition of billions of dollars worth of customer property administered through the estate. Accordingly, without question, Plaintiffs' claims fall within the exclusive jurisdiction of the

23

Bankruptcy Court, which, as noted, <u>has already ruled against Plaintiffs on the very issue they raise</u> <u>again here</u>. Plaintiffs' Complaint thus represents a transparent attempt to relitigate that issue in another forum, which Defendants respectfully submit this Court should not indulge. Indeed, if allowed to proceed, this case undoubtedly will be the first of many such suits by Plaintiffs' counsel in her quest to forum shop an interpretation of net equity that accords with hers. Instead, consistent with its lack of subject matter jurisdiction over this case, and in the manifest interest of justice, judicial economy, and adjudicative consistency, this Court should transfer this case to the District Court in New York pursuant to Section 1631 of title 28. The District Court can then refer the case to the Bankruptcy Court, where, notwithstanding its lack of merit, the case belongs.

## Lack of Personal Jurisdiction

Pursuant to Section 1631, the case also should be transferred to the New York District Court for want of personal jurisdiction over the Defendants. All of the alleged actions about which Plaintiffs complain occurred outside of this district.

There are two types of constitutionally-recognized personal jurisdiction - general and specific. <u>See</u> <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d at 102. The distribution of general informational literature on a national scale, either through mailing, the internet, or statements in mass media, without the specific and intentional targeting of the forum state, is insufficient to create jurisdiction of either type. <u>See, e.g.</u>, <u>D'Jamoos</u>, 566 F.3d at 104; <u>Gehling v. St. George's Sch. of</u> <u>Med., Ltd.</u>, 773 F.2d 539, 542 (3d Cir. 1985). Further, because the focus of jurisdictional analysis is the actions of the *defendant*, representations made by third parties are not relevant. <u>See</u> <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 318 (3d Cir. 2007). The mere allegation that the plaintiff was affected in the forum state is also insufficient to support jurisdiction. <u>See</u> <u>IMO</u> <u>Indus. Inc. v. Kiekert, AG.</u>, 155 F.3d 254, 263 (3d Cir. 1998).

In the present case, Plaintiffs have not alleged that Defendants engaged in any activity intentionally targeted at this State.  In fact, most of Plaintiffs' allegations involve actions by non-parties.  (See, e.g., Complaint ¶¶ 70-77, 87-88, 108, 114, 134-135, 197-199.)  Their remaining allegations are primarily based upon actions allegedly taken by SIPC, not Defendants, and consist of statements made in papers filed in prior SIPA liquidations, or general statements made in SIPC's bylaws, annual reports, or other informational materials made available through SIPC's website.  (See, e.g., Complaint ¶¶ 67-68, 78-81, 111-113, 124-126, 143, 152, 159-166.)  A handful of Plaintiffs' allegations involve general statements made in Congressional testimony, or in national media outlets, *after* the commencement of the BLMIS liquidation.  (See Complaint ¶¶ 114, 138.)  These statements are general descriptions of SIPC, its activities, and the nature and limits of the relief that it provides.  None of the alleged statements references New Jersey, and none is any way targeted at this State.

## CONCLUSION

For all of the aforementioned reasons, the Defendants' motion to transfer this case to the United States District Court for the Southern District of New York for referral to the Bankruptcy Court should be granted.

GREENBAUM ROWE SMITH
 & DAVIS, LLP
Attorneys for Defendants

By: _____
     Paul A. Rowe
     Alan S. Naar

Date: April 23, 2010