JEFFREY PAUL EHRLICH
*Trial Attorney*
U.S. Department of Justice
Ben Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: 202-353-2574
Facsimile: 202-616-5200
e-mail: jeff.ehrlich@usdoj.gov
Attorney for the United States

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISSA CANAVAN et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>STEPHEN HARBECK et al.,<br><br>  Defendants. | Hon. Faith S. Hochberg<br>Civil Action No. 10-954 (FSH)<br><br>Return Date: May 3, 2010 |

REPLY BRIEF IN SUPPORT OF
<u>UNITED STATES' MOTION TO SUBSTITUTE</u>

  Plaintiffs allegedly lost money in Bernard Madoff's Ponzi scheme. They filed claims for their alleged losses with the court-appointed trustee for the liquidation of Madoff's investment firm. A federal bankruptcy court in New York is presently adjudicating those claims.[1]

---

  [1] *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-1789 (BRL) (Bankr. S.D.N.Y.).

In the liquidation proceeding, the trustee determined that Madoff's customers were owed the amounts they deposited with Madoff, less amounts withdrawn. The trustee sought court-approval for his approach, and Plaintiffs objected. They urged the adoption of a compensation scheme based on the amounts of their last account statements, despite that those statements were entirely fictitious. Finding Plaintiffs' proposal to be "simply absurd," the court approved the trustee's method.[2]

Plaintiffs then filed this suit seeking to blame certain SIPC officials for originally adopting the compensation method employed by the trustee. Plaintiffs accuse Defendants of adopting the cash-in/cash-out method as a "calculated" effort "to save SIPC billions of dollars."[3]

At the time of the alleged conduct, two of the Defendants were federal employees. David G. Nason and David J. Stockton were appointed SIPC directors by their respective employers, the Treasury Department and the Federal Reserve Board. Accordingly, the Attorney General's designee certified that the federal Defendants' acts were within the scope of their employment.[4] And, because federal

---

[2] *See In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 140 (Bankr. S.D.N.Y. 2010).

[3] Compl. ¶ 98.

[4] *See* Doc. 24-2.

employees are absolutely immune for such acts, the United States moved to substitute itself for the federal Defendants.[5]

Plaintiffs make three arguments against substitution. First, they contend that the federal Defendants were not acting within the scope of their employment when they allegedly adopted the cash-in/cash-out approach because that decision (although subsequently endorsed by the bankruptcy court) constituted a fraud. But even fraudulent acts can be within the scope of employment, as long as they were motivated at least partly by service to the employer, as was certainly the case here.

Second, Plaintiffs argue that the alleged conduct falls under the Westfall Act's exception for "violation of a statute of the United States under which [an] action against an individual is otherwise authorized." Plaintiffs' Complaint, however, alleges violations of New Jersey law, not a federal statute. Moreover, the federal statute on which Plaintiffs rely (in their response, but not their Complaint) merely grants immunity for certain conduct; it does not create a right of action against individuals, and so does not defeat the Westfall Act here.

Finally, Plaintiffs argue that no substitution may occur until they have taken discovery and the Court has held an evidentiary hearing. But Plaintiffs do not identify any disputed fact affecting whether substitution is proper. The Court

---

[5] *See* Doc. 24-1.

should therefore determine substitution based on the certification and pleadings, without subjecting the immune federal Defendants to the burdens of discovery and protracted litigation.

**I.     The federal Defendants were within the scope of their employment.**

"Whether an employee's conduct was within the scope of employment for the purposes of [the Westfall Act] is governed by the law of respondeat superior of the state where the conduct occurred."[6] The conduct that allegedly occurred here, the adoption and countenance of a purportedly illegal compensation scheme for Madoff investors, took place in Washington, D.C., where SIPC is located.

In their response, Plaintiffs acknowledge that scope-of-employment is "controlled by the law of the state in which the negligent or wrongful conduct

---

[6] *Kielty v. Ali*, No. 07-5719 (MLC), 2008 WL 2783340, at *3 (D.N.J. July 16, 2008); *see also Conn v. United States*, No. 09-2572, 2010 WL 1499585, at *2 (3d Cir. Apr. 15, 2010) ("Whether a government employee is acting within the scope of her office is 'defined by the applicable state law of respondeat superior' . . . ."); *Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009) ("To determine whether an employee was acting within the scope of his employment under the Westfall Act, courts apply the *respondeat superior* law of the state in which the alleged tort occurred."); *McLaclan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001) (applying "respondeat superior principles of state law" of state where "the conduct at issue . . . took place"); *Doughty v. U.S. Postal Serv.*, 359 F. Supp. 2d 361, 365 (D.N.J. 2005) ("Whether a defendant was acting within the scope of his employment at the time of the underlying incident must be decided in accordance with the law of the State where the alleged incident took place.").

occurred."[7] Yet, inexplicably, Plaintiffs argue that because New Jersey is the "forum state," the Court must apply New Jersey's choice-of-law rules to determine the applicable substantive law.[8] Those rules, according to Plaintiffs, require application of New Jersey's scope-of-employment law.[9]

Plaintiffs were right when they first asserted that the applicable law is that of where the tort allegedly occurred—here, Washington, D.C. But whether the Court applies D.C. or New Jersey law, the result should be the same: both jurisdictions use the Restatement (Second) of Agency's test to define scope-of-employment.[10] That test examines whether the conduct (1) is the type the servant was employed to perform; (2) occurred substantially within authorized time and space limits; and (3) was actuated, at least in part, by a purpose to serve the master.[11] The federal Defendants meet this test.

---

[7] Pls.' Resp. at 6.

[8] *Id.*

[9] *Id.* at 6-7.

[10] *See Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) (holding that "District of Columbia law . . . defines the scope of employment in accordance with the Restatement (Second) of Agency"); Pls.' Resp. at 7 (noting that "[t]o determine whether the Alleged Federal Defendants were acting within the scope of their employment when they committed the acts alleged in the Complaint, New Jersey will apply the three-part test set forth in the Restatement . . . .").

[11] *See* Pls.' Resp. at 7.

First, the federal Defendants were employed to perform the alleged acts. Indeed, each was appointed by his employer to serve on SIPC and to participate in its policymaking. Second, the alleged acts were committed during SIPC meetings, and thus were within the authorized time and space limits.

Finally, the federal Defendants' alleged acts were done, at least in part, to serve their employer, the United States. Although SIPC is not a federal agency, the United States *does* have an interest in monitoring SIPC's financial exposure. SIPC is authorized to borrow from the United States when its own funds are exhausted.[12] Because taxpayer funds are at risk, Congress wanted Federal Reserve and Treasury representatives to serve as SIPC directors to make sure SIPC lawfully expends its funds.[13] But even if, as Plaintiffs allege, the federal Defendants adopted the cash-

---

[12] *See* 15 U.S.C. 78ddd(g) (authorizing SEC to make loans to SIPC if SIPC's fund is "insufficient"); 15 U.S.C. 78ddd(h) (directing Treasury Secretary to lend to SEC up to $1 billion to permit SEC to make loans to SIPC); Compl. ¶ 83.

[13] *See* S. Rep. No 91-1218, at 4-5 (1970) (noting that director from "the Federal Reserve Board represents the important relationship that exists between the securities industry and the banking community"); *id.* at 5 ("A place . . . for the Secretary of the Treasury is appropriate because of the important role that the Treasury borrowing authority plays in the SIPC proposal."); *id.* (noting that "because SIPC will have ultimate access to public funds by provision of the $1 billion of Treasury borrowing authority, it was considered in the public interest" that SIPC directors include representatives "from the public sector").

6

in/cash-out approach in a "calculated" effort "to save SIPC billions of dollars,"[14] that decision also would have benefitted the United States by making it less likely that it would have to lend SIPC public funds.

Plaintiffs, in their response, hardly challenge these points. Their only argument is that "acts of fraud are not within the scope of an officer's or director's employment."[15] But under both D.C. and New Jersey law, even intentional torts, *including fraud*, can be within the scope of employment.[16]

---

[14] Compl. ¶ 98.

[15] Pls.' Resp. at 7.

[16] *See, e.g.*, *Wilson*, 535 F.3d at 712 (holding that conduct "was in the defendants' scope of employment regardless of whether it was unlawful or contrary to the national security of the United States"); *Thomas v. Shinseki*, 657 F. Supp. 2d 74, 77 (D.D.C. 2009) ("Thomas attempts to sue defendants in their individual capacity for fraud, conspiracy to commit fraud, and intentional infliction of emotional distress. The Department of Justice, however, has certified that all of the defendants acted within the scope of their employment . . . . Accordingly, the defendants are immunized from these claims and Thomas's suit . . . must be converted into an FTCA action . . . ."); *Kielty v. Ali*, No. 07-5719 (MLC), 2008 WL 2783340, at *4 (D.N.J. July 16, 2008) ("Where [the test's] criteria are satisfied, even intentional torts may be considered within the scope of employment."); *id.* (citing cases where racial discrimination, defamation, and retaliatory conduct were considered within scope of employment); *Borawski v. Henderson*, 265 F. Supp. 2d 475, 482 (D.N.J. 2003) ("Where [the test's] criteria are satisfied, even intentional torts *and crimes* may be considered within the scope of employment.") (emphasis added); *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C. 2001) (holding that "an employee's conduct may amount to sexual assault and still be 'actuated, *at least in part*, by a desire to serve [the employer's] interest'"); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (holding that

The tort cases[17] relied on by Plaintiffs are distinguishable. There, employees acted to benefit themselves, not their employers. In *Siemens*, for example, a teller conspired to cash fraudulent checks at the bank where she worked.[18] The court found that this arrangement could not have been "motivated, in whole or in part, to serve [the bank's] interests."[19] Similarly, in *Estate of Beim*, a bank teller conspired to defraud her own employer, even profiting from her venture (until she got caught).[20] Not surprisingly, the court found that the teller's scheme to defraud her employer was not in the employer's interest.[21]

In contrast to those employees, the federal Defendants are not alleged to have benefitted personally from their acts. Rather, Plaintiffs allege that the federal Defendants' acts were "calculated to save *SIPC* billions of dollars."[22] But even if

---

reasonable juror could find that laundromat employee acted within scope of employment when he shot customer in dispute over missing shirts).

[17] *See, e.g.*, *Siemens Bldg. Techs. v. PNC Fin. Servs.*, 226 Fed. Appx. 192 (3d Cir. 2007); *Estate of Beim v. Hirsh*, 121 Fed. Appx. 950 (3d Cir. 2005).

[18] *See Siemens*, 226 Fed. Appx. at 196.

[19] *See id.*

[20] *See Estate of Beim*, 121 Fed. Appx. at 953.

[21] *See id.* at 954-55.

[22] Compl. ¶ 98 (emphasis added).

true, those acts also would have benefitted the United States, which has an interest in making sure SIPC expends its funds judiciously.

Also distinguishable is Plaintiffs' *qui tam* case.[23] In *Haskins*, the court recognized that under the False Claims Act, individuals could be held liable for submitting false claims even when acting within the scope of their employment.[24] The Westfall Act, however, expressly immunizes employees in such circumstances.[25] Moreover, the *Haskins* court did not even apply New Jersey law. Rather, in a context having nothing to do with the Westfall Act, it applied a section of the Restatement that is at odds with the many cases, applying New Jersey law, that have held that fraudulent acts can be within the scope of employment.[26]

Finally, the Court should reject Plaintiffs' argument that substitution must be denied because, otherwise, "Plaintiffs would have no remedy for [the federal

---

[23]  *See United States ex rel. Haskins v. Omega Inst., Inc.*, 11 F. Supp. 2d 555 (D.N.J. 1998).

[24]  *Id.* at 564.

[25]  *See* 28 U.S.C. § 2679(b)(1).

[26]  *See, e.g., Kielty*, 2008 WL 2783340, at *4 (applying New Jersey law to hold that "even intentional torts may be considered within the scope of employment"); *id.* (citing New Jersey cases where racial discrimination, defamation, and retaliatory conduct were considered within scope of employment); *Borawski*, 265 F. Supp. 2d at 482 (applying New Jersey law and holding that "[w]here [the test's] criteria are satisfied, even intentional torts and crimes may be considered within the scope of employment").

9

Defendants'] fraudulent conduct."[27]  The Westfall Act immunizes federal employees from suit even where the United States would also be immune from suit.[28]

Because the federal Defendants were acting within the scope of their employment, they are absolutely immune from Plaintiffs' lawsuit.

## II.    Plaintiffs' claims do not fall within an exception to the Westfall Act.

The Westfall Act does not bar claims "for a violation of a statute of the United States under which such action against an individual is otherwise authorized."[29]  Plaintiffs contend that SIPA is such a statute.  It provides, in part: "Neither SIPC nor any of its Directors, officers or employees shall have any liability to any person for any action taken or committed in good faith under or in connection

---

[27]  Pls.' Resp. at 2.

[28]  *See United States v. Smith*, 499 U.S. 160, 165 (1991) (concluding that Westfall Act "immunizes Government employees from suit even when an FTCA exception precludes recovery against the Government"); *Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 65 n.9 (1st Cir. 2001) (recognizing that "the Supreme Court has held that 28 U.S.C. § 2679(b)(1) immunizes federal employees from suit even when an FTCA exception precludes recovery against the United States"); *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994) ("*Smith* held that the Westfall Act immunizes the employee for conduct within the scope of employment *even if* there is no remedy against the United States.").

[29]  *See* 28 U.S.C. 2679(b)(2)(B).

with any matter contemplated by this chapter."[30]  Plaintiffs' reliance on SIPA is misplaced for two reasons.

First, Plaintiffs have not brought a federal cause of action "for violation of a statute of the United States."  That Plaintiffs have not asserted a federal claim is demonstrated by their Complaint's alleged jurisdictional basis:  diversity of citizenship.[31]  Plaintiffs do not invoke federal-question jurisdiction, as they would have had they asserted a federal question.  Moreover, Plaintiffs' claims are all based on New Jersey common law or a state statute.[32]  Their "first claim" is for "bad faith failure to pay insurance claims," in violation of "New Jersey law."[33]  Their "second claim" is for "fraud."[34]  Their "third claim" is for "violation of New Jersey Consumer Fraud Act."[35]  Their final, "fourth claim," is "for promissory estoppel."[36]

---

[30]  15 U.S.C. § 78kkk(c).

[31]  *See* Compl. ¶ 29.

[32]  *See id.* ¶ 203 (alleging, in paragraph subsequently incorporated into each claim for relief, that Defendants are liable "[u]nder New Jersey law").

[33]  *See id.* at 66 & ¶ 205.

[34]  *See id.* at 67.

[35]  *See id.* at 68.

[36]  *See id.* at 70.

Because Plaintiffs have not asserted a federal cause of action for violation of SIPA, the Westfall Act's exception does not apply here.

Second, even if Plaintiffs had asserted a federal cause of action based on SIPA, they are wrong in their contention that SIPA is "a statute of the United States under which [an] action against an individual is . . . authorized."[37] Again, the provision on which Plaintiffs rely states only that SIPC directors may not be held liable "for any action taken or committed in good faith."[38] The statute grants immunity for good-faith actions; it does not "authorize" lawsuits against anyone.

SIPA is thus different from the types of statutes that courts have found to be excepted from the Westfall Act.[39] In *Apampa*, for example, the court recognized that the Westfall Act would not bar a claim based on a violation of the federal wiretapping statute, 18 U.S.C. § 2520(a).[40] That statute provides that victims of misused wiretaps "may in a civil action recover from the person . . . [who] engaged in that violation such relief as may be appropriate."[41] Similarly, in *Li*, the court held

---

[37] *See* 28 U.S.C. 2679(b)(2)(B).

[38] 15 U.S.C. § 78kkk(c).

[39] *See, e.g.*, *Apampa v. Layng*, 157 F.3d 1103 (7th Cir. 1998); *Li v. Canarozzi*, No. 95 Civ. 0706 (LBS), 1997 WL 40979 (S.D.N.Y. Feb. 3, 1997).

[40] *See Apampa*, 157 F.3d at 1105.

[41] 18 U.S.C. § 2520(a).

that the Westfall Act would not bar a claim based on a violation of 42 U.S.C. § 1985(3).[42] That statute provides that victims of a conspiracy "may have an action for the recovery of damages . . . against any one or more of the conspirators."[43] Unlike the statutes in *Apampa* and *Li*, SIPA does not create a right of action. Not surprisingly, then, Plaintiffs cannot point to a single case where SIPA was held to be an exception to the Westfall Act.

The Court should reject Plaintiffs' argument that their claims fall within the Westfall Act's exception for statutes that authorize actions against individuals.

## III. Discovery and an evidentiary hearing would be inappropriate.

Finally, the Court should reject Plaintiffs' demand for discovery and an evidentiary hearing. Plaintiffs concede that if the facts can be determined without an evidentiary hearing, the court may rule on substitution based on the certification and pleadings.[44] Only if there is a genuine factual issue material to scope-of-employment must the court permit discovery and a hearing.[45]

---

[42] *Li*, 1997 WL 40979, at *6.

[43] 42 U.S.C. § 1985(3).

[44] *See* Pls.' Resp. at 5 (quoting *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993)); *see also Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994) (holding that discovery is appropriate only where "the Attorney General's certification is based on a different understanding of the facts than is reflected in the complaint").

[45] *See id.*

Here, Plaintiffs have failed to identify any disputed fact affecting substitution. The scope-of-employment certification was based on the Complaint,[46] and, solely for purposes of determining substitution, the United States has not disputed any *fact* alleged by Plaintiffs.[47]  Discovery and an evidentiary hearing would therefore be inappropriate.[48]  Instead, the Court should expeditiously grant substitution to lift

---

[46]  *See* Doc. 24-2 at 1.

[47]  Neither the United States nor the Court must accept Plaintiffs' conclusory allegations.  *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[48]  *See, e.g.*, *Winters v. Taylor*, 333 Fed. Appx. 113, 117 (7th Cir. 2009) ("[A] district court is not required to conduct an evidentiary hearing on the scope-of-employment issue where . . . the court can rely on the plaintiff's own allegations."); *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1155 (4th Cir. 1997) ("Only if the district court concludes that there is a genuine issue of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing."); *RMI Titanium Co. v. Westinghouse Elec.*, 78 F.3d 1125, 1143 (6th Cir. 1996) ("No hearing on certification is necessary where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment."); *Casey v. Guthrie*, No. 09-cv-951-JPG, 2010 WL 455497, at *1 (S.D. Ill. Feb. 4, 2010) ("Of course, if a defendant's Westfall certification is drawn from facts pleaded in the complaint, discovery on the issue will not be necessary."); *Murrietta v. Banner Health Sys.*, No. CV-06-371-PHX-DGC, 2006 WL 1663236, at *3 (D. Ariz. June 9, 2006) (denying discovery because plaintiffs' "arguments, even if supported by discovery, would not overcome the Attorney General's certification"); *Brumfield v. Sanders*, 50 F. Supp. 2d 381, 385 (M.D. Pa. 1999) ("Permitting additional discovery when the Attorney General's certification is not based on a different understanding of the facts than is reflected in [the] complaint would undermine the intent of the Westfall Act to protect federal employees from responding to state law tort claims."), *aff'd*, 232 F.3d 376 (3d Cir. 2000).

from the federal Defendants the heavy burden of litigation, incurred simply as a result of their federal public service.

## CONCLUSION

The Court should dismiss this action as to Defendants David G. Nason and David J. Stockton, and substitute in their place as a defendant the United States.

DATED:    April 26, 2010.                    Respectfully submitted,

                                             TONY WEST
                                             Assistant Attorney General

                                             PAUL J. FISHMAN
                                             *United States Attorney*

                                             PHYLLIS J. PYLES
                                             *Director, Torts Branch*

                                             MARY M. LEACH
                                             *Assistant Director, Torts Branch*

                                             s/ Jeffrey Paul Ehrlich
                                             JEFFREY PAUL EHRLICH
                                             *Trial Attorney*
                                             U.S. Department of Justice
                                             Ben Franklin Station, P.O. Box 888
                                             Washington, D.C. 20044
                                             Telephone: 202-353-2574
                                             Facsimile: 202-616-5200
                                             e-mail: jeff.ehrlich@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2010, I served by CM/ECF, upon all counsel of record, a copy of this reply brief.

s/ Jeffrey Paul Ehrlich