## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

-----------------------------------------------------------------

LISSA CANAVAN, LESLIE GOLDSMITH, and
JUDITH KALMAN on behalf of themselves and       Civil No. 2:10-cv-00954-FSH-PS
all others similarly situated,

     Plaintiffs,

   vs.

STEPHEN HARBECK, ARMANDO J. BUCELO,
JR., TODD S. FARHA, WILLIAM H. HEYMAN,
WILLIAM S. JASIEN, DAVID G. NASON, MARK
S. SHELTON, and DAVID J. STOCKTON,

     Defendants.

-----------------------------------------------------------------

---

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
### FOR TRANSFER OF CASE TO THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK FOR REFERRAL TO
### BANKRUPTCY COURT

---

GREENBAUM, ROWE, SMITH
& DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
(732) 549-5600
Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

REPLY ARGUMENT ..................................................................................................... 1

I.    THIS COURT LACKS JURISDICTION ........................................................ 5

      A.    Personal Jurisdiction .......................................................................... 5

      B.  Subject Matter Jurisdiction.................................................................. 6

II.   VENUE IS IMPROPER IN THIS COURT................................................... 6

III.  TRANSFER TO THE BANKRUPTCY COURT IS THE PROPER REMEDY .............. 9

      A.    The Bankruptcy Court Has "Related To" Jurisdiction Under 28 U.S.C. §
            1334(b)............................................................................................. 9

      B.    The Impact on the SIPA Liquidation ................................................. 12

      C.    Transfer of the Case is Not Only Proper But A Necessity .................. 14

CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Bates v. C&S Adjusters, Inc.,
    980 F.2d 865 (2d Cir. 1992) ................................................................................................ 9

Browning v. Levy,
    283 F.3d 761 (6th Cir. 2002) .................................................................................... 6, 11, 14

Cottman Transmission Sys., Inc. v. Martino,
    36 F.3d 291 (3d Cir. 1994) ........................................................................................... 7, 9

D'Jamoos v. Pilatus Aircraft Ltd.,
    566 F.3d 94 (3d Cir. 2009) ................................................................................................. 5

Dunlap v. Friedman's, Inc.,
    331 B.R. 674 (S.D. W.Va. 2005) ...................................................................................... 9

Frank M. Sheesly Co. v. Hes Contractors, Inc.,
    2007 WL 2823482 (W.D. Pa. Sept. 26, 2007) .................................................................. 9

Gehling v. St. George's Sch. Of Med., Ltd.,
    773 F.2d 539 (3d Cir. 1985) .............................................................................................. 6

IMO Indus. Inc. v. Kiekert, AG,
    155 F.3d 254 (3d Cir. 1998) .............................................................................................. 5

In re A.R. Baron Co., Inc.,
    226 B.R. 790 (Bankr. S.D.N.Y. 1998) ............................................................................ 12

In re Bell & Beckwith,
    124 B.R. 35 (Bankr. N.D. Ill. 1990) ............................................................................... 13

In re Bernard L. Madoff Inv. Securities LLC,
    424 B. R. 122 (Bankr. S.D.N.Y. 2010) ....................................................................... 2, 12

In re Kaplan Building Systems, Inc.,
    104 F.3d 589 (3d Cir. 1997) ..................................................................................... 11, 14

In re Lenz,
    80 B.R. 528 (Bankr. D. Colo. 1987),
    aff'd, 110 B. R. 523 (D. Colo. 1990) .................................................................... 11, 12, 14

In re Philadelphia Newspapers, LLC,
    407 B.R. 606 (Bankr. E.D. Pa. 2009) ............................................................................. 12

In re Semcrude, L.P.,
    2010 WL 1437638 (Bankr. D. Del. 2010)................................................................... 11, 14

In re W.R. Grace & Co., Inc.,
    591 F.3d 164 (3d Cir. 2009)........................................................................................ 10

Market Transition Facility of New Jersey v. Twena,
    941 F.Supp. 462 (D.N.J. 1996) .................................................................................... 7

Matter of Oberweis Secs., Inc.,
    135 B.R. 842 (Bankr. N.D. Ill. 1991) ........................................................................ 13

O'Connor v. Sandy Lane Hotel Co., Ltd.,
    496 F.3d 312 (3d Cir. 2007)......................................................................................... 5

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984) ................................................................................. 10, 11

Print Data Corp. v. Morse Financial, Inc.,
    2002 WL 1625412 (D.N.J. 2002).................................................................................. 8

Sanderson v. Allstate Ins. Co.,
    738 F.Supp. 432 (D. Colo. 1990) ............................................................................... 11

SIPC v. Barbour,
    421 U. S. 412 (1975) .................................................................................................... 3

Thomason Auto Group LLC v. Ferla,
    2009 WL 3491163 (D.N.J. 2009).................................................................................. 9

**Statutes**

15 U.S.C. §78aaa et seq. .................................................................................................... 1

15 U.S.C. §78eee(b)(2)(A)(i)......................................................................................... 6, 9

15 U.S.C. §78eee(b)(4) ...................................................................................................... 6

15 U.S.C. §78fff-2(a)(2) .................................................................................................... 3

15 U.S.C. §78fff-2(b).................................................................................................. 3, 12

15 U.S.C. §78fff-3(a) .................................................................................................. 3, 12

15 U.S.C. §78lll(4)........................................................................................................... 12

28 U.S.C. §1334(b) ...................................................................................................... 9, 11

28 U.S.C. §1391(a)(2)........................................................................................................ 7

28 U.S.C. §1406(a) ........................................................................................................................ 9

28 U.S.C. §157(a) ......................................................................................................................... 9

28 U.S.C. §1631 .......................................................................................................................... 6, 9

29 U.S.C. §1412 ........................................................................................................................... 9

The Defendants have filed a motion ("Motion") requesting that this case be transferred to the United States District Court for the Southern District of New York ("New York District Court") for referral to the Bankruptcy Court for that District ("Bankruptcy Court"). Defendants submit this reply to Plaintiffs' opposition to the Motion.[1]

## REPLY ARGUMENT

The complaint in this case arises out of the Bernard L. Madoff Investment Securities LLC ("BLMIS") liquidation proceeding in New York. The named plaintiffs sue on behalf of themselves and a purported class of BLMIS investors (collectively, "Plaintiffs") whose claims were denied either partially or fully in that proceeding. The liquidation of BLMIS is under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA"), which creates a specialized form of bankruptcy for failed securities broker-dealers.

The Plaintiffs filed claims, or allegedly had claims filed for them, in the BLMIS proceeding, asserting that they were owed the cash and securities shown on their last BLMIS account statements.[2] The claims were filed with the trustee for the liquidation of BLMIS ("Trustee") who denied the claims to the extent based on a last account statement calculus. The Trustee's investigation of BLMIS revealed that the "account statements" issued by BLMIS to investors were entirely fictitious. There was no cash or securities in the Plaintiffs' accounts. The "securities" positions shown on "account statements" never existed. Any "investments" were invented by the principal of BLMIS, Bernard Madoff ("Madoff"), based on the historical performance of securities

---

[1] Two of the Defendants served as Government Directors on the Board of the Securities Investor Protection Corporation ("SIPC"). A motion to substitute the United States for the two Defendants is pending. The instant Motion is made on behalf of all of the Defendants unless substitution is allowed. In that event, the Motion is on behalf of the remaining Defendants only.

[2] In suing on behalf of themselves and others, the named Plaintiffs allege that "the claims asserted in [the] complaint are typical of all members of the Class" and that the "claims of the plaintiffs are not subject to any unique defense." Complaint, ¶36. Because the specific members of the class are not identified, the facts as stated herein apply generally to those claimants asserting that their net equity is based on a last fictitious account statement calculus.

that were chosen, after the fact, by Madoff in order to yield returns that were pre-determined and

fabricated by him.  Funds that Plaintiffs withdrew while BLMIS was in business belonged to other

investors. In light of these findings, the Trustee concluded that consistent with SIPA, the Plaintiffs'

"net equity" was the net amount of their deposits with BLMIS.

The Plaintiffs filed objections with the Bankruptcy Court, seeking to reverse the Trustee's

denial of their claims.  The Bankruptcy Court upheld the Trustee's determinations, concluding that

to give the Plaintiffs fictitious profits would, in accordance with Second Circuit law, be "simply

absurd" because it would "credit the fraud and legitimize the phantom world created by Madoff ...."

In re Bernard L. Madoff Inv. Securities LLC, 424 B. R. 122, 140 (Bankr. S.D.N.Y. 2010). The

Plaintiffs now come to this Court seeking an interpretation of "net equity" under SIPA different

from the determination of "net equity" by the Bankruptcy Court – the court vested with exclusive

jurisdiction under SIPA to determine claims in the BLMIS liquidation proceeding.  See Complaint,

¶40 ("... the issue of the proper determination of net equity is a central issue in determining all

Class members' claims ...").  Their suit is wholly frivolous and misguided for many reasons

including the following.

First, the Plaintiffs allege that they have been harmed by the actions of SIPC officials

because Plaintiffs' claims were denied in the SIPA proceeding.  See Complaint, ¶42 (" ... the

Director's [sic] promulgation of SIPC's Net Investment Policy [is a] bad faith action[] in direct

violation of SIPA's definition of 'net equity' ...") and ¶16 ("By virtue of SIPC's Net Investment

Policy, the defendants have perpetrated a fraud ...").[3]  However, SIPC officials have no statutory

authority to allow or deny claims.  Under SIPA, claims are filed with the trustee, and not with SIPC.

---

[3]  Although Plaintiffs assert that this case is not about "whether SIPC will enjoy the benefits of the
'net equity' ruling" of the Bankruptcy Court, Plaintiffs' Brief at 6, Plaintiffs challenge the Trustee's
determination of net equity in multiple paragraphs of their complaint. See, for example, Complaint,
¶¶ 4-7, 14-17, 40, 42-43, 45, 59, 94-100, 114-117, 138-144, 203-213.

SIPA §78fff-2(a)(2). It is the trustee, not SIPC, who decides and satisfies claims. SIPA §78fff-2(b). The only way in which an investor can receive SIPC funds is by filing a claim in a SIPA proceeding, and having his claim allowed by the trustee or if the claim is denied by the trustee, by seeking to have that decision overturned by the court vested with exclusive jurisdiction to hear those claims – the Bankruptcy Court of the District where the SIPA proceeding was filed. Thus, whether a claim should or should not be allowed rests with the trustee and the courts, and not SIPC or its officials. For the Plaintiffs to allege that any asserted damage was caused by SIPC officials is to lay blame as to a matter over which they have no control.

Second, SIPC has no authority to pay claimants in a SIPA liquidation proceeding. By statute, it can only advance funds to the trustee for the satisfaction of claims, and to the extent of its advances, it is subrogated to the claim of the fully satisfied customer against the estate and third parties. SIPA §78fff-3(a). If a claim has been denied and the denial sustained to finality by the courts, SIPC cannot, and its officials cannot require SIPC to, satisfy a claimant in disregard of a court decision. Nor does an investor have standing to compel SIPC to expend its funds. See SIPC v. Barbour, 421 U. S. 412 (1975). Here, the Plaintiffs would have SIPC officials do what SIPC cannot do under the law.

Third, although Plaintiffs allege here that they have been damaged by the denial of their claims in the BLMIS liquidation proceeding, there has been no final resolution of the issue in New York. Plaintiff class members have appealed the Bankruptcy Court's decision and the Trustee has informed investors that if the Bankruptcy Court's decision on net equity is reversed on appeal, he will re-determine their claims. See www.madofftrustee.com (FAQs 1).[4]    Many of the class

---

[4]    The BLMIS liquidation web site provides as follows in answer to Question 1 of "Frequently Asked Questions:"

> Q: What happens if a Court decides that the Trustee's interpretation of "net equity" is incorrect?

Plaintiffs withdrew more than they invested with BLMIS, receiving fake "profits" that were not profits at all because Madoff never made any investments, but were actually monies "invested" by and stolen from later BLMIS customers – a classic Ponzi scheme. Even assuming that Plaintiffs suffered a loss due to the denial of their claims, whether they are entitled to SIPA protection or not, has yet to be finally determined.

Fourth, although Plaintiffs maintain that the "damages [that they] seek in this action are not recoverable at all in the bankruptcy court case and will not reduce the Plaintiffs' claims in the bankruptcy case,"[5] indisputably, they will. For example, the Plaintiffs contend that "[b]y virtue of SIPC's Net Investment Policy, the defendants have perpetrated a fraud upon the Customers and are personally liable, jointly and severally, for the damages that SIPC's Net Investment Policy has caused to Customers in the full amount of their lost investments." Complaint, ¶16 (emphasis added). At a minimum, the amount that Plaintiffs seek in this case is the amount they seek in the SIPA case, namely, the value of their accounts as shown on their last fictitious account statements (i.e., their alleged "lost investments"). Here, the putative class consists of over 4,000 members. Complaint, ¶¶33, 41. These are the same 4,000 members who have claims in the BLMIS proceeding. Id., ¶¶1, 2, 35. The impact of the instant case on the administration of the liquidation proceeding is evident. If Plaintiffs were permitted to pursue this case here and were to prevail, their claims in the SIPA case would be reduced correspondingly by the amount of any award and possibly, even extinguished. Because property collected by a trustee for distribution to customers is shared pro rata by such customers, the trustee cannot make a final distribution of such property until

---

A:    Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. This means that the Trustee will re-determine customer claims in accordance with any such Court order.

[5] Plaintiffs' Brief at 2.

he knows the total value of claims eligible to share in the distribution. The ability of the more than 4,000 class Plaintiffs to share in customer property will depend not only upon a final resolution of the net equity issue in the courts, but also upon their ability to recover in this suit. Thus, whether the Plaintiffs win or lose, the administration of the liquidation proceeding will be disrupted and delayed. The Trustee will need to expend time and resources monitoring this case to determine whether Plaintiffs have claims in the SIPA case. The result would be that customers with valid claims entitled to a share of customer property would be forced to wait for their distributions from the Trustee, until this case was resolved to finality.

In short, because this lawsuit is inextricably tied to the BLMIS liquidation proceeding, and for the reasons discussed more fully below, it should be transferred to the New York District Court for referral to the Bankruptcy Court.

## I.    THIS COURT LACKS JURISDICTION

### A.    Personal Jurisdiction

Plaintiffs do not even respond to Defendants' point (Opening Memorandum at 24-25) that the Court lacks personal jurisdiction over the Defendants. That is not surprising. They cannot. The allegations in the Complaint do not even purport to satisfy the requirements for personal jurisdiction. Plaintiffs make no allegations of specific conduct by the Defendants and/or SIPC that are required to establish personal jurisdiction, but rather refer to general statements in explanatory literature, annual reports, general media outlets, Congressional testimony, and/or positions taken in court. See Complaint ¶¶ 67-68, 78-81, 111-114, 124-126, 138, 143, 159-166. None of these statements is in any way targeted at Plaintiffs, and none references New Jersey or is targeted at this State, as required for the Court to have personal jurisdiction. See, e.g., D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 318 (3d Cir. 2007); IMO Indus. Inc. v. Kiekert, AG, 155 F.3d 254, 263 (3d Cir. 1998); Gehling v. St.

5

George's Sch. Of Med., Ltd., 773 F.2d 539, 542 (3d Cir. 1985). The lack of any response to Defendants' opening memorandum on this issue and the glaring absence in the complaint of the necessary facts to establish personal jurisdiction mandate that this case be dismissed or transferred to a forum where the exercise of such jurisdiction would be proper.

**B.    Subject Matter Jurisdiction**

Plaintiffs also fail to address why the exclusive jurisdiction provisions in SIPA do not preclude the exercise of jurisdiction over this matter by this Court. A statute which vests exclusive jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute. See, e.g., Browning v. Levy, 283 F.3d 761, 778 (6th Cir. 2002). In the BLMIS case, as the court in which SIPC filed the application for a customer protective decree, the New York District Court had exclusive jurisdiction over, inter alia, "such debtor and *its property* wherever located ..." See SIPA §78eee(b)(2)(A)(i) (emphasis added). Upon removal of the proceeding to the Bankruptcy Court, the latter Court acquired, among other things, the District Court's exclusive jurisdiction over debtor property. See SIPA §78eee(b)(4).

As discussed in Defendants' opening memorandum at 21-24, Plaintiffs' action is a transparent attempt to obtain a ruling on net equity that is inconsistent with the Bankruptcy Court's March 1, 2010 opinion. For reasons previously discussed and expanded upon below, an inconsistent ruling on that issue by this Court will impact substantially the administration of the estate and cause substantial disruption and delay therein. That is precisely the kind of outcome that SIPA's exclusive jurisdiction provision, and the transfer provisions of 28 U.S.C. §1631, are designed to prevent.

## II.    VENUE IS IMPROPER IN THIS COURT

This Court not only lacks personal jurisdiction over the Defendants and subject matter jurisdiction, but venue is improper. Plaintiffs' contention that venue is proper is premised solely on

28 U.S.C. §1391(a)(2), which provides for venue "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…" The Third Circuit has emphasized that "the test for determining venue (under Section 1391(a)(2)) is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'…" – i.e., the events that triggered the dispute in question. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294-95 (3d Cir. 1994). As the Defendants pointed out in their opening memorandum, the alleged events triggering the instant dispute – the representations concerning SIPA protection about which Plaintiffs complain – all occurred outside New Jersey and were in no way targeted at this State. Cf., Market Transition Facility of New Jersey v. Twena, 941 F.Supp. 462, 466 and n.5 (D.N.J. 1996) (for purposes of venue under 28 U.S.C. §1391(a)(2), "a claim based on a fraudulent act is deemed to arise where the fraudulent act occurred"). Significantly, the fundamental basis for Plaintiffs' complaint, the BLMIS liquidation – where the Trustee set forth his position on "net equity" and where the challenged decision regarding plaintiffs' "net equity" was made – is proceeding in the Bankruptcy Court in New York, the very court to which this case should be transferred.[6] Plaintiffs have not come forward with any allegation that any Defendant acted wrongfully in New Jersey or reached out to or directed his conduct in any way toward New Jersey. There is simply no basis upon which this Court can find that any of the events or omissions giving rise to Plaintiffs' complaint, much less a "substantial part" thereof, took place in New Jersey. Accordingly, venue is not proper in New Jersey under 28 U.S.C. §1391(a)(2).

Plaintiffs' only response is that they allegedly relied in New Jersey on the Defendants' purported representations and such asserted reliance is sufficient to sustain venue here. Their support for their position is a single, unpublished case – Print Data Corp. v. Morse Financial, Inc.,

---

[6] Plaintiffs take the untenable position in their complaint that the Trustee's position on net equity was 'bad faith." To continue to assert that position after the Bankruptcy Court upheld the Trustee's position is in itself bad faith, but that issue is for another day.

2002 WL 1625412 (D.N.J. 2002). The plaintiff's allegations in <u>Print Data</u> were dramatically different from Plaintiffs' allegations here, however, and the case provides no support for Plaintiffs.

In <u>Print Data</u>, the plaintiff, a privately-held New Jersey company, sought interim and long term financing from the defendant, an out-of-state corporation, for the purposes of expansion and, ultimately, conversion to public status. <u>See</u> <u>Print Data</u>, 2002 WL 1625412 at * 1. After negotiations, the parties entered into a contract requiring the performance of financial services in New Jersey by the defendant. <u>See</u> <u>id.</u> at ** 1, 6. The plaintiff executed the contract in New Jersey. <u>Id.</u> at * 1. When the defendant failed to perform under the contract, the plaintiff sued for breach of contract and fraudulent inducement to contract, <u>inter alia.</u> <u>Id.</u> The plaintiff's fraud claim thus derived from a specific contract calling for performance in the forum state, and was based upon alleged fraudulent representations made directly to a New Jersey corporation, upon which that corporation foreseeably relied. <u>Id.</u> at ** 4, 6. As the court explained:

> If Plaintiff's allegations are believed, Defendants directed a final draft agreement into New Jersey, made fraudulent representations into New Jersey, and intended to direct their product (approximately $1,500,000 in financing) into New Jersey... Defendants cannot escape the fact that they knowingly entered into an agreement with a New Jersey company to provide financing for that company.

<u>Id.</u> at * 4. Thus, the defendant's alleged misrepresentations – the "triggering events" giving rise to the <u>Print Data</u> dispute – had a direct, specific, and extensive nexus with the forum state and were directed at that state.

Nothing of the kind is even alleged here. The Defendants entered into no contract with Plaintiffs. As noted above, Plaintiffs' fraud claims are based upon alleged general statements in informational or corporate documents, and general statements made in national media outlets or before Congress or in court. None of those statements references New Jersey in any way, and none was in any way directed at Plaintiffs or at this State. The alleged "triggering events" giving rise to this dispute thus have no connection with New Jersey, apart from the fact that the named Plaintiffs

8

reside here.  If that attenuated connection were enough to sustain venue here, then venue would be proper in every district in which a BLMIS investor resides, a patently absurd result and one squarely at odds with the purpose of the substantiality requirement in Section 1391(a)(2) – protecting the defendant from being haled into court in a district with no real relationship to the dispute.  See, e.g., Cottman, 36 F.3d at 294; Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992); Frank M. Sheesly Co. v. Hes Contractors, Inc., 2007 WL 2823482, at * 3 (W.D. Pa. Sept. 26, 2007).

### III.    TRANSFER TO THE BANKRUPTCY COURT IS THE PROPER REMEDY

Plaintiffs' only objection to the transfer of this case to the Bankruptcy Court is the mistaken contention that the Bankruptcy Court would lack subject matter jurisdiction.  To the extent that this suit is an attempt to obtain a decision on net equity that conflicts with the decision of the Bankruptcy Court, and thereby to affect the disposition of debtor property and the availability of SIPC advances in that case, the Bankruptcy Court has exclusive jurisdiction over this action under SIPA §78eee(b)(2)(A)(i).  Even assuming, arguendo, that it is not, because the case is, by any analysis, intertwined with and "related to" the BLMIS liquidation under 28 U.S.C. §§157(a) and 1334(b) for purposes of bankruptcy court jurisdiction, and the Bankruptcy Court is the "home court" for this proceeding, this case must be transferred to the District Court for referral to the Bankruptcy Court pursuant to 28 U.S.C. §§1406(a), 1412, and/or 1631 absent a compelling reason not to do so.  See, e.g., Thomason Auto Group LLC v. Ferla, 2009 WL 3491163, at ** 4-7 (D.N.J. 2009); Dunlap v. Friedman's, Inc., 331 B.R. 674, 678 (S.D. W.Va. 2005).  Plaintiffs have articulated no such reason and none exists.

### A.    The Bankruptcy Court Has "Related To" Jurisdiction Under 28 U.S.C. § 1334(b)

Plaintiffs acknowledge that this Circuit has long held that "related to" jurisdiction broadly encompasses any proceeding to which the bankruptcy debtor is not a party if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy…"

9

See, e.g., In re W.R. Grace & Co., Inc. ("Grace"), 591 F.3d 164, 171 (3d Cir. 2009) (quoting Pacor, Inc. v. Higgins ("Pacor"), 743 F.2d 984, 994 (3d Cir. 1984)). The Circuit has elaborated that:

> An action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action *(either positively or negatively)* and which in any way impacts upon the handling and administration of the bankrupt estate.

See id. (emphasis added). The Third Circuit has limited the scope of this standard by providing that a bankruptcy court lacks "related to" jurisdiction over a third-party action "if the only way in which that third-party action could have an impact on the debtor's estate is *through the intervention of yet another lawsuit.*" See id. at 173 (emphasis added).

Plaintiffs devote much of their opposition brief to a discussion of Pacor and Grace. However, a review of those cases reveals that Plaintiffs' reliance on them to establish that the Bankruptcy Court does <u>not</u> have "related to" jurisdiction of this case is based upon a selective reading of those cases that endorses a factual scenario not present here, and ignores clear, unequivocal language that is directly on point in this case: "... we have stated and restated in order for a bankruptcy court to have related to jurisdiction, to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy [] without the intervention of yet another lawsuit." Grace, 591 F.3d at 173.

Both Pacor and Grace involved third party asbestos litigation that had no direct impact on the debtors or their property but would only have an impact if judgments were entered against the defendants in those cases and those defendants prevailed in new litigation seeking indemnification from the debtors. Those cases rejected "related to" jurisdiction over third-party claims involving asbestos or asbestos-containing products supplied by the debtors when the third party claims did not directly result in liability for the debtor.

In contrast, here, the outcome of this third-party action could have an automatic impact upon the administration of the bankruptcy estate – without need for the filing and resolution of another suit. In these situations, this Circuit has long recognized that the bankruptcy court with jurisdiction

10

over that bankruptcy estate also has "related to" jurisdiction over the third-party action. See, e.g.,
Pacor, 743 F.2d at 995.

This principle is commonly applied to third-party actions where compensation is sought for
the same injury allegedly caused by the debtor. The fundamental principle that a party should not
recover twice for the same injury is as applicable in bankruptcy as elsewhere. See, e.g., Browning,
283 F.3d at 778 (ESOP not entitled to recover twice on value of shares recovered in bankruptcy); In
re Lenz, 80 B.R. 528, 530 (Bankr. D. Colo. 1987), aff'd, 110 B. R. 523 (D. Colo. 1990) (bankruptcy
creditor was precluded from sharing in property allocable to unsecured creditors because, having
already received the value of its property, "it would be receiving 'double' benefits to the detriment
of other unsecured creditors"). Cf., Sanderson v. Allstate Ins. Co., 738 F.Supp. 432, 435 (D. Colo.
1990) ("A plaintiff is entitled to only one recovery for a single injury .... Double recovery for the
same injury violates principles of basic fairness").

Thus, where a creditor in a pending bankruptcy recovers damages from a third party for the
same injury forming the subject of the creditor's claim in bankruptcy, the amount of the creditor's
bankruptcy claim is automatically reduced to prevent a double recovery. See, e.g., Browning, 283
F.3d at 778; Lenz, 80 B.R. at 530. Accordingly, the prospect of such a recovery in a creditor's
pending third-party action makes that action "related to" the bankruptcy for jurisdictional purposes,
and creates in the bankruptcy court subject matter jurisdiction over the third-party action under 28
U.S.C. §1334(b). See, e.g., In re Kaplan Building Systems, Inc., 104 F.3d 589, 595 (3d Cir. 1997)
(dispute between IRS and corporation concerning allocation of tax payments made by corporation
was "related to" bankruptcy of corporate officers because officers had guaranteed some of
corporation's tax debt and allocation of corporation's tax payments to that debt would therefore
reduce officers' liability to IRS in bankruptcy); Browning, 283 F.3d at 778; In re Semcrude, L.P.,
2010 WL 1437638, at * 15 (Bankr. D. Del. 2010) (oil producers' suit against downstream

11

purchasers who bought purchasers' oil from debtor was "related to" debtor's bankruptcy because
recovery by producers in suit would reduce debtor's liability to producers in debtor's bankruptcy);
Lenz, 80 B.R. at 530.  The mere fact that a bankruptcy debtor or trustee must expend time and
resources to monitor such a suit due to its possible impact on the estate may be sufficient to create
"related to" jurisdiction.  Cf., In re Philadelphia Newspapers, LLC, 407 B.R. 606, 614-15 (Bankr.
E.D. Pa. 2009) (continuation of state court action against debtor's holding company and certain
officers and employees was "related to" debtor's bankruptcy because it would distract counsel for
debtor in possession from efforts to prepare a plan to reorganize debtor).

**B.     The Impact on the SIPA Liquidation**

        Trustees in SIPA liquidations are particularly sensitive to third-party actions that may affect
the debtor's obligations to its "customers."  In a SIPA liquidation, the estate consists of two parts –
a fund of "customer property," consisting generally of the cash and securities held in custody by the
debtor for its "customers," and the general estate, comprised of all other assets.  See, e.g., In re
Bernard L. Madoff Inv. Secs., LLC, 424 B.R. 122, 132-33 (Bankr. S.D.N.Y. 2010) ("BLMIS"); In
re A.R. Baron Co., Inc., 226 B.R. 790, 794 (Bankr. S.D.N.Y. 1998).  See also, SIPA §78*lll*(4).
Among other duties, the SIPA trustee discharges the debtor's obligations to its "customers" by
distributing to them their ratable shares of "customer property" and, where customer property is
insufficient, by satisfying their claims with funds advanced by SIPC, within specified limits.  See
BLMIS, 424 B.R. at 133; Baron, 226 B.R. at 794.  See also SIPA §§78fff-2(b) and (c)(1), 78fff-
3(a).  Where a "customer" claimant in a SIPA liquidation sues a third party for recovery of the same
property sought under his SIPA claim, any recovery by the claimant against the third-party reduces
the claimant's entitlement to "customer property" in the SIPA liquidation or indeed, may even
extinguish the claim in the SIPA case.  One dollar less claimed by one customer is one dollar more
for others.  Accordingly, in order for the trustee to be able to calculate each customer's pro rata

12

share, he must know the total value of claims eligible to share in customer property. Until the trustee knows whether claimants who have filed claims in the liquidation will be satisfied from sources outside the liquidation, he cannot make a complete distribution. He is forced to await the outcome of third-party actions and to expend time and resources to monitor the actions in the interim.[7] Likewise, other customers eligible to share in customer property must await the outcome of the third-party suits in order to receive what is owed to them.

That is exactly what would happen here. In this action, Plaintiffs allege that the Defendants "caused" the Trustee to adopt what they call the "Net Investment Policy" (cash deposited with the broker by the customer less cash withdrawn), and thereby "caused" the Trustee not to make SIPC advances to any claimant "whose withdrawals exceed his deposits ..." (See, e.g., Complaint ¶ 4.) The "damages" Plaintiffs seek in this proceeding consist of what Plaintiffs would have received had the Trustee instead determined their claims in BLMIS on the basis of their final account statements, without reduction for their withdrawals. (See, e.g., Complaint ¶¶ 2, 209.) According to Plaintiffs, these "damages" include a SIPC advance of up to $500,000 for each of their BLMIS accounts. (See, e.g., Complaint ¶¶ 2, 209, 217, 225, 231.) Of course, that is exactly what they seek through their "customer" claims in the BLMIS liquidation, and that is what they will receive in the liquidation if they prevail in their appeal of the net equity issue.

As a result of the overlap between the relief Plaintiffs seek through their claims in the BLMIS liquidation proceeding and through this case, any recovery in this case will automatically reduce the amounts to which they are entitled in the BLMIS liquidation, either as "customers" or, if

---

[7] A similar effect occurs even when the claimant's "customer" claim is denied. A denied claim for "customer" relief is automatically reclassified as an unsecured claim against the debtor's general estate. See, e.g., Matter of Oberweis Secs., Inc., 135 B.R. 842, 846-47 (Bankr. N.D. Ill. 1991); In re Bell & Beckwith, 124 B.R. 35 (Bankr. N.D. Ill. 1990). An unsecured claimant's recovery in a third-party action for the same injury forming the subject of the claimant's claim in a pending bankruptcy would also reduce the estate's liability to that creditor, and that action is therefore "related to" the bankruptcy for jurisdictional purposes. See supra.

the Second Circuit ratifies the Bankruptcy Court's decision upholding the Trustee's determinations

denying their "customer" claims, as general unsecured creditors. See, e.g., Kaplan, 104 F.3d at 595;

Browning, 283 F.3d at 778; Semcrude, 2010 WL 1437638, at * 15; Lenz, 80 B.R. at 530.  Because

of the possibility of such a recovery, the Trustee will have to expend estate resources to monitor this

case during its pendency and to ascertain the amount of any recovery by the 4,000 members of the

putative class should they prevail.  The possibility of such a recovery and its impact on the BLMIS

liquidation make this case "related to" that liquidation and, in conjunction with 28 U.S.C. § 157(a),

provide the Bankruptcy Court with jurisdiction over this case.  See, e.g., Kaplan, 104 F.3d at 595;

Browning, 283 F.3d at 778; Semcrude, 2010 WL 1437638, at * 15; Lenz, 80 B.R. at 530.

## C.    Transfer of the Case is Not Only Proper But A Necessity

At bottom, this lawsuit is no more than a shameful attempt by the named Plaintiffs and the

class they purport to represent to collaterally attack, overrule, and interfere with the Bankruptcy

Court proceeding where the Plaintiffs have asserted their claims.  A comparison of the statements in

the Complaint, of which just a few examples are cited below, with the March 1, 2010 decision

issued by the Bankruptcy Court makes that clear.

| COMPLAINT | BANKRUPTCY COURT DECISION 424 B.R. 122 (Bankr. S.D.N.Y., 2010) |
|---|---|
| "SIPC's Net Investment Policy was adopted . . .in bad faith  .  . ..   The Policy is in direct contravention of SIPA, its legislative history ...."  Complaint, ¶15 | "Plain  Language  and  Legislative  History Support  The  Net  Investment  Method" Opinion, p. 134 |
| "Similarly, SIPC's Unfair Clawback Policy is a bad-faith policy in direct contravention of the purpose and intent of SIPA ...."   Complaint, ¶17 | "The  Trustee's  Calculus  of  Net  Equity  is Consistent  with  his  SIPA  and  Bankruptcy Avoidance Powers." Opinion, p. 135 |
| "Under the aegis of SIPC's Net Investment Policy,  the  Directors  have  created  a  new definition  of  'net  equity,'  in  direct contravention of SIPA ...." Complaint, ¶95 | "Accordingly a careful review of *New Times I* and *II* convinces the Court that the Trustee's Net Investment Method is correct." Opinion, p. 140.  (Also citing *In re Old Naples Sec., Inc.*,  311  B.R.  607  (M.D.  Fla.  2002): |

| | "participants in a Ponzi scheme such as that involved here are entitled only to receive their net loss, or the amount invested less any payments received." Opinion, p. 140 and n.35. |
|---|---|
| "As a result of the Defendant's bad faith failure to pay SIPC insurance, customers have suffered tragic additional losses." Complaint, ¶ 99 | These Objecting Claimants rely upon the false premise that Madoff customers are statutorily entitled to an additional source of recovery in the form of SIPC *insurance*, separate and apart from customer property distributions. This argument finds no support in the text of the statute ...." Opinion, pp. 133-134 |
| "SIPC has justified the Trustee's rejection of SIPA's definition of 'net equity' by claiming that: 'Using the final statements created by Mr. Madoff as the sole criteria for what a claimant is owed perpetuates the Ponzi scheme. It allows the thief . . .Mr. Madoff . . .to determine who receives a larger proportion of the assets collected by the Trustee.' This justification is completely specious." Complaint, ¶138. | "Compensating Madoff investors on the basis of fictional account statements leads to an additional inequality as it enables the thief to dictate who receives a larger proportion of the assets collected by the Trustee. Madoff should not be entitled to award, to equally deserving clients, higher and lower returns based solely on his whim." Opinion, p. 142, n.38 |

The Court should not indulge the Plaintiffs in their gamesmanship, and should order the case transferred to the New York District Court for referral to the Bankruptcy Court.

## CONCLUSION

For all of the reasons contained herein and in Defendants' opening memorandum, the Defendants' motion to transfer this case to the United States District Court for the Southern District of New York for referral to the Bankruptcy Court should be granted.

GREENBAUM ROWE SMITH & DAVIS, LLP
Attorneys for Defendants

By: _____
Paul A. Rowe
Alan S. Naar

Date: May 10, 2010

15