WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Howard L. Simon
Email: hsimon@windelsmarx.com
Regina Griffin
Email: rgriffin@windelsmarx.com
*Special Counsel to Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. _____ (BRL) |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MADOFF TECHNOLOGIES LLC, MADOFF BROKERAGE & TRADING TECHNOLOGY, LLC, and PRIMEX HOLDINGS, LLC, | |
| Defendants. | |

{10581303:1}

Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or, alternatively, the "Company" or the "Debtor"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") and the estate of Bernard L. Madoff individually, by and through his special counsel, Windels Marx Lane & Mittendorf, LLP, for his Complaint against Madoff Technologies LLC ("Madoff Technologies"), Madoff Brokerage & Trading Technology, LLC ("Madoff Brokerage"), and Primex Holdings, LLC ("Primex Holdings") (collectively, the "Family Controlled Entities") based on actual knowledge and information and belief, states the following:

## NATURE OF THE PROCEEDING

1.      Bernard L. Madoff ("Madoff"), who perpetrated the largest Ponzi scheme in history through his company BLMIS, was quite generous with the money he stole from BLMIS' customers.  Foremost among the recipients of Madoff's gifts of customer funds were his closest family members, including his wife Ruth Madoff, his brother Peter, his two sons Andrew and Mark, and his niece Shana (together with Alberto Casanova, the "Transfer Beneficiaries"), many of whom just also happened to comprise BLMIS' senior management.

2.      As set forth in detail in the Trustee's complaints against certain of the Madoff family members filed in *Irving H. Picard v. Ruth Madoff et al.*, Adv. Pro. No. 09-1391 (BRL) and *Irving H. Picard v. Peter B. Madoff et al.*, Adv. Pro. No. 09-1503 (BRL), Madoff's closest kin were the illegitimate recipients of nearly $250 million of BLMIS customer funds which they used to fund lavish lifestyles.  Among other things, certain of these family members used BLMIS funds to purchase luxury homes, yachts and automobiles, and to pay for vacations and personal credit card charges for restaurant meals and clothing.

3.      The Transfer Beneficiaries also capitalized their personal business ventures, including the defendant entities herein, with tens of millions of dollars from BLMIS customer funds.  As set forth herein, the Family Controlled Entities were the recipients and/or beneficiaries of more than $22 million in gratuitous transfers of BLMIS funds.

4.      Using those fraudulently obtained funds, defendants Madoff Brokerage and Madoff Technologies acquired a majority ownership interest in, and capitalized, Primex Holdings, the developer of valuable intellectual property related to an electronic auction system for securities and commodities (the "Intellectual Property").

5.      Through this proceeding, the Trustee seeks to avoid and recover the millions of BLMIS funds fraudulently conveyed to, or for the benefit of, the Family Controlled Entities, and a turnover and/or constructive trust of BLMIS' equitable and/or beneficial interests in Madoff Technologies and Madoff Brokerage – and their controlling interests in Primex Holdings – which rightfully belong to the Company's defrauded customers.

## JURISDICTION AND VENUE

6.      This is an adversary proceeding brought in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding").

7.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§78eee(b)(2)(A), (b)(4).

8.      The statutory predicates for the relief sought herein include SIPA, 15 U.S.C. §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3), the Bankruptcy Code, 11 U.S.C. §§ 101, 105, 541, 542,

544, 548, 550 and 551; New York Debtor and Creditor Law §§ 270-281, and New York common law.

9.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O).

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

11.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.   Contemporaneously, the Securities and Exchange Commission ("SEC") filed the District Court Proceeding against Madoff, which remains pending.   The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the BLMIS Investment Advisory Business (the "BLMIS IA Business").

12.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

13.     On December 15, 2008, pursuant to SIPA section 78eee(a)(4)(A), the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.   On that same date, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to a combination of its own action with SIPC's application.

14.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA, which, in pertinent part:

a.      appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b.      removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

c.      removed the Receiver for BLMIS.

15.      Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

16.      By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

17.      As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property[1] to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.  However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recovery for BLMIS accountholders.

18.      Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts.

---

[1] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

When added together, these statements purportedly showed that BLMIS customers had approximately $68 billion invested through BLMIS. In reality, BLMIS had assets on hand worth a fraction of that amount. Customer accounts had not accrued any real profits because no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, investors had already lost approximately $20 billion in principal.

19.     As Madoff admitted at his Plea Hearing, he never purchased any of the securities, options, or Treasurys for the BLMIS IA Business and the returns he reported to customers were entirely fictitious. Based on the Trustee's investigation to date, there is no record of BLMIS having cleared a single purchase or sale of securities on any exchange in connection with Madoff's claimed "split-strike conversion" investment strategy.[2]

20.     For all periods relevant hereto, the BLMIS IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay and/or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his family members, associates and others, including the defendant entities sued herein, until such time as the requests for redemptions overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

## TRUSTEE'S POWERS AND STANDING

21.     Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code. In addition, pursuant to SIPA section

---

[2] Madoff did a *de minimus* amount of securities trading outside of the split-strike conversion strategy.

78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

22.    The Trustee is a real party in interest and has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a.    the defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b.    BLMIS incurred losses as a result of the claims set forth herein;

c.    BLMIS customers were injured as a result of the conduct detailed herein;

d.    SIPC cannot by statute advance funds to the Trustee to fully reimburse all customers for all of their losses;

e.    the Trustee will not be able to fully satisfy all claims;

f.    the Trustee, as bailee of customer property, can sue on behalf of the customer-bailors;

g.    As of this date, the Trustee has received multiple express assignments of certain claims of the applicable accountholders, which they could have asserted.  As assignee, the Trustee stands in the shoes of persons who have suffered injury-in-fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages;

h.    SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding.  SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

i.    the Trustee has the power and authority to avoid and recover transfers pursuant to sections 544, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §78fff2(c)(3).

## THE PARTIES

23.    Upon information and belief, Defendant Primex Holdings, LLC was incorporated in New York on October 29, 1998, and its principal place of business was located at 885 Third Avenue, 18th Floor, New York, New York.[3]  Primex Holdings is predominantly owned by Madoff Technologies (67%) and Madoff Brokerage (16.5%).  Upon further information and belief, Peter Madoff was Primex Holdings' Manager and Alberto Casanova was co-Manager.

24.    Upon information and belief, Defendant Madoff Technologies was organized as a limited liability company under the laws of the State of New York on October 28, 1998, and its principal place of business is identified as 885 Third Avenue, 18th Floor, New York, New York. Madoff Technologies is nominally owned by Ruth Madoff, Peter Madoff, Shana Madoff and Alberto Casanova.  Upon further information and belief, Peter Madoff was Madoff Technologies' Manager.

25.    Upon information and belief, Defendant Madoff Brokerage was organized as a limited liability company under the laws of the State of New York on December 21, 2000, and its principal place of business is identified as 34 Pheasant Run, Old Westbury, New York 11568, one of Peter Madoff's residences.  Madoff Brokerage is nominally owned by Bernard Madoff, Mark Madoff, Andrew Madoff, and Peter Madoff.  Upon further information and belief, Peter Madoff was Madoff Brokerage's Manager.

---

[3] Madoff operated his massive Ponzi scheme out of BLMIS' offices, also located at 885 Third Avenue, New York, New York.  Subsequent to the commencement of the BLMIS liquidation proceeding, BLMIS' operations ceased.

26.     Not named as a defendant herein, but relevant to this adversary proceeding, the now-defunct Primex Trading N.A., LLC ("Primex Trading") was organized under the laws of the State of New York on June 3, 1999.  Primex Trading, a subsidiary of Primex Holdings, also had its principal place of business at 885 Third Avenue, 18th Floor, New York, New York.  Upon information and belief, Peter Madoff was Primex Trading's Manager.

## THE FAMILY CONTROLLED ENTITIES

27.     Over the course of several years, through the creation of holding companies and subsidiaries, the Transfer Beneficiaries perpetuated and/or participated in a long-running fraudulent scheme to divert monies of BLMIS to entities they controlled to enrich themselves. Millions of dollars were diverted through the Family Controlled Entities from 1998 until the fraud was discovered in or about December 2008.  At all times relevant to this proceeding, the Family Controlled Entities were used as vehicles to funnel funds out of BLMIS to finance the Transfer Beneficiaries' personal business ventures.

28.     In 1998, a gentleman named Chris Keith ("Keith") developed a software program to facilitate an electronic auction system for securities and commodities.  Upon information and belief, in order to further develop and market the system, Keith sought capital from Peter Madoff.  Together, Keith and Peter developed the auction system into a program called "Price Improvement Market Exchange" or "PRIMEX."

29.     On October 28, 1998, Primex Holdings was formed by Keith's company, Financial Auction Network Incorporated ("FAN"), and Madoff Technologies.  The purpose of Primex Holdings was to continue the development of the PRIMEX auction system as well as to hold all of PRIMEX's intellectual property.

30.     On that same day, October 28, 1998, Madoff Technologies was formed to acquire the economic interest in Primex Holdings.  Madoff Technologies is nominally owned by Ruth,

Peter, Shana, and Alberto Casanova.  Upon information and belief, Peter Madoff was Madoff Technologies' Manager, and Alberto Casanova served as co-Manager.  Madoff Technologies contributed $1.5 million in capital to Primex Holdings in exchange for its 67% ownership interest, and Keith contributed his intellectual property rights in the auction system in exchange for a 33% ownership interest in Primex Holdings.

31.    On June 3, 1999, Primex Trading was formed as a subsidiary of Primex Holdings to complete the development of the PRIMEX auction system, to get the program production ready, and to market the system to potential subscribers.  Upon information and belief, Primex Trading's Manager was Peter Madoff.

32.    On December 21, 2000, Madoff Brokerage was formed to purchase 50% of FAN's interest in Primex Holdings.  Madoff Brokerage is owned by the Ponzi scheme mastermind himself, Madoff, and by his brother Peter, his sons Andrew and Mark, and Alberto Casanova.  Upon further information and belief, Peter Madoff was Madoff Technologies' Manager.

## BLMIS IMPROPERLY TRANSFERRED
## SIGNIFICANT SUMS TO THE FAMILY CONTROLLED ENTITIES

33.    As set forth more fully below, the Transfer Beneficiaries repeatedly and improperly received money siphoned from BLMIS through entities that they owned and controlled for their own personal enrichment.  To date, the Trustee has identified that BLMIS made more than $22 million in transfers to, or for the benefit of, the Family Controlled Entities (collectively, the "Transfers").

34.    The Transfers were used for, among other things, initial capital contributions to the Family Controlled Entities, continuing capital contributions through capital calls to these entities, and/or purchase-money for additional ownership interests in the Family Controlled

Entities.  The Transfers, which were nothing more than investment funds of customers for whom BLMIS was supposed to act as an honest investment adviser and fiduciary, were made without any value to BLMIS, let alone reasonably equivalent value, and should be returned to the BLMIS estate for distribution to their rightful owners.

35.    The Transfers were also used to make significant payments to certain individuals for consulting services purportedly rendered to, and/or for the benefit of the Family Controlled Entities (the "Consultant Payments"), and for which BLMIS received no benefit.

**The Diversion of BLMIS Funds to Madoff Brokerage**

36.    Madoff Brokerage, a company in which Madoff himself held the most significant ownership interest, was one of the vehicles through which monies were diverted from BLMIS. Upon information and belief, over $4.65 million was improperly transferred from BLMIS directly to Madoff Brokerage, or for its benefit.

37.    More particularly, in early 2001, Keith's company, FAN, sold its 33% interest in Primex Holdings for $7 million.  Pursuant to a Purchase Agreement dated as of January 5, 2001, half of FAN's interest in Primex Holdings (16.5%) was purchased by Madoff Brokerage.

38.    BLMIS' records reveal that on or about January 11, 2001, $3.5 million was transferred directly from BLMIS' Bank of New York account to FAN.

39.    Upon information and belief, this gratuitous transfer by BLMIS was made to pay for Madoff Brokerage's acquisition of FAN's interest in Primex Holdings, and ultimately inured to the benefit of Madoff, Andrew, Mark, Peter and Casanova.  Upon further information and belief, BLMIS received no corresponding benefit or value in exchange for this payment.

40.    Between April 2001 and November 2001, Madoff Brokerage was also the recipient of a series of eight monthly transfers from BLMIS totaling $1.15 million.  Upon information and belief, BLMIS made these eight transfers to Madoff Brokerage – which

ultimately inured to the benefit of Madoff, Andrew, Mark, Peter and Casanova – and received no corresponding benefit or value in exchange.

**The Diversion of BLMIS Funds to Madoff Technologies**

41.     BLMIS also made two substantial and gratuitous transfers to Madoff Technologies totaling in excess of $9.74 million.

42.     The first of these transfers was on October 31, 2000, when BLMIS transferred $5,491,525.35 to Madoff Technologies.

43.     Upon information and belief, this $5,491,525.35 transfer to Madoff Technologies inured to the benefit of Ruth, Shana, Peter and Casanova, and BLMIS received no corresponding benefit or value in exchange for this substantial transfer.

44.     Upon further information and belief, Madoff Technologies subsequently transferred this $5,491,525 to Primex Holdings.

45.     BLMIS' records also reveal that on or about February 21, 2003, BLMIS made another substantial transfer to Madoff Technologies of $4,256,237. Upon information and belief, this transfer inured to the benefit of Ruth, Shana, Peter and Casanova, and BLMIS received no corresponding benefit or value for this transfer.

46.     Madoff Technologies subsequently transferred this $4,256,237 to Primex Holdings.

**The Diversion of BLMIS Funds to Primex Holdings**

47.     BLMIS' money was used to fund the Transfer Beneficiaries' capital contributions in Primex Holdings. Pursuant to Primex Holdings' Amended and Restated Operating Agreement dated as of January, 2001, Madoff Technologies contributed $1.5 million in capital to Primex Holdings in exchange for its 67% ownership interest.

48.     Upon information and belief, this $1.5 million representing Madoff Technologies' initial capital contribution to Primex Holdings was transferred from one of BLMIS' operating accounts to Primex Holdings.

49.     Upon further information and belief, the $1.5 million transfer was made solely for the benefit of the Transfer Beneficiaries, and BLMIS received no corresponding benefit or value in exchange for this payment.

50.     As a result of the foregoing transactions, the Transfer Beneficiaries hold 83.5% of Primex Holdings through indirect ownership of shell holding vehicles.

**The Use of BLMIS Funds to Compensate**
**Certain Consultants For The Benefit of the Family Controlled Entities**

51.     In addition to the transactions detailed above, the Trustee has identified significant payments made by BLMIS to certain individuals for consulting services (the "Consultants") ostensibly rendered to and/or for the benefit of the Family Controlled Entities.

52.     More particularly, BLMIS' books and records reveal that between 2000 and 2008, BLMIS gratuitously paid to the Consultants amounts totaling approximately $8.4 million, ostensibly for services to Primex Trading and/or Primex Holdings.

53.     Upon information and belief, BLMIS was reimbursed approximately $2.2 million of the $8.4 million paid to the Consultants. BLMIS' payments to the Consultants and Primex Holdings' and/or Primex Trading's reimbursements of a fraction of those payments are set forth in Exhibit A, annexed hereto.

54.     Accordingly, the remaining $6.2 million that BLMIS paid to the Consultants was for the benefit of the Family Controlled Entities and/or the Transfer Beneficiaries, for which BLMIS received no corresponding benefit or value in exchange.

## BLMIS' FUNDS WERE USED TO CREATE, ACQUIRE AND INVEST IN PRIMEX HOLDINGS

55.      The Transfers of BLMIS funds to Madoff Technologies and Madoff Brokerage were used to create, acquire and to invest in Primex Holdings, the owner of valuable Intellectual Property.

56.      Among other things, Primex Holdings' Intellectual Property includes several different potentially valuable patents in connection with electronic securities auction and trading systems, including the operation of dark pools, which permit traders to move large numbers of securities without revealing the price or identity of the trader to the market.  Primex Holdings also has two patent applications pending and several registered trademarks.  In addition to the intrinsic value of Primex Holdings' patents, the value of some or all of the patents may lie in potential infringement claims against other unrelated entities which operate their own dark pools, electronic communications networks and alternative trading systems.

57.      While the controlling interests of Primex Holdings were nominally held by Madoff Technologies and Madoff Brokerage, BLMIS was at all times the beneficial and/or equitable owner of those interests.  Not only were BLMIS' funds used to acquire and capitalize Madoff Technologies' and Madoff Brokerage's interest in Primex Holdings, in addition, upon information and belief, the Family Controlled Entities publicly held BLMIS out as an owner of Primex Holdings.

58.      Accordingly, Madoff Technologies' and Madoff Brokerage's ownership interests in Primex Holdings belong to BLMIS, and should inure to the benefit of BLMIS' customers.

## KNOWLEDGE OF THE FRAUDULENT NATURE OF THE TRANSFERS IS PROPERLY IMPUTED TO THE FAMILY CONTROLLED ENTITIES

59.      As explained more fully above, at all relevant times, the Ponzi scheme mastermind himself, Madoff, held a significant ownership interest in Madoff Brokerage.  His

knowledge of the fraudulent nature of the Transfers, therefore, is properly imputed to Madoff Brokerage.

60.     Furthermore, as set forth in detail in the Trustee's complaint against certain of Madoff's family members filed in *Irving H. Picard v. Peter B. Madoff et al.*, Adv. Pro. No. 09-1503 (BRL) (the "Madoff Family Complaint"), Peter, Shana, Mark and Andrew – all of whom were Transfer Beneficiaries and/or owners or managers of the Family Controlled Entities – each held senior management positions at BLMIS entailing legal compliance and/or supervisory responsibilities.[4]  Had they performed their duties with any level of professional diligence, they would have detected the Ponzi scheme years ago.  They either knew of the fraud, or intentionally shut their eyes to it.

61.     In particular, Peter served as Senior Managing Director and CCO of BLMIS. Peter was also the Manager of each of the Family Controlled Entities sued herein.  Consistent with his role at BLMIS and his role at the Family Controlled Entities, Peter knew, or should have known, of the fraudulent nature of each of the Transfers sued upon.  Thus, his knowledge of the fraudulent nature of these Transfers is properly imputed to each of the Family Controlled Entities.

62.     Shana was, like her father Peter, responsible for monitoring BLMIS' operations and ensuring its compliance with federal and state laws and regulations.  As Compliance Director of BLMIS, Shana was – or should have been – aware of the fraudulent nature of the Transfers sued upon herein, and her knowledge of the fraudulent nature of these Transfers is properly imputed to each of the Family Controlled Entities of which she was an owner.

---

[4] The factual allegations set forth in paragraphs 2, 6-99, and 103 of the Madoff Family Complaint are incorporated by reference as if fully set forth herein.

63.    Mark and Andrew Madoff were also both FINRA-registered securities principals of BLMIS, and as such, had supervisory responsibilities to ensure compliance with the Company's policies and procedures and federal securities laws.  Like Peter and Shana, Mark and Andrew knew, or should have known, of the fraudulent nature of each of the Transfers, and their knowledge of the fraudulent nature of these transfers should be imputed to the Family Controlled Entities.

### NATURE OF THE CAUSES OF ACTION
### AGAINST THE FAMILY CONTROLLED ENTITIES

64.    At all times relevant hereto, BLMIS was insolvent in that: (i) its assets were worth billions of dollars less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and/or (iii) at the time of the Transfers to, or for the benefit of, the Family Controlled Entities described herein, BLMIS was left with insufficient capital.

65.    This adversary proceeding is being brought to recapture the Transfers made to, or for the benefit of, the Family Controlled Entities, and for turnover and/or constructive trust in BLMIS' equitable and/or beneficial interest in Madoff Technologies' and Madoff Brokerage's ownership interest in Primex Holdings, so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with the provisions of SIPA.

66.    The Transfer Beneficiaries were intimately involved with the BLMIS "family business" and/or were friends of the mastermind of the Ponzi scheme.  They sometimes traveled together, vacationed together, and spent many holidays together.  Some of the family members held senior positions at BLMIS.  At the very least, the Transfer Beneficiaries – as managers, principals, owners and/or agents of the Family Controlled Entities – were on notice of the indicia of irregularity and fraud, but either failed to make sufficient inquiry or knew of the fraud,

ignored it, and profited immensely from it, and their knowledge must be imputed to the defendants.

67.    Without regard to the extent to which the Family Controlled Entities and/or Transfer Beneficiaries knew of Madoff's fraudulent scheme, each knew or should have known that they were not entitled to these distributions of "free" company money to fund business ventures for which they were the intended beneficiaries.

68.    The Transfers and BLMIS' equitable/beneficial interest in Madoff Technologies and Madoff Brokerage were and continue to be customer property within the meaning of 15 U.S.C. §78$lll$(4), and/or estate property within the meaning of section 541 of the Bankruptcy Code, and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

69.    The Transfers are avoidable and recoverable under sections 544, 548(a), 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) and 213(8), and N.Y. Debt. & Cred. Law §§ 273-279.

70.    On the Filing Date, the facts supporting this action could for the first time with reasonable diligence have been discovered by certain unsecured creditors of BLMIS.  Therefore, all of the Transfers herein are subject to avoidance and recovery under applicable state and federal law.

71.    The facts supporting this action give rise to equitable tolling because the Ponzi scheme perpetuated by BLMIS was concealed and was not reasonably discoverable by at least one unsecured creditor of BLMIS before the Filing Date.

72.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

73.     The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Transfers and any additional transfers; and (ii) seek recovery of such additional transfers.

## FIRST CAUSE OF ACTION
## TURNOVER AND ACCOUNTING - 11 U.S.C. § 542

74.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

75.     The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4).

76.     BLMIS has an equitable and/or beneficial interest in Madoff Technologies and Madoff Brokerage, which also constitutes property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4).

77.     As a result of the foregoing, pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to: (i) the entry of an Order declaring that the Transfers and/or BLMIS' interest in Madoff Technologies and Madoff Brokerage are property of the estate; (ii) the entry of an Order directing a turnover of the Transfers and/or Madoff Technologies and Madoff Brokerage; and (iii) an accounting of all such Transfers received by, or for the benefit of, any Family Controlled Entity.

## SECOND CAUSE OF ACTION
## FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(A), 550(a), AND 551

78.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

79.    The Transfers were made by BLMIS with the actual intent to hinder, delay and/or defraud some or all of BLMIS' then existing or future creditors.

80.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Family Controlled Entities pursuant to section 550(a) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

81.    As a result of the foregoing, pursuant to section 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS.

### THIRD CAUSE OF ACTION
### NEW YORK DEBTOR AND CREDITOR LAW
### §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

82.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

83.    At all times relevant, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

84.    The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

85.    Upon information and belief, because the Transfers were received by the Family Controlled Entities with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

86.     As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Controlled Entities.

### FOURTH CAUSE OF ACTION
### UNDISCOVERED FRAUDULENT TRANSFERS – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8), AND NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

87.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

88.     At all times relevant, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

89.     At all times relevant, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

90.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

91.     Upon information and belief, because the Transfers were received by the Family Controlled Entities with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

92.     As a result of the foregoing, pursuant to CPLR 203(g) and 213(8), sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Controlled Entities.

## FIFTH CAUSE OF ACTION
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW
## §§ 273, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

93.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

94.     As set forth above, BLMIS made the $4,256,237 transfer to, or for the benefit of, Madoff Technologies and/or the Transfer Beneficiaries (the "$4.25 Million Transfer") and the Consultant Payments for the benefit of the Family Controlled Entities and/or the Transfer Beneficiaries.

95.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

96.     BLMIS did not receive fair consideration for the $4.25 Million Transfer or for the Consultant Payments.

97.     BLMIS was insolvent at the time it made the $4.25 Million Transfer and/or at the time it made the Consultant Payments or, in the alternative, BLMIS became insolvent as a result of the $4.25 Million Transfer and/or the Consultant Payments.

98.    As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273 and 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the $4.25 Million Transfer as well as the Consultant Payments; (ii) directing that the $4.25 Million Transfer and the Consultant Payments be set aside; and (iii) recovering the $4.25 Million Transfer and the Consultant Payments, or the value thereof, for the benefit of the consolidated estate of BLMIS.

## SIXTH CAUSE OF ACTION
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW
### §§ 274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

99.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

100.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

101.    BLMIS did not receive fair consideration for the $4.25 Million Transfer or for the Consultant Payments.

102.    At the time BLMIS made the $4.25 Million Transfer and/or the Consultant Payments, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the $4.25 Million Transfer and/or the Consultant Payments was an unreasonably small capital.

103.    As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving

the $4.25 Million Transfer as well as the Consultant Payments; (ii) directing that the $4.25

Million Transfer and the Consultant Payments be set aside; and (iii) recovering the $4.25 Million

Transfer and the Consultant Payments, or the value thereof, for the benefit of the consolidated

estate of BLMIS.

**SEVENTH CAUSE OF ACTION**
**FRAUDULENT TRANSFERS – NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

104.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of the Complaint as if fully rewritten herein.

105.    At all relevant times there was and is at least one or more creditors who held and

hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

section 502 of the Bankruptcy Code or that were and are not allowable only under section

502(e).

106.    BLMIS did not receive fair consideration for the $4.25 Million Transfer or for the

Consultant Payments.

107.    At the time BLMIS made the $4.25 Million Transfer and/or the Consultant

Payments, BLMIS had incurred, was intending to incur, or believed that it would incur debts

beyond its ability to pay them as the debts matured.

108.    As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New

York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and

SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the $4.25

Million Transfer as well as the Consultant Payments; (ii) directing that the $4.25 Million

Transfer and the Consultant Payments be set aside; and (iii) recovering the $4.25 Million

Transfer and the Consultant Payments, or the value thereof, from the Family Controlled Entities

for the benefit of the consolidated estate of BLMIS.

## EIGHTH CAUSE OF ACTION
## RECOVERY FROM SUBSEQUENT TRANSFEREES
## – NEW YORK DEBTOR AND CREDITOR LAW
## § 278 AND 11 U.S.C. §§ 544, 548, 550(a), AND 551

109.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

110.    Each of the Transfers is avoidable under sections 544 and/or 548 of the Bankruptcy Code.

111.    As set forth above, BLMIS made the Transfers to, or for the benefit of, the Family Controlled Entities and/or the Transfer Beneficiaries in connection with the fraudulent investment scheme.

112.    Upon information and belief, some or all of the Transfers were subsequently transferred by one or more Family Controlled Entity to another Family Controlled Entity, either directly or indirectly (the "Subsequent Transfers").

113.    Each of the Subsequent Transfers was made directly or indirectly to one or more of the Family Controlled Entities or affiliated/other entities.

114.    The Family Controlled Entities are immediate or mediate transferees of the Subsequent Transfers.

115.    As a result of the foregoing, pursuant to N.Y. Debtor and Creditor Law section 278, sections 544, 548, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Family Controlled Entities: (i) avoiding and preserving the Subsequent Transfers; and (ii) recovering the Subsequent Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS.

## NINTH CAUSE OF ACTION
## CONVERSION

116.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

117.    BLMIS had a possessory right and interest to its assets, including its customers' investment funds.

118.    The Family Controlled Entities converted the investment funds of BLMIS customers when they received money originating from BLMIS' customer accounts in the form of the Transfers.  These actions deprived BLMIS and its creditors of the use of this money.

119.    As a direct and proximate result of this conduct, BLMIS and its creditors have not had the use of the money converted by the Family Controlled Entities.

120.    By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

121.    The Family Controlled Entities' conscious, willful, wanton, and/or malicious conduct entitles the Trustee, on behalf of BLMIS and its creditors, to an award of punitive damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

122.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

123.    The Family Controlled Entities and their principals each benefited from the receipt of money from BLMIS in the form of the Transfers which were the property of BLMIS and its customers, and for which the Family Controlled Entities did not adequately compensate BLMIS or provide value.

124.    This enrichment was at the expense of BLMIS and, ultimately, at the expense of BLMIS' customers.

125.    Equity and good conscience require full restitution of the monies received by, or paid for the benefit of, the Family Controlled Entities and their principals from BLMIS.

126.    The Family Controlled Entities' conscious, intentional, and/or willful tortious conduct entitles BLMIS to recapture profits derived by the Family Controlled Entities and their principals utilizing monies they received from BLMIS.

127.    By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST

128.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

129.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Family Controlled Entities.

130.    As a consequence of the fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Family Controlled Entities, those entities have obtained funds, property, interests and profits therefrom which in justice and equity belong to the estate, for the use of BLMIS' customers.

131.    The Trustee has no adequate remedy at law.

132.    As a result of the foregoing conduct, the Trustee is entitled to the imposition of a constructive trust on all funds, profits, property, assets and proceeds derived from BLMIS'

funds, including Madoff Technologies' and Madoff Brokerage's ownership interests in Primex Holdings.

## TWELFTH CAUSE OF ACTION
## ACCOUNTING

133.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

134.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Family Controlled Entities for their interests and enrichment of the Transfer Beneficiaries.

135.    The Trustee has no adequate remedy at law.

136.    To compensate BLMIS for the amount of monies the Family Controlled Entities diverted from BLMIS for the benefit of its own principals, it is necessary for the Family Controlled Entities to provide an accounting of any transfer of funds, assets, or property received from BLMIS, as well as to any profits and proceeds in the past and on a going forward basis in connection with BLMIS.  Complete information regarding the amount of such transfers misused by the Family Controlled Entities for their principals' own benefit is within their possession, custody, and control.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

(a)    on the First Cause of Action, pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3) and 78*lll*(4): (i) the entry of an Order against Madoff Technologies and Madoff Brokerage declaring that the Transfers and/or BLMIS' interest in Madoff Technologies and Madoff Brokerage is property of the estate; (ii) the entry of an Order against the Family Controlled Entities directing a turnover of the Transfers and/or Madoff

Technologies and Madoff Brokerage; and (iii) an accounting of all such Transfers received by, or for the benefit of, any Family Controlled Entity from BLMIS;

(b)     on the Second Cause of Action, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS;

(c)     on the Third Cause of Action, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Controlled Entities;

(d)     on the Fourth Cause of Action, pursuant to CPLR 203(g) and 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Controlled Entities;

(e)     on the Fifth Cause of Action, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550, and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the $4.25 Million Transfer and Consultant Payments; (ii) directing that the $4.25 Million Transfer and Consultant Payments be set aside; and (iii) recovering the $4.25 Million Transfer and Consultant Payments, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS;

(f)        on the Sixth Cause of Action, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550, and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the $4.25 Million Transfer and Consultant Payments; (ii) directing that the $4.25 Million Transfer and Consultant Payments be set aside; and (iii) recovering the $4.25 Million Transfer and Consultant Payments, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS;

(g)        on the Seventh Cause of Action, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the $4.25 Million Transfer and Consultant Payments; (ii) directing that the $4.25 Million Transfer and Consultant Payments be set aside; and (iii) recovering the $4.25 Million Transfer, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS;

(h)        on the Eighth Cause of Action, pursuant to section 278 of the New York Debtor and Creditor Law, sections 544, 548, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Subsequent Transfers; and (ii) recovering the Subsequent Transfers, or the value thereof, from the Family Controlled Entities for the benefit of the consolidated estate of BLMIS;

(i)        on the Ninth Cause of Action against each of the Family Controlled Entities for the conscious, wanton, willful, and/or malicious conversion of BLMIS assets, for compensatory and punitive damages in amounts to be determined at trial;

(j)        on the Tenth Cause of Action against each of the Family Controlled Entities for unjust enrichment, for compensatory damages in an amount to be determined at trial;

(k)        on the Eleventh Cause of Action against the Family Controlled Entities for the imposition of a constructive trust on funds, profits, property, proceeds and/or assets derived from

BLMIS' funds, including Madoff Technologies' and Madoff Brokerage's ownership interests in Primex Holdings;

(l)    on the Twelfth Cause of Action against each of the Family Controlled Entities for an accounting of any transfer of funds, assets, or property received from BLMIS as well as to any profits and proceeds in the past and on a going forward basis received by the Family Controlled Entities in connection with BLMIS;

(m)    on all Claims for Relief, pursuant to federal common law and CPLR §§ 5001 and 5004 awarding the Trustee prejudgment interest from the date on which any transfer of BLMIS funds, assets, or property were received by the Family Controlled Entities;

(n)    awarding the Trustee all applicable attorneys' fees, interest, costs, and disbursements of this action; and

(o)    granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: New York, New York
      July 29, 2010

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP

/s/ Regina Griffin
Howard L. Simon (hsimon@windelsmarx.com)
Regina Griffin (rgriffin@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Fax: (212) 262-1215

*Special Counsel to Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC*