WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Howard L. Simon
Email: hsimon@windelsmarx.com
Regina Griffin
Email: rgriffin@windelsmarx.com

*Special Counsel to Irving H. Picard, Esq., Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>      v.<br><br>MADOFF ENERGY HOLDINGS LLC, MADOFF ENERGY LLC, CONGLOMERATE GAS RESOURCES LLC, MADOFF ENERGY III LLC, and MADOFF ENERGY IV LLC,<br><br>          Defendants. | Adv. Pro. No. _____<br><br>**COMPLAINT** |

Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or, alternatively, the "Company" or the "Debtor"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") and the estate of Bernard L. Madoff individually, by and through his special counsel, Windels Marx Lane & Mittendorf, LLP, for his Complaint against Madoff Energy Holdings LLC ("Madoff Energy Holdings"), Madoff Energy LLC ("Madoff Energy"), Conglomerate Gas Resources LLC ("Conglomerate Gas"), Madoff Energy III LLC ("Madoff Energy III") and Madoff Energy IV LLC ("Madoff Energy IV") (collectively, the "Madoff Energy Companies"), based on actual knowledge and information and belief, states the following:

## NATURE OF THE PROCEEDING

1.      Bernard L. Madoff's ("Madoff") sons, Andrew and Mark Madoff, and his niece Shana Madoff, held senior management positions at BLMIS, the company through which Madoff ran his multi-billion dollar Ponzi scheme.  While acting in complete dereliction of their management responsibilities to BLMIS, Andrew, Mark and Shana were also among the unlawful recipients of close to $200 million of BLMIS customer funds which they used to fund lavish lifestyles.[1]

2.      Similar to the claims in *Irving H. Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483, the claims herein involve another instance wherein Madoff fraudulently transferred millions of dollars of BLMIS customer money to fund his family's personal business investments, this time in oil and gas properties.

---

[1] The Trustee's claims against Mark, Andrew and Shana Madoff are the subject of a separate adversary proceeding, *Irving H. Picard v. Peter Madoff et al.*, Adv. Pro. No. 09-1503 (BRL).

3.      Through this proceeding, the Trustee seeks to avoid and recover $5,175,010.42 of BLMIS funds that were fraudulently transferred to the Defendant Madoff Energy Companies in order to fund the capital contributions of Andrew, Mark, and Shana Madoff (collectively, the "Madoff Energy Members"), and to pay attorneys' fees incurred in connection with the companies' formation (collectively, the "Transfers").  The Trustee also seeks a turnover and an accounting of those funds as well as the imposition of a constructive trust on the Madoff Energy Companies for the benefit of BLMIS' customers, who were the unwitting investors in the defendant entities.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding brought in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding").

5.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§78eee(b)(2)(A), (b)(4).

6.      The statutory predicates for the relief sought herein include SIPA, 15 U.S.C. §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3), the Bankruptcy Code, 11 U.S.C. §§ 101, 105, 541, 542, 544, 548, 550 and 551; New York Debtor and Creditor Law §§ 270-281, and New York common law.

7.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

9.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.   Contemporaneously, the Securities and Exchange Commission ("SEC") filed the District Court Proceeding against Madoff, which remains pending.   The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the BLMIS Investment Advisory Business (the "BLMIS IA Business").

10.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

11.     On December 15, 2008, pursuant to SIPA §78eee(a)(4)(A), the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.   On that same date, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to a combination of its own action with SIPC's application.

12.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA, which, in pertinent part:

a.     appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b.     removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

c.     removed the Receiver for BLMIS.

13.     Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

14.     By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.   Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

15.     As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property[2] to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.   The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.   However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.   Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recovery for BLMIS accountholders.

16.     Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.   In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $68 billion invested through BLMIS.   In reality, BLMIS had assets on hand worth a fraction of that amount.   Customer accounts had not accrued any real profits because no

---

[2] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, investors had already lost approximately $20 billion in principal.

17.     As Madoff admitted at his Plea Hearing, he never purchased any of the securities, options, or Treasurys for the BLMIS IA Business, and the returns he reported to customers were entirely fictitious. Based on the Trustee's investigation to date, there is no record of BLMIS having cleared a single purchase or sale of securities on any exchange in connection with Madoff's claimed "split-strike conversion" investment strategy.[3]

18.     For all periods relevant hereto, the BLMIS IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay and/or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his family members, associates and others, including the defendant entities sued herein, until such time as the requests for redemptions overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

## TRUSTEE'S POWERS AND STANDING

19.     Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code. In addition, pursuant to SIPA § 78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

---

[3] Madoff did a *de minimus* amount of securities trading outside of the split-strike conversion strategy.

20.    The Trustee is a real party in interest and has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a.    the Defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b.    BLMIS incurred losses as a result of the claims set forth herein;

c.    BLMIS customers were injured as a result of the conduct detailed herein;

d.    SIPC cannot by statute advance funds to the Trustee to fully reimburse all customers for all of their losses;

e.    the Trustee will not be able to fully satisfy all claims;

f.    the Trustee, as bailee of customer property, can sue on behalf of the customer-bailors;

g.    as of this date, the Trustee has received multiple express assignments of certain claims of the applicable accountholders, which they could have asserted. As assignee, the Trustee stands in the shoes of persons who have suffered injury-in-fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages;

h.    SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

i.    the Trustee has the power and authority to avoid and recover transfers pursuant to sections 544, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §78fff2(c)(3).

## THE PARTIES

21.    Defendant Madoff Energy Holdings was organized as a limited liability company under the laws of the State of Delaware on May 31, 2007, with its principal place of business at 885 Third Ave., 18th Floor in New York, New York – formerly BLMIS' principal place of business.  The stated purpose of Madoff Energy Holdings is, among other things, to engage in the business of owning oil and gas properties and related assets.  Madoff Energy Holdings is owned and managed by its three members, Andrew, Mark and Shana Madoff, each of whom holds a 33.33% interest.  Madoff Energy Holdings is the sole owner and operator of Madoff Energy, Conglomerate Gas, Madoff Energy III and Madoff Energy IV.

22.    Defendant Madoff Energy was organized as a limited liability company under the laws of the State of Delaware on February 20, 2007, with its principal place of business at 885 Third Avenue, 18th Floor, in New York, New York.  The stated purpose of Madoff Energy is, among other things, to engage in the business of owning oil and gas properties and related assets.  When formed, each of the Madoff Energy Members was a manager and each held a 33.33% interest in Madoff Energy.  On or after May 31, 2007, Madoff Energy became wholly-owned and managed by Madoff Energy Holdings.  Upon information and belief, Madoff Energy has interests in gas wells located near Joe Pool Lake in Texas.

23.    Defendant Conglomerate Gas Resources was organized as a limited liability company under the laws of the State of Delaware on May 31, 2007, with its principal place of business at 885 Third Avenue, 18th Floor, in New York, New York.  The stated purpose of Conglomerate Gas is, among other things, to engage in the business of owning oil and gas properties and related assets.  Conglomerate Gas is wholly owned and managed by Madoff

Energy Holdings. Upon information and belief, Conglomerate Gas has an interest in a land lease near Joe Pool Lake in Texas.

24.     Defendant Madoff Energy III was organized as a limited liability company under the laws of the State of Delaware on May 29, 2008, with its principal place of business at 885 Third Avenue, 18th Floor, in New York, New York. The stated purpose of Madoff Energy III is, among other things, to engage in the business of owning oil and gas properties and related assets. Madoff Energy III is wholly owned and managed by Madoff Energy Holdings. Upon information and belief, Madoff Energy III has interests in a land lease and approximately 15 oil wells in Texas.

25.     Defendant Madoff Energy IV was organized as a limited liability company under the laws of the State of Delaware on October 7, 2008, with its principal place of business at 885 Third Avenue, 18th Floor, in New York, New York. The stated purpose of Madoff Energy IV is, among other things, to engage in the business of owning oil and gas properties and related assets. Madoff Energy IV is wholly owned and managed by Madoff Energy Holdings. Madoff Energy IV is party to an agreement with ESP Resources, Inc. which grants Madoff Energy IV an exclusive option to fund the drilling, re-entry and completion of certain wells in the West Gomez field located in Pecos County, Texas.

### BLMIS FUNDS WERE FRAUDULENTLY TRANSFERRED TO THE MADOFF ENERGY COMPANIES TO FUND THE CAPITAL CONTRIBUTIONS OF THE MADOFF ENERGY MEMBERS

26.     Through the creation of holding companies and subsidiaries, the Madoff Energy Members perpetuated and/or participated in a fraudulent scheme to divert BLMIS monies to entities they controlled to enrich themselves. At all times relevant to this proceeding, the Madoff

Energy Companies were used as vehicles to funnel funds out of BLMIS to finance the Madoff Energy Members' business ventures.

27.     Pursuant to the organization documents of the Madoff Energy Companies, each of the Madoff Energy Members was required to fund capital contributions from time to time.  Upon information and belief, a significant amount of the Madoff Energy Members' capital contributions were funded with the fraudulent transfers of BLMIS funds as detailed below.

28.     In June 2007, BLMIS transferred $500,000 to Madoff Energy Holdings, for which it received no value in exchange.  Upon information and belief, this transfer was made for the benefit of Shana Madoff, to fund her $500,000 capital contribution to Madoff Energy Holdings in June of 2007.

29.     In July 2007, BLMIS transferred $1.2 million to Madoff Energy Holdings, for which it received no value in exchange.  Upon information and belief, the transfer was again made for the benefit of Shana Madoff, in order to fund her $1.2 million capital contribution to Madoff Energy Holdings in July 2007.

30.     In March 2007, Andrew and Mark each received a $1 million "bonus" from BLMIS and subsequently they each received another $4 million from BLMIS as additional "bonuses."  Upon information and belief, BLMIS gave these bonuses to Mark and Andrew for their benefit, and to fund $3,450,000 of their capital contributions to Madoff Energy Holdings made in February, March, June and July of 2007.

31.     The foregoing "bonus" transfers that BLMIS made to Mark and Andrew, which were used to fund their capital contributions to the Madoff Energy Companies, were illegitimate

and fraudulent transfers for all of the reasons set forth in *Irving H. Picard v. Peter B. Madoff et al.*, Adv. Pro. No. 09-1503 (the "Madoff Family Complaint").[4]

32.     To say the very least, BLMIS received no value or benefit in exchange for the $10 million in "bonus" transfers it made to Mark and Andrew in 2007, which upon information and belief, were for their benefit in order to fund their capital contributions to the Madoff Energy Companies.

33.     Accordingly, the Trustee is entitled to avoid and recover the foregoing transfers made to the Madoff Energy Companies for the benefit of BLMIS' customers.

### BLMIS FUNDS WERE FRAUDULENTLY TRANSFERRED TO PAY LEGAL FEES FOR THE BENEFIT OF THE MADOFF ENERGY COMPANIES

34.     In connection with the formation of Madoff Energy and related transactions in 2007, Gardere Wynne Sewell LLP ("Gardere"), a Houston law firm, provided legal services to Madoff Energy for which it charged a total of $25,010.42.

35.     Despite possessing no interest in Madoff Energy or in any of the Madoff Energy Companies, BLMIS paid Gardere's legal fees with checks drawn on its Bank of New York account on March 16, 2007.

36.     BLMIS received no value in exchange for these transfers to Gardere, which was made for the benefit of the Madoff Energy Companies.

37.     Accordingly, the Trustee is entitled to avoid and recover the foregoing Transfers for the benefit of BLMIS' customers.

---

[4] The factual allegations set forth in paragraphs 2, 6-99 and 103 of the Madoff Family Complaint are incorporated by reference as if fully set forth herein.

### KNOWLEDGE OF THE FRAUDULENT NATURE
### OF THE TRANSFERS IS PROPERLY IMPUTED
### TO MADOFF ENERGY HOLDINGS

38.     Mark, Andrew and Shana – each of whom held senior management positions at BLMIS entailing legal compliance and/or supervisory responsibilities – were completely derelict in fulfilling their duties to BLMIS.  As spelled out more fully in the Madoff Family Complaint, had Mark, Andrew or Shana performed their duties with any level of professional diligence, they would have detected the Ponzi scheme years ago.  They either knew of the fraud, or intentionally shut their eyes to it.

39.     Without regard to the extent to which the Madoff Energy Companies and/or the Madoff Energy Members knew of Madoff's fraudulent scheme, each knew or should have known that they were not entitled to these distributions of "free" company money to fund business ventures for which they were the intended beneficiaries.

40.     Shana Madoff was responsible for monitoring BLMIS' operations and ensuring its compliance with federal and state laws and regulations.  As Compliance Director of BLMIS, Shana was – or should have been – aware of the fraudulent nature of the Transfers used to fund the members' capital contributions, and to make payments to Gardere for the benefit of the Madoff Energy Companies.  Upon information and belief, Shana was also the Secretary for some or all of the Madoff Energy Companies. Thus, her knowledge of the fraudulent nature of the Transfers is properly imputed to the Madoff Energy Companies.

41.     Mark and Andrew Madoff were also both FINRA-registered securities principals of BLMIS, and as such, had supervisory responsibilities to ensure compliance with the Company's policies and procedures as well as federal securities laws.  Upon information and belief, Mark was Managing Director and Andrew was Chief Executive Officer of some or all of

the Madoff Energy Companies.   Mark and Andrew knew – or should have known – of the

fraudulent nature of each of the Transfers, and their knowledge of the fraudulent nature of the

Transfers should be imputed to the Madoff Energy Companies.

### NATURE OF THE CAUSES OF ACTION AGAINST
### THE MADOFF ENERGY COMPANIES

42.     At all times relevant hereto, BLMIS was insolvent in that: (i) its assets were worth

billions of dollars less than the value of its liabilities; (ii) it could not meet its obligations as they

came due; and/or (iii) at the time of the Transfers to the Madoff Energy Companies described

herein, BLMIS was left with insufficient capital.

43.     This adversary proceeding is being brought to avoid and recover the Transfers to,

or for the benefit of, the Madoff Energy Companies, so that this customer property can be

equitably distributed among all of the victims of BLMIS in accordance with the provisions of

SIPA.

44.     The Transfers from BLMIS to the Madoff Energy Companies were and continue

to be estate property within the meaning of section 541 of the Bankruptcy Code, and/or customer

property within the meaning of SIPA §78*lll*(4), and are subject to turnover pursuant to section

542 of the Bankruptcy Code.

45.     All of the Transfers are avoidable and recoverable under sections 544, 548(a),

550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C.

§ 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g), and N.Y. Debt. & Cred. Law

§§ 273-279.

46.     To the extent that any of the recovery counts may be inconsistent with each other,

they are to be treated as being pleaded in the alternative.

47.    The Trustee's investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the Transfers and any additional transfers; and (ii) seek recovery of such additional transfers.

## FIRST CAUSE OF ACTION
## TURNOVER AND ACCOUNTING - 11 U.S.C. § 542

48.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

49.    The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4).

50.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to the immediate payment and turnover from the Madoff Energy Companies of any and all Transfers made by BLMIS, directly or indirectly, to any of the Madoff Energy Companies.

51.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers received by, any Madoff Energy Company from BLMIS, directly or indirectly.

## SECOND CAUSE OF ACTION
## FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(A), 550(a), AND 551

52.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

53.    As set forth above, BLMIS made the Transfers to, or for the benefit of, the Madoff Energy Companies and/or the Madoff Energy Members.

54.    The Transfers were made by BLMIS with the actual intent to hinder, delay and/or defraud some or all of BLMIS' then existing or future creditors.

55.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Madoff Energy Companies pursuant to section 550(a) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

56.    As a result of the foregoing, pursuant to section 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

## THIRD CAUSE OF ACTION
## FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(B), 550, AND 551

57.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

58.    BLMIS received less than reasonably equivalent value in exchange for the Transfers.

59.    BLMIS was insolvent at the time it made the Transfers or, in the alternative, BLMIS became insolvent as a result of each of the Transfers.

60.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Madoff Energy Companies pursuant to section 550(a) of the Bankruptcy Code, and SIPA. § 78fff-2(c)(3).

61.    As a result of the foregoing, pursuant to section 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the

Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

## FOURTH CAUSE OF ACTION
### FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(B), 550, AND 551

62.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

63.    BLMIS received less than reasonably equivalent value in exchange for the Transfers.

64.    At the time BLMIS made the Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the Transfers was an unreasonably small capital.

65.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Madoff Energy Companies pursuant to section 550(a) of the Bankruptcy Code, and SIPA. § 78fff-2(c)(3).

66.    As a result of the foregoing, pursuant to section 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

## FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(B), 550, AND 551

67.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

68.     BLMIS received less than reasonably equivalent value in exchange for the Transfers.

69.     As a result of the Transfers, BLMIS intended to incur and did incur debts beyond the Company's ability to pay such debts as they incurred.

70.     The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Madoff Energy Companies pursuant to section 550(a) of the Bankruptcy Code, SIPA § 78fff-2(c)(3).  As a result of the foregoing, pursuant to section 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

### SIXTH CAUSE OF ACTION
### FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

71.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

72.     At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were, and are, not allowable only under section 502(e).

73.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

74.    Upon information and belief, because the Transfers were received by the Madoff Energy Companies with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

75.    As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Madoff Energy Companies.

**SEVENTH CAUSE OF ACTION**
**FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

76.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

77.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

78.    BLMIS did not receive fair consideration for the Transfers.

79.    BLMIS was insolvent at the time of each the Transfers or, in the alternative, BLMIS became insolvent as a result of each of the Transfers.

80.    As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b),

550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, for the benefit of the consolidated estate of BLMIS.

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

81.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

82.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

83.     BLMIS did not receive fair consideration for the Transfers.

84.     At the time BLMIS made each of the Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Transfers was an unreasonably small capital.

85.     As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

## NINTH CAUSE OF ACTION
## FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

86.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

87.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

88.     BLMIS did not receive fair consideration for the Transfers.

89.     At the time BLMIS made each of the Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur, debts beyond its ability to pay them as the debts matured.

90.     As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

## TENTH CAUSE OF ACTION
## RECOVERY OF SUBSEQUENT TRANSFERS – NEW YORK DEBTOR AND
### CREDITOR LAW § 278 AND 11 U.S.C. §§ 544, 548, 550(a), AND 551

91.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

92.    Each of the Transfers is avoidable under sections 544 and/or 548 of the Bankruptcy Code.

93.    Upon information and belief, Madoff Energy Holdings made subsequent transfers of $3,782,548 to defendant Conglomerate Gas and/or one or more other Madoff Energy Companies (the "Subsequent Transfers").

94.    Conglomerate Gas or one or more other Madoff Energy Companies are immediate or mediate transferees of the Subsequent Transfers.

95.    As a result of the foregoing, pursuant to N.Y. Debtor and Creditor Law Section 278, Sections 544, 548, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Madoff Energy Companies: (i) avoiding and preserving the Subsequent Transfers; and (ii) recovering the Subsequent Transfers, or the value thereof, from Conglomerate Gas and/or one or more other Madoff Energy Companies for the benefit of the consolidated estate of BLMIS.

**ELEVENTH CAUSE OF ACTION**
**<u>CONVERSION</u>**

96.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

97.    BLMIS had a possessory right and interest to its assets, including its customers' investment funds.

98.    The Madoff Energy Companies converted the investment funds of BLMIS customers when they received money originating from BLMIS customer accounts in the form of payments and other transfers.  These actions deprived BLMIS and its creditors of the use of this money.

99.    As a direct and proximate result of this conduct, BLMIS and its creditors have not had the use of the money converted by the Madoff Energy Companies.

100.    By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

101.    The Madoff Energy Companies' conscious, willful, wanton, and/or malicious conduct entitles the Trustee, on behalf of BLMIS and its creditors, to an award of punitive damages in an amount to be determined at trial.

**TWELFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

102.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

103.    The Madoff Energy Companies and/or the Madoff Energy Members benefited from the receipt of money from BLMIS in the form of payments and other transfers which was the property of BLMIS and its customers, and for which the Madoff Energy Companies did not adequately compensate BLMIS or provide value.

104.    This enrichment was at the expense of BLMIS and, ultimately, at the expense of BLMIS' other customers.

105.    Equity and good conscience require full restitution of the monies received by the Madoff Energy Companies from BLMIS.

106.    The Madoff Energy Companies' conscious, intentional, and/or willful tortious conduct entitles BLMIS to recapture profits derived by the Madoff Energy Companies utilizing monies they received from BLMIS.

107.    By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST

108.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

109.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions and other wrongdoing of the Madoff Energy Companies for the individual interests and enrichment of the Madoff Energy Members.

110.    As a consequence of the fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Madoff Energy Companies, the Madoff Energy Companies and Madoff Energy Members have obtained funds, property, interests and profits therefrom which in justice and equity belong to the estate, for the use of BLMIS' customers.

111.    The Trustee has no adequate remedy at law.

112.    Because of the unjust enrichment of the Madoff Energy Companies, the Trustee is entitled to the imposition of a constructive trust on the ownership interests of the Madoff Energy Members, as well as any transfer of funds, property and assets from BLMIS, and any profits and proceeds received by the Madoff Energy Companies in the past or on a going forward basis.

## FOURTEENTH CAUSE OF ACTION
## ACCOUNTING

113.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

114.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions and other wrongdoing of the

Madoff Energy Companies and/or Madoff Energy Members for their own individual interests and enrichment.

115.    The Trustee has no adequate remedy at law.

116.    To compensate BLMIS for the amount of monies diverted by BLMIS for the benefit of the Madoff Energy Companies, it is necessary for the Madoff Energy Companies to provide an accounting of any transfer of funds, assets, or property received from BLMIS, as well as to any profits and proceeds in the past and on a going forward basis.  Complete information regarding the amount of such transfers misused by the Madoff Energy Companies and/or the Madoff Energy Members for their own benefit is within their possession, custody, and control.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

(a)    on the First Cause of Action, pursuant to section 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4): (i) that the property that was the subject of the Transfers is property of the estate that is to be immediately delivered and turned over to the Trustee; and (ii) for an accounting by the Madoff Energy Companies of the property that was the subject of the Transfers or the value of such property;

(b)    on the Second Cause of Action, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(c)    on the Third Cause of Action, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii)

directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(d)     on the Fourth Cause of Action, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(e)     on the Fifth Cause of Action, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(f)     on the Sixth Cause of Action, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Madoff Energy Companies;

(g)     on the Seventh Cause of Action, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(h)     on the Eighth Cause of Action, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and

SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(i)     on the Ninth Cause of Action, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(j)     on the Tenth Cause of Action, pursuant to section 278 of the New York Debtor and Creditor Law, sections 544, 548, 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3): (i) avoiding and preserving the Subsequent Transfers; (ii) directing that the Subsequent Transfers be set aside; and (iii) recovering the Subsequent Transfers, or the value thereof, from the Madoff Energy Companies for the benefit of the consolidated estate of BLMIS;

(k)     on the Eleventh Cause of Action against the Madoff Energy Companies for the conscious, wanton, willful, and/or malicious conversion of BLMIS assets, for compensatory and punitive damages in amounts to be determined at trial;

(l)     on the Twelfth Cause of Action against each of the Madoff Energy Companies for unjust enrichment, for compensatory damages in an amount to be determined at trial;

(m)     on the Thirteenth Cause of Action against each of the Madoff Energy Companies for the imposition of a constructive trust upon: (i) any ownership interests of the Madoff Energy Members; (ii) any funds, assets, or property received by, or for the benefit of, the Madoff Energy Companies from BLMIS and (iii) any profits and proceeds derived therefrom by the Madoff Energy Companies in the past and/or on a going forward basis;

(n)     on the Fourteenth Cause of Action, against each of the Madoff Energy Companies for an accounting of any transfer of funds, assets, or property received from BLMIS as well as any profits and proceeds derived therefrom in the past and on a going forward basis received by the Madoff Energy Companies;

(o)     on all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which any transfer of BLMIS funds, assets, or property were received by each Madoff Energy Company;

(p)     awarding the Trustee all applicable attorneys' fees, interest, costs, and disbursements of this action; and

(q)     granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: New York, New York
        July 29, 2010

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP

/s/ Regina Griffin
Regina Griffin (rgriffin@windelsmarx.com)
Howard L. Simon (hsimon@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Fax: (212) 262-1215

*Special Counsel to Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC*