WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Howard L. Simon
Email: hsimon@windelsmarx.com
Regina Griffin
Email: rgriffin@windelsmarx.com

*Special Counsel to Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>MADOFF FAMILY LLC,<br><br>        Defendant. | Adv. Pro. No. _____<br><br>**COMPLAINT** |

{10581299:1}

Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or, alternatively, the "Company" or the "Debtor"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") and the estate of Bernard L. Madoff individually, by and through his special counsel, Windels Marx Lane & Mittendorf, LLP, for his Complaint against Madoff Family LLC (the "Family Fund" or the "Fund")[1] based on actual knowledge and information and belief, states the following:

## NATURE OF THE PROCEEDING

1.      Bernard L. Madoff's ("Madoff") sons, Andrew and Mark Madoff, his brother Peter Madoff and his niece Shana Madoff, held senior management positions at BLMIS, the company through which Madoff ran his multi-billion dollar Ponzi scheme.   While acting in complete dereliction of their management responsibilities to BLMIS, Peter, Andrew, Mark and Shana were also among the unlawful recipients of close to $200 million of BLMIS customer funds which they used to fund lavish lifestyles.[2]

2.      Similar to the claims in *Irving H. Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-03483, the claims herein involve another instance in which Madoff fraudulently transferred millions of dollars of BLMIS customer money to fund his family's personal business investments, this time in a hedge fund and a biotechnology company.

3.      Through this proceeding, the Trustee seeks to avoid and recover $3,000,500 of BLMIS funds that were fraudulently transferred to, or for the benefit of, the defendant Family Fund.   The Trustee also seeks a turnover and an accounting of those funds as well as the

---

[1] Originally organized as "Madoff Family Fund LLC," the Family Fund changed its name to "Madoff Family LLC" pursuant to a December 9, 2005 amendment to its Articles of Formation.

[2] The Trustee's claims against Peter, Mark, Andrew and Shana Madoff are the subject of a separate adversary proceeding, *Irving H. Picard v. Peter Madoff et al.*, Adv. Pro. No. 09-1503 (BRL).

imposition of a constructive trust on the Family Fund, whose assets include stock in a biotechnology company and cash and equity residing in five accounts, which rightfully belong to BLMIS' customers, the unwitting but true investors in the defendant entity.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding brought in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding").

5.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§78eee(b)(2)(A), (b)(4).

6.      The statutory predicates for the relief sought herein include SIPA, 15 U.S.C. §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3), the Bankruptcy Code, 11 U.S.C. §§ 101, 105, 541, 542, 544, 548, 550 and 551; New York Debtor and Creditor Law §§ 270-281, and New York common law.

7.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

9.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed the District Court Proceeding against Madoff, which remains

pending.   The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the BLMIS Investment Advisory Business (the "BLMIS IA Business").

10.   On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

11.   On December 15, 2008, pursuant to SIPA §78eee(a)(4)(A), the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.   On that same date, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to a combination of its own action with SIPC's application.

12.   Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA, which, in pertinent part:

   a.   appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

   b.   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

   c.   removed the Receiver for BLMIS.

13.   Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

14.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

15.    As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property[3] to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.  However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recovery for BLMIS accountholders.

16.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $68 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth a fraction of that amount.  Customer accounts had not accrued any real profits because no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, investors had already lost approximately $20 billion in principal.

17.    As Madoff admitted at his Plea Hearing, he never purchased any of the securities, options, or Treasurys for the BLMIS IA Business and the returns he reported to customers were entirely fictitious.  Based on the Trustee's investigation to date, there is no record of BLMIS

---

[3] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

having cleared a single purchase or sale of securities on any exchange in connection with Madoff's claimed "split-strike conversion" investment strategy.[4]

18.      For all periods relevant hereto, the BLMIS IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay and/or defraud other current and prospective customers of BLMIS.  The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors.  The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his family members, associates and others, including the defendant entity sued herein, until such time as the requests for redemptions overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

## TRUSTEE'S POWERS AND STANDING

19.      Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code.  In addition, pursuant to SIPA section 78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

20.      The Trustee is a real party in interest and has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

         a.      the Defendant received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

         b.      BLMIS incurred losses as a result of the claims set forth herein;

---

[4] Madoff did a *de minimus* amount of securities trading outside of the split-strike conversion strategy.

c.      BLMIS customers were injured as a result of the conduct detailed herein;

d.      SIPC cannot by statute advance funds to the Trustee to fully reimburse all customers for all of their losses;

e.      the Trustee will not be able to fully satisfy all claims;

f.      the Trustee, as bailee of customer property, can sue on behalf of the customer-bailors;

g.      as of this date, the Trustee has received multiple express assignments of certain claims of the applicable accountholders, which they could have asserted.  As assignee, the Trustee stands in the shoes of persons who have suffered injury-in-fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages;

h.      SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding.  SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

i.      the Trustee has the power and authority to avoid and recover transfers pursuant to sections 544, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §78fff2(c)(3).

## THE PARTIES

21.     Defendant Family Fund was organized as a limited liability company under the laws of the State of New York on or about May 1, 2001, with its principal place of business at 34 Pheasant Run, Old Westbury, New York 11568, which at the time, was Peter's residence.  Mark, Andrew, Peter and Roger Madoff (Madoff's nephew) each held 24.75% ownership and membership interests in the Family Fund when it was organized, and Peter held an additional 1%

interest as Manager.  As of October 10, 2008, Mark, Andrew and Shana[5] each possessed a 33%

membership interest in the Family Fund, and a 24.75% ownership interest in this entity.  Upon

information and belief, at all relevant times, Peter retained a 1% interest as Manager of the

Family Fund.  Collectively, Peter, Mark, Andrew, Roger and Shana are referred to herein as the

"Family Fund Members."

## BLMIS FRAUDULENTLY TRANSFERRED MORE THAN $3 MILLION
## TO, OR FOR THE BENEFIT OF, THE FAMILY FUND

22.    Through the creation of the Family Fund, the Family Fund Members perpetuated

and/or participated in a fraudulent scheme to divert BLMIS monies to an entity they controlled to

enrich themselves.  At all times relevant to this proceeding, the Family Fund was used as a

vehicle to funnel funds out of BLMIS to finance the Family Fund Members' investments.

23.    The Trustee has thus far identified two transfers totaling more than $3 million

from BLMIS to, or for the benefit of, the Family Fund (collectively, the "Transfers").  The

Transfers were used for, among other things, investing in a hedge fund and a biotechnology

company.

24.    The Transfers that BLMIS made to, or for the benefit of, the Family Fund were

illegitimate and fraudulent for all of the reasons set forth in *Irving H. Picard v. Peter B. Madoff

et al.*, Adv. Pro. No. 09-1503 (the "Madoff Family Complaint"), and the factual allegations set

forth in paragraphs 2, 6 through 99, and 103 of the Madoff Family Complaint are incorporated

by reference as if fully set forth herein.

---

[5] Upon information and belief, Peter transferred his 24.75% membership and ownership interests in the Family Fund
to his daughter, Shana, in 2004 but retained his 1% interest as Manager of the Family Fund.

**BLMIS Improperly Transfers**
**$1 Million to Fund the Family Fund's Initial Investment**

25.     According to its Operating Agreement, the Family Fund was formed on May 1, 2001 as a New York limited liability corporation for the purpose of investing in hedge fund Morgan Crossroads Fund LP ("Morgan Crossroads") and "such other entities or entity as the manager shall determine."

26.     Rather than using their personal funds, the Family Fund Members improperly received money siphoned from BLMIS to finance the Family Fund. On May 1, 2001, BLMIS wired $1,000,000 to Morgan Crossroads for the benefit of the Family Fund (the "$1.0 Million Transfer") for which BLMIS received no value in exchange.

27.     Upon information and belief, all of the Family Fund's financing came from BLMIS.

**BLMIS Fraudulently Bankrolls**
**the Family Fund's Investment in Stemline Therapeutics**

28.     On or about July 8, 2004, BLMIS transferred $2,000,500 (the "$2.0 Million Transfer") to the Family Fund to finance the Family Fund's investment in Stemline Therapeutics, Inc. ("Stemline"), a biotechnology company, for which BLMIS received no value in exchange.

29.     One day later, on July 9, 2004, the Family Fund transferred $2,000,000 to Stemline to purchase Stemline stock (the "Stemline Stock"), which provided the Fund with an approximate 14% ownership interest in that entity.

**The Liquidation of the Morgan Crossroads Investment**

30.     The Family Fund liquidated its Morgan Crossroads investment in November 2005. On December 1, 2006, the Family Fund used $250,000 of the liquidation proceeds to purchase additional shares in Stemline. As a result, upon information and belief, as of March

2009, all of the Family Fund owned Stemline Stock was purchased solely with BLMIS customer money.

31.    The balance of the Morgan Crossroads liquidation proceeds resided in: (i) four Credit Suisse Securities (USA) LLC accounts containing approximately $384,000 in cash and equity as of February 2009 and (ii) a JPMorgan Chase account holding approximately $29,000 as of March 2009 (collectively, the "Accounts").

32.    Accordingly, the Trustee is entitled to avoid and recover the foregoing Transfers made to, or for the benefit of, the Family Fund and any rights and value associated with the Stemline Stock and the Accounts should inure to the benefit of BLMIS' customers.

## KNOWLEDGE OF THE FRAUDULENT
## NATURE OF THE TRANSFERS IS PROPERLY
## IMPUTED TO THE FAMILY FUND

33.    Peter, Mark, Andrew and Shana – each of whom held senior management positions at BLMIS entailing legal compliance and/or supervisory responsibilities – were completely derelict in fulfilling their duties to BLMIS.  As spelled out more fully in the Madoff Family Complaint, had Peter, Mark, Andrew or Shana performed their duties with any level of professional diligence, they would have detected the Ponzi scheme years ago.  They either knew of the fraud, or intentionally shut their eyes to it.

34.    Without regard to the extent to which the Family Fund and/or Family Fund Members knew of Madoff's fraudulent scheme, each knew or should have known that they were not entitled to these distributions of "free" company money to fund business ventures for which they were the intended beneficiaries.

35.    Peter Madoff served as Senior Managing Director and CCO of BLMIS.  He is also the Manager of the Family Fund sued herein.  Consistent with his roles at BLMIS and the

Family Fund, Peter knew, or should have known, of the fraudulent nature of each of the Transfers sued upon. Thus, his knowledge of the fraudulent nature of these Transfers is properly imputed to the Family Fund.

36.    Shana Madoff was responsible for monitoring BLMIS' operations and ensuring its compliance with federal and state laws and regulations. As Compliance Director of BLMIS, Shana was – or should have been – aware of the fraudulent nature of the Transfers sued upon herein. Thus, her knowledge of the fraudulent nature of these Transfers is properly imputed to the Family Fund.

37.    Mark and Andrew Madoff were also both FINRA-registered securities principals of BLMIS, and as such, had supervisory responsibilities to ensure compliance with the Company's policies and procedures as well as federal securities laws. Mark and Andrew knew – or should have known – of the fraudulent nature of each of the Transfers, and their knowledge of the fraudulent nature of the Transfers should be imputed to the Family Fund.

## NATURE OF THE CAUSES
## OF ACTION AGAINST THE FAMILY FUND

38.    At all times relevant hereto, BLMIS was insolvent in that: (i) its assets were worth billions of dollars less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and/or (iii) at the time of the Transfers to the Family Fund described herein, BLMIS was left with insufficient capital.

39.    This adversary proceeding is being brought to avoid and recover the Transfers to, or for the benefit of, the Family Fund, so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with the provisions of SIPA.

40.    The Transfers from BLMIS to the Family Fund, the Accounts and the Stemline Stock were and continue to be estate property within the meaning of section 541 of the

Bankruptcy Code, as well as customer property within the meaning of 15 U.S.C. §78*lll*(4), and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

41.    All of the Transfers are avoidable and recoverable under sections 544, 548(a), 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) and 213(8), and N.Y. Debt. & Cred. Law §§ 273-279.

42.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

43.    The Trustee's investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the Transfers and any additional transfers; and (ii) seek recovery of such additional transfers.

### FIRST CAUSE OF ACTION
### TURNOVER AND ACCOUNTING - 11 U.S.C. § 542

44.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

45.    The Transfers, Accounts, and Stemline Stock constitute property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and 15 U.S.C. §§ 78fff-2(c)(3) and 78*lll*(4).

46.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to the immediate payment and turnover from the Family Fund of any and all Transfers made by BLMIS, directly or indirectly, to the Family Fund.

47.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers received by the Family Fund from BLMIS, directly or indirectly.

## SECOND CAUSE OF ACTION
## FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(A), 550(a), AND 551

48.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

49.     As set forth above, BLMIS made the Transfers to, or for the benefit of, the Family Fund and/or the Family Fund Members.

50.     The Transfers were made by BLMIS with the actual intent to hinder, delay and/or defraud some or all of BLMIS' then existing or future creditors.

51.     The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Family Fund pursuant to section 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

52.     As a result of the foregoing, pursuant to section 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS.

## THIRD CAUSE OF ACTION
## NEW YORK DEBTOR AND CREDITOR LAW
## §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

53.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

54.     At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

55.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

56.     Upon information and belief, because the Transfers were received by the Family Fund with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

57.     As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Fund.

**FOURTH CAUSE OF ACTION**
**UNDISCOVERED FRAUDULENT TRANSFERS – NEW YORK CIVIL PROCEDURE**
**LAW AND RULES 203(g), 213(8), AND NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

58.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

59.     At all times relevant, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

60.     At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

61.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

62.     Upon information and belief, because the Transfers were received by the Family Fund with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

63.     As a result of the foregoing, pursuant to CPLR 203(g) and 213(8), sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Fund.

## FIFTH CAUSE OF ACTION
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 273, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

64.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

65.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

66.     BLMIS did not receive fair consideration for the $2.0 Million Transfer.

67.     BLMIS was insolvent at the time of the $2.0 Million Transfer or, in the alternative, BLMIS became insolvent as a result of the $2.0 Million Transfer.

68.     As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and

preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, for the benefit of the consolidated estate of BLMIS.

### SIXTH CAUSE OF ACTION
### FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

69.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

70.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

71.     BLMIS did not receive fair consideration for the $2.0 Million Transfer.

72.     At the time BLMIS made the $2.0 Million Transfer, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the $2.0 Million Transfer was an unreasonably small capital.

73.     As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, for the benefit of the consolidated estate of BLMIS.

## SEVENTH CAUSE OF ACTION
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

74.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

75.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

76.    BLMIS did not receive fair consideration for the $2.0 Million Transfer.

77.    At the time BLMIS made the $2.0 Million Transfer, BLMIS had incurred, was intending to incur, or believed that it would incur, debts beyond its ability to pay them as the debts matured.

78.    As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS.

## EIGHTH CAUSE OF ACTION
### CONVERSION

79.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

80.    BLMIS had a possessory right and interest to its assets, including its customers' investment funds.

81.     The Family Fund converted the investment funds of BLMIS customers when it received money originating from BLMIS' customer accounts in the form of payments and other transfers.  These actions deprived BLMIS and its creditors of the use of this money.

82.     As a direct and proximate result of this conduct, BLMIS and its creditors have not had the use of the money converted by the Family Fund.

83.     By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

84.     The Family Fund's conscious, willful, wanton, and/or malicious conduct entitles the Trustee, on behalf of BLMIS and its creditors, to an award of punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT

85.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

86.     The Family Fund and/or the Family Fund Members benefited from the receipt of money from BLMIS in the form of payments and other transfers which was the property of BLMIS and its customers, and for which the Family Fund did not adequately compensate BLMIS or provide value.

87.     This enrichment was at the expense of BLMIS and, ultimately, at the expense of BLMIS' other customers.

88.     Equity and good conscience require full restitution of the monies received by the Family Fund from BLMIS.

89.     The Family Fund's conscious, intentional, and/or willful tortious conduct entitles BLMIS to recapture profits derived by the Family Fund utilizing monies they received from BLMIS.

90.     By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST

91.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

92.     As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions and other wrongdoing of the Family Fund for the individual interests and enrichment of the Family Fund Members.

93.     As a consequence of the fraudulent conveyances, fraudulent transfers, conversions and other wrongdoing of the Family Fund, the Family Fund and the Family Fund Members have obtained funds, property, interests and profits therefrom which in justice and equity belong to the estate, for the use of BLMIS' customers.

94.     The Trustee has no adequate remedy at law.

95.     Because of the unjust enrichment of the Family Fund, the Trustee is entitled to the imposition of a constructive trust on the ownership interests held by the Family Fund Members in the Family Fund including: (i) the Fund's cash and equity assets residing in the Accounts; (ii) any transfer of funds, property and assets derived from BLMIS; and (iii) any profits and proceeds received by the Family Fund in the past or on a going forward basis.

96.     In addition, using the sums the Family Fund received as a result of the conveyances, fraudulent transfers, conversions and other wrongdoing, the Family Fund acquired

the Stemline Stock.  Accordingly, any rights, title, interest and/or value of the Stemline Stock held by the Family Fund and/or the Family Fund Members should also be held in trust for BLMIS' use, benefit and account.

## ELEVENTH CAUSE OF ACTION
## ACCOUNTING

97.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

98.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions and other wrongdoing of the Family Fund and/or Family Fund Members for their own individual interests and enrichment.

99.    The Trustee has no adequate remedy at law.

100.    To compensate BLMIS for the amount of monies diverted by BLMIS for the benefit of the Family Fund, it is necessary for the Family Fund to provide an accounting of any transfer of funds, assets, or property received from BLMIS, as well as to any profits and proceeds in the past and on a going forward basis.  Complete information regarding the amount of such transfers misused by the Family Fund and/or the Family Fund Members for their own benefit is within their possession, custody, and control.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendant as follows:

(a)    on the First Cause of Action, pursuant to section 542 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3) and § 78*lll*(4): (i) that the property that was the subject of the Transfers is property of the estate that is to be immediately delivered and turned over to the Trustee; and (ii) for an accounting by the Family Fund of the property that was the subject of the Transfers or the value of such property;

(b)     on the Second Cause of Action, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS;

(c)     on the Third Cause of Action, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Fund;

(d)     on the Fourth Cause of Action, pursuant to CPLR 203(g) and 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Family Fund;

(e)     on the Fifth Cause of Action, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS;

(f)     on the Sixth Cause of Action, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and

15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing

that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the

value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS;

(g)     on the Seventh Cause of Action, pursuant to sections 275, 278, and/or 279 of the

New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and

15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing

that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the

value thereof, from the Family Fund for the benefit of the consolidated estate of BLMIS;

(h)     on the Eighth Cause of Action against the Family Fund for the conscious, wanton,

willful, and/or malicious conversion of BLMIS assets, for compensatory and punitive damages in

amounts to be determined at trial;

(i)     on the Ninth Cause of Action against the Family Fund for unjust enrichment, for

compensatory damages in an amount to be determined at trial;

(j)     on the Tenth Cause of Action against the Family Fund for the imposition of a

constructive trust upon: (i)  any funds, assets, or property received by, or for the benefit of, the

Family Fund from BLMIS; (ii) any profits and proceeds derived therefrom by the Family Fund

in the past and/or on a going forward basis; and (iii) any rights, title, interest and value of the

Accounts and the Stemline Stock owned or held by the Family Fund and/or the Family Fund

Members;

(k)     on the Eleventh Cause of Action against the Family Fund, for an accounting of

any transfer of funds, assets, or property received from BLMIS as well as any profits and

proceeds derived therefrom in the past and on a going forward basis received by the Family

Fund;

(l)      on all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which any transfer of BLMIS funds, assets, or property were received by the Family Fund;

(m)     awarding the Trustee all applicable attorneys' fees, interest, costs, and disbursements of this action; and

(n)     granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: New York, New York          Respectfully submitted,
       July 29, 2010

                         WINDELS MARX LANE & MITTENDORF, LLP

                         /s/ Regina Griffin
                         Howard L. Simon (hsimon@windelsmarx.com)
                         Regina Griffin (rgriffin@windelsmarx.com)
                         156 West 56th Street
                         New York, New York 10019
                         Tel:  (212) 237-1000
                         Fax: (212) 262-1215

                         *Special Counsel to Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC*