# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM TUCKER, <br><br>           Plaintiff, <br><br> vs. <br><br> BENJAMIN VALENTY, <br> IMAGINART PUBLISHING, <br> IMAGINART PUBLISHING, LLC, <br><br>           Defendants. | Case No. 11-cv-8447 (PAE) <br> ECF CASE <br><br><br> **NOTICE OF REMOVAL OF LAWSUIT PENDING IN FEDERAL COURT TO BANKRUPTCY COURT** <br> **(28 U.S.C. § 1452)** |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that Plaintiff, William Tucker, hereby removes this action to the United States Bankruptcy Court for the Southern District of New York under 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027, and in support of this Notice of Removal states as follows:

1.      On or about November 21, 2011, Plaintiff William Tucker filed a complaint against the Defendants, Benjamin Valenty, Imaginart Publishing, and Imaginart, L.L.C. ("Debtors") in the United States District Court for the Southern District of New York, located at 500 Pearl St. New York, NY 10007-1312. Case No. 1:11-cv-08447-PAE, pending before the Hon. Paul A. Engelmayer ("the Federal Court Action").

2.      In the Complaint, Plaintiff asserts various claims against the Debtors, including fraud, breach of contract, conversion, rescission, and consumer fraud. The claims in the

Complaint are based upon Debtors' sale of fraudulently misrepresented and inauthentic artwork, and art-related investments, as more fully described in the copy of the Complaint attached hereto as Exhibit "1." Plaintiff alleges that the Debtors are in possession of large quantities of artwork purchased and paid for by Plaintiff which are believed to be a major asset of the Debtors' estates. Plaintiff further seeks to recover damages to be collected from the estate for Debtors' fraud, breach of contract and conversion.

3. On or about December 7, 2011, Debtor Imaginart, LLC filed a voluntary petition for relief in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, under Chapter 11 of the United States Bankruptcy Code, which is currently pending as Case No. 8:11-bk-26785-ES ("Imaginart Bankruptcy").

4. On or about December 12, 2011, the Debtor Benjamin Paul Valenty filed a voluntary petition for relief in the United States Bankruptcy Court for the Central District of California, Riverside Division, under Chapter 7 of the United States Bankruptcy Code, which is currently pending as Case No. 6:11-bk-47321-SC ("Valenty Bankruptcy").

5. The Federal Court Action is a core proceeding within the meaning of 28 U.S.C. §§ 157 and 1334 because the outcome of that action has a direct impact on both the Imaginart Bankruptcy and Valenty Bankruptcy estates being administered in the respective pending bankruptcy matters.

6. Removal is timely under Federal Rule of Bankruptcy Procedure 9027, which states that Plaintiff may remove the Federal Court Action within 90 days of the entry of the order for relief. Fed. R. Bankr. P. 9027(a)(2). The commencement of Debtors' respective voluntary Chapter 7 and Chapter 11 cases constitutes an order for relief under 11 U.S.C. § 301(b).

7. The Bankruptcy Court has jurisdiction over the Federal Court Action pursuant to 28 U.S.C. § 1334(b).

8. The Federal Court Action is a civil action other than a proceeding before the United States Tax Court or a civil action by a government unit to enforce its police or regulatory power.

- 2 -

9.      Venue for the Federal Court Action is proper in this Court under 28 U.S.C. § 1452(a), because this Court is the Bankruptcy Court located in the District where the non-bankruptcy court where the Federal Court Action was formerly pending was located.

10.     In connection with the filing of this Notice of Removal, Plaintiff intends to file a motion to transfer venue from the United States Bankruptcy Court for the Southern District of New York to the United States Bankruptcy Court for the Central District of California so that the matter may be adjudicated in connection with the Imaginart Bankruptcy.

11.     Copies of all process and pleadings in the Federal Court Action are attached as Exhibit "1."

Dated this 9th day of February, 2012.

LEVINE DESANTIS, P.C.
Attorneys for Plaintiff

By: ___/s/ Anthony N. Gaeta___
ANTHONY N. GAETA, ESQ.
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1648
agaeta@levinedesantis.com

- 4 -

# EXHIBIT "1"

**11 CIV 8447**

JUDGE ENGELMAYER
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
NOV 21 2011
U.S.D.C. S.D.N.Y.
CASHIERS

| | |
|---|---|
| WILLIAM TUCKER, | |
| Plaintiff, | Case No. |
| vs. | |
| BENJAMIN VALENTY, IMAGINART PUBLISHING, IMAGINART PUBLISHING, LLC, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

ANTHONY N. GAETA (AG-9922)

LEVINE DESANTIS, P.C.
Attorneys at Law
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1648
agaeta@levinedesantis.com

November 18, 2011

## COMPLAINT

Plaintiff Dr. William Tucker ("Tucker"), by his attorneys, Levine DeSantis, P.C., and Seyburn, Kahn, Ginn, Bess and Serlin, P.C., states as follows in support of his Complaint against Defendants Benjamin Valenty ("Valenty"), ImaginArt Publishing, and ImaginArt, LLC:

## SUMMARY OF THE CASE

1.      This case involves a breach of contract, numerous acts of misrepresentation and conversion, conspiracy and fraud against the Plaintiff, a victimized art purchaser and investor, orchestrated by Valenty, a con man in the purest sense of the term, and his companies.

2.      The Defendants represented themselves as credible art sellers, publishers, and experts.

3.      The Plaintiff trusted the Defendants to provide accurate information about the authenticity and value of various artwork that the Defendants were selling.

4.      The Defendants induced the Plaintiff to purchase various artwork based upon the Defendants' grossly misrepresented written and oral promises to the Plaintiff as to the authenticity and value of the artwork.

5.      The artwork that the Defendants actually delivered to the Plaintiff is inauthentic, misrepresented, low-quality, damaged, worth a small fraction of the purchase prices, and not capable of re-sale in good-faith or without a substantial loss.

6.      The Defendants are also holding, and have failed to deliver to the Plaintiff, a large quantity of the artwork which he already paid for.

7.      Further, the Defendants fraudulently induced the Plaintiff to become a "co-producer" of an art related project, which required the Plaintiff to contribute significant sums of money.

8.    The Defendants failed to follow through on this project or to deliver the goods, and wrongfully kept the funds from the Plaintiff.

9.    Through their misconduct, the Defendants have flagrantly defrauded the Plaintiff, and have caused him substantial damages.

## JURISDICTION AND VENUE

10.    This Court has personal jurisdiction over the Defendants: (a) pursuant to New York's Long-Arm Statute, CPLR §302(a)(1) and (2); (b) based upon Defendants' repeated and ongoing marketing and sales of goods and services in New York and/or to residents of New York, including the Plaintiff; (c) as a result of the Defendants' tortious acts against the Plaintiff, who is a resident of the State of New York; and (d) because some of the artwork at issue in this case is currently located in the State of New York.

11.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.    Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this judicial district.

## THE PARTIES

13.    The Plaintiff is an individual residing in Onondaga County, New York.

14.    The Plaintiff is not a sophisticated art purchaser or expert, and therefore relied upon the Defendants in this case, who are self-proclaimed reliable art experts.

15.    Defendant Valenty is an individual who resides and works in Lake Forest, California.

16.    Valenty is a self-proclaimed art expert, salesman, and publisher.

-2-

17.     Upon information and belief Valenty has a long and sordid past in the art sales and business industry, which was not disclosed to Tucker.

18.     ImaginArt Publishing is a California General Partnership, with a principal place of business located in Lake Forest, California.

19.     ImaginArt, LLC is a Nevada Limited Liability Company, with a principal place of business located in Lake Forest California.

20.     ImaginArt Publishing and ImaginArt, LLC operate as "ImaginArt" (both entities hereinafter referred to as "ImaginArt"), which touts itself as "publishers and distributors of exquisite fine art".

21.     ImaginArt also conducts art auctions under the name Elite Art Events.

22.     The Defendants act as dealers, sellers, publishers, distributors and purported experts of artwork and art related investments, which they market nationally on television, the internet, magazines, and other publications, to the detriment of New York residents including the Plaintiff.

23.     The artwork and investments sold by the Defendants are either not delivered at all, not one of a kind paintings or works of art, inauthentic, are copies of copies of a photomechanical reproduction, and/or are grossly misrepresented as to value, investment potential, and quality.

24.     The Defendants enticed customers, including the Plaintiff, through misleading advertisements, schemes, promises of astronomical increases in value of art and art-related investments, misrepresentation of the authenticity and value of artwork, and other disingenuous sales tactics.

25. Valenty and ImaginArt specialize in selling artwork by so-called "child prodigies" whose artwork is worth virtually nothing as these "child prodigies" are unknown, new or emerging artists, with no verifiable sales record nor are there independent third-party records of bona fide sales, although the Defendants mislead purchasers such as the Plaintiff by claiming that these child-artists are the next breakout artists, such as Picasso and Van Gogh. The ImaginArt website asserts that "Ben Valenty is world reknown (sic) for discovering the next generation of superstars."

26. The Defendants conduct art auctions across the country, and virtually or on-line, where residents of New York can attend in person or virtually, including while in their homes or businesses in the State of New York.

27. The Defendants contacted the Plaintiff numerous times within the State of New York, shipped artwork to the Plaintiff within the State of New York, took money from the Plaintiff in the State of New York, conducted auctions in which the Plaintiff participated from the State of New York, and caused harm to the Plaintiff within the State of New York.

28. The concerted action and conspiracy of the Defendants, as discussed herein, have caused the Plaintiff to incur substantial and detrimental losses.

## COMMON ALLEGATIONS

### Factual Background

29. In the beginning of 2010, the Defendants approached the Plaintiff about the sale of certain artwork.

30. The Defendants represented themselves to the Plaintiff as art experts and as a trustworthy dealers and publishers of artwork and art-related investments.

31.     The Plaintiff made clear to the Defendants that he had no special training or experience in fine arts, and was an amateur who did not know and could not by himself reliably determine the authenticity or appropriate values of fine artwork.

32.     The Defendants assured the Plaintiff that they would protect his interests, and guide him through the art purchasing.

33.     At all times, the Defendants knew that the Plaintiff was relying upon the Defendants' self-proclaimed expert status, and claims of trustworthiness.

<u>Artwork</u>

34.     The Defendants initially represented to the Plaintiff that they had obtained a special offering of artwork by the artist, James Gill, who they claimed to be a founder of the "Pop Art" movement, along with other famous artists such as Andy Warhol. The Defendants claimed that at the peak of his popularity in the 1960s, Gill vanished, but had resurfaced three decades later, with paintings he had produced back in the 1960s which the Defendants were privileged to sell.

35.     The Defendants represented and made clear on numerous occasions that they were offering original, vintage paintings by Gill from the 1960s, and not new or contemporary works.

36.     After the initial purchase, and throughout the entire time that the Plaintiff purchased purported James Gill artwork from the Defendants, the Defendants promised that the artwork was authentic and valuable.

37.     Defendants also offered other artwork to the Plaintiff, which the Defendants claimed was authentic, original, good investments, valuable, and in pristine condition.

- 5 -

38.     The Defendants used misleading sales tactics such as claiming that certain artwork for sale would benefit charity, and/or were "zero" risk.

39.     Further, the Defendants falsely promised that certain pieces purchased would be displayed in museums, adding to the rarity, fame, and value of the pieces.

40.     The Defendants promised that all artwork sold would be accompanied by a certificate of authenticity, and that it would appraise for well in excess of the purchase price. In some cases, the Defendants promised that the artwork was guaranteed to be worth up to 1000 times more than the sales price.

41.     Moreover, the Plaintiff explained to the Defendants prior to purchasing artwork that he wanted to be able to make money from the eventual sale of artwork so that he could donate the money to charity, and the Defendants promised the Plaintiff that he would make sufficient profits from the artwork to accomplish his charitable goals.

42.     The Defendants guaranteed a refund if the Plaintiff did not like or wanted to return the artwork he purchased.

43.     Based upon the Defendants' promises, the Plaintiff purchased artwork from the Defendants at several auctions and pre-auctions conducted by telephone.

44.     At a July 30, 2010 auction held at the Red Rock Hotel in Las Vegas, Nevada, the Plaintiff purchased the following artwork:

| Purported Artist | Name of Piece and Defendants' Description |
|---|---|
| James Gill | Week in Review |
| James Gill | See Sea |
| Picasso | Blind Lot 90 |
| James Gill | It will be uncovered |

45.  At a September 14, 2010 phone auction, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|---|---|---|
| Lot No. 14 | Lauren Voiers | Iridecence |
| Lot No. 6 | Alexandra Nechita | Maestro in His Studio |
| Lot No. 7 | James Gill | Man in Blue Suit |
| Lot No. 10 | Lauren Voiers | Minds Eye |
| Lot No. 13 | James Gill | Small Nude on Carpet |
| Lot No. 14 | Lauren Voiers | Untitled |
| Lot No. 31 | James Gill | Nude in Pencil |
| Lot No. 33 | James Gill | Seeing Blue |
| Lot No. 70 | James Gill | Seeing Blue |

46.  At a January 12, 2011 phone auction, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece |
|---|---|---|
| Lot No. 8 | James Gill | Beatles |
| Lot No. 16 | James Gill | Van Gogh |
| Lot No. 31 | James Gill | Untitled |
| Lot No. 32 | James Gill | Untitled |
| Lot No. 46 | James Gill | Neon Marilyn |
| Lot No. 39 | James Gill | Art in America |

47.  At a February 23, 2011 phone auction, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|---|---|---|
| Lot No. 4 | Lauren Voiers | Cat's Cradle |
| Lot No. 17 | Lauren Voiers | Sisters |
| Lot No. 21 | Lauren Voiers | Consciousness of Peace (to Walter) |
| Lot No. 28 | Salvador Dali | Lithograph Siren |

- 7 -

| Lot No. 37 | Salvador Dali | Lithograph Quixote Gift |
|------------|---------------|-------------------------|
| Lot No. 26 | Salvador Dali | Lithograph Quixote |

48.    At an auction in early July, 2011, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|------------------------|------------------|-------------------------------------------|
| Lot No. 1 | Alexandra Nechita | Love Blends, Love Separates (Ltd. Edition on Paper) |
| Lot No. 4 | Autumn de Forest | Hurricane (Original Acrylic on Canvas signed by artist) |
| Lot No. 6 | Alexandra Nechita | Summer in San Tropez (Ltd. Edition on Paper) |
| Lot No. 8 | James Gill | George Study 2 (Original Mixed Media on Paper signed by artist) |
| Lot No. 11 | James Gill | German Collection 149 Lot No. (Original Acrylic on Canvas signed by artist) |
| Lot No. 15 | James Gill | German Collection 201 (Original Acrylic on Canvas signed by artist) |
| Lot No. 18 | James Gill | Flesh Marilyn (Original Mixed Media on Paper signed by artist) |
| Lot No. 20 | Alexandra Nechita | Reclining Woman (Ltd. Edition on Paper) |
| Lot No. 24 | Victoria Yin | Dawn of the New Civilization (Original Acrylic on Canvas signed by artist) |
| Lot No. 25 | James Gill | Jackie Study I -- (Original Mixed Media on Paper signed by artist) |
| Lot No. 26 | Lauren Voiers | The Road Less Traveled (Original Oil on Canvas signed by artist) |
| Lot No. 30 | James Gill | John Wayne (Lithograph on Paper signed by artist) |
| Lot No. 31 | James Gill | Marilyn (Lithograph on Paper signed by artist) |
| Lot No. 33 | James Gill | Paul Hamburg 1962 (Original Mixed Media on Paper signed by artist) |
| Lot No. 34 | James Gill | The Dream (Original Acrylic on Canvas signed by artist) |

- 8 -

| Lot No. 36 | James Gill | Bridget Bardo (Original Mixed Media on Paper signed by artist) |
|---|---|---|
| Lot No. 39 | Autumn de Forest | Delivery (Original Acrylic on Canvas signed by artist) |
| Lot No. 41 | Victoria Yin | Line. Form. Mystery (Original Acrylic on Canvas signed by artist) |
| Lot No. 42 | James Gill | 10221156 (Original Acrylic on Canvas signed by artist) |
| Lot No. 45 | James Gill | John Study 4 (Original Mixed Media on Paper signed by artist) |
| Lot No. 46 | Lauren Voiers | Golden Glow (Original Oil on Canvas signed by artist) |
| Lot No. 49 | Lauren Voiers | Mermaid (Original Oil on Canvas signed by artist) |
| Lot No. 51 | Victoria Yin | Dream in Dawn II – Lady with Two White Bodies (Original Acrylic on Canvas signed by artist) |
| Lot No. 53 | James Gill | Ringo 1968 (Original Mixed Media on Paper signed by artist) |
| Lot No. 56 | Alexander Calder | Skybird (Plate signed lithograph on paper) |
| Lot No. 57 | Joan Miro | Untitled 1 (Plate signed lithograph on paper) |
| Lot No. 58 | Joan Miro | Untitled 5 (Plate signed lithograph on arches and rives paper) |
| Lot No. 59 | Alexander Calder | Cresent (Plate signed lithograph on paper) |
| Lot No. 60 | Joan Miro | Untitled 4 (Plate signed lithograph on arches and rives paper) |
| Lot No. 61 | Joan Miro | Untitled 2 (Plate signed lithograph on arches and rives paper) |
| Lot No. 62 | Joan Miro | Red Black Oval (Plate signed lithograph on paper) |

49.     At an auction on July 14, 2011, conducted via telephone while the Plaintiff was in

New York, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|---|---|---|
| Lot No. 51 | Victoria Yin | Making of Gravity (Acrylic on Canvas by Yin) |
| Lot No. 50 | Lauren Voiers | Concerto Della Pace (Oil on Canvas by Voiers) |
| Lot No. 49 | Lauren Voiers | Friends (Oil on Canvas by Voiers) |
| Lot No. 43 | Victoria Yin | Dawn (After Michelangelo's Dawn) (Acrylic on Canvas by Yin) |
| Lot No. 42 | James Gill | Lithograph on Paper by Gill |
| Lot No. 41 | Victoria Yin | Fall of Human Civilization (After Michelangelo's Creation of Adam) (Acrylic on Canvas by Yin) |
| Lot No. 33 | James Gill | Lithograph on Paper |
| Lot No. 30 | James Gill | Graphite on Paper (Girl with a Blanket) |
| Lot No. 18 | James Gill | Graphite on Paper (Seated Woman with Robe) |
| Lot No. 16 | Alexandra Nechita | Man of Many Moods (Signed and numbered by A.N.) |
| Lot No. 12 | Alexandra Nechita | Beginning of Us (Signed and numbered by A.N.) |
| Lot No. 10 | Alexandra Nechita | Blind Date (Signed and numbered by A.N.) |

50.     At an auction on July 27, 2011, conducted via telephone while the Plaintiff was in

New York, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|---|---|---|
| Lot No. 1 | James Gill | Unlocking the mind of an artist (Original Acrylic on Canvas signed by artist) |

- 10 -

| Lot No. 2 | James Gill | Sarah Vaughn 2 (Original Acrylic on Canvas signed by artist) |
| Lot No. 3 | Lauren Voiers | White Feather Sonata (Oil on Canvas signed by artist) |
| Lot No. 4 | Autumn de Forest | Winter (Original Oil on Canvas signed by artist) |
| Lot No. 11 | James Gill | German Collection 197 (Original Acrylic on Canvas signed by artist) |
| Lot No. 15 | James Gill | Metamage Jackie Study II (Original Acrylic on Canvas signed the artist) |
| Lot No. 20 | James Gill | Her Majesty (Original Acrylic on Canvas signed artist) |
| Lot No. 22 | James Gill | Metamage Liz Study IV (Original Acrylic on Canvas signed artist) |
| Lot No. 23 | James Gill | Blonde Grace (Original mixed media on paper signed by artist) |
| Lot No. 25 | James Gill | Illusions Study 1 (Original Acrylic on Canvas signed by artist) |
| Lot No. 29 | James Gill | Chanel, Study I (Original Acrylic on Canvas signed by artist) |
| Lot No. 30 | James Gill | Grace (Original Acrylic on Canvas signed by artist) |
| Lot No. 34 | James Gill | Nude Study I (Original Acrylic on Canvas signed by artist) |
| Lot No. 36 | James Gill | Metamage Portrait with Lips (Original Acrylic on Canvas signed by artist) |
| Lot No. 39 | James Gill | Room (Original Acrylic on Canvas signed by artist) |

| Lot No. 48 | Lauren Voiers | Caribbean Sunset (Original Oil on Canvas signed by artist) |

51.    At a pre-auction sale on April 18, 2011, conducted via telephone while the

Plaintiff was in New York, the Plaintiff purchased the following artwork:

| Purported Artist | Name of Piece and Defendants' Description |
|---|---|
| James Gill - Landau Exhibit | Girl on Chair 1964 – Grease Pencil (9.5" x 14") |
| James Gill - Landau Exhibit | Girl on Sofa 1964 – Grease Pencil (12" x 18") |
| James Gill - Landau Exhibit | Reading Girl in Chair 1964 – Grease Pencil (15" x 14") |
| James Gill - Landau Exhibit | Portrait of Paul Wonner 1963 – Grease Pencil (14" x 15") |

52.    At an auction on August 11, 2011, conducted via telephone while the Plaintiff

was in New York, the Plaintiff purchased the following artwork:

| Defendants' Lot Number | Purported Artist | Name of Piece and Defendants' Description |
|---|---|---|
| Lot No. 2 | James Gill | Gill-John LV |
| Lot No. 3 | James Gill | Gill-GC164 |
| Lot No. 5 | James Gill | Gill-Marilyn |
| Lot No. 6 | James Gill | Abstract |
| Lot No. 8 | James Gill | Ringo |
| Lot No. 9 | James Gill | James Paul McCartney |
| Lot No. 11 | James Gill | GC 172 |
| Lot No. 14 | James Gill | Thoughts Unknown |
| Lot No. 15 | James Gill | Metamage Jackie Study III |
| Lot No. 16 | James Gill | Certainpart Objectified Passion |
| Lot No. 19 | James Gill | John Winston Lennon |
| Lot No. 20 | James Gill | She has a Fur Pillow |

- 12 -

| Lot No. 22 | James Gill | Metamage Liz Study |
|---|---|---|
| Lot No. 23 | James Gill | Sarah Vaughan Study 3 |
| Lot No. 25 | James Gill | Illusion Study 3 |
| Lot No. 26 | James Gill | Beatles Suite Collection |
| Lot No. 28 | James Gill | Portrait Study Karen |
| Lot No. 31 | James Gill | Richard Starkey |
| Lot No. 33 | James Gill | Iraqi President |
| Lot No. 34 | James Gill | Portrait Study Oriental |
| Lot No. 36 | James Gill | Cubist Desire |
| Lot No. 38 | James Gill | Brown Eye Girl Study 1 |
| Lot No. 42 | James Gill | See the Painting, Seal the |
| Lot No. 45 | James Gill | Neon Metamage |
| Lot No. 46 | James Gill | Pop Eye Con Suite |
| Lot No. 47 | James Gill | GC 202 |
| Lot No. 48 | James Gill | Portrait by Sandra |
| Lot No. 49 | James Gill | Chains of Gold |
| Lot No. 50 | James Gill | GC 204 |

53.     The Defendants also tacked on an additional "buyers premium" charge to the purchase price, calculated as 10% of the price of the artwork.

54.     The Defendants are still in possession of the majority of this artwork, despite the Plaintiff's request to provide the artwork to him.

### The Prodigies

55.     On or about October 20, 2010, the Defendants approached the Plaintiff with an art-related investment opportunity and project called "The Prodigies."

56.     The Prodigies was described to the Plaintiff as follows: "A coffee table book and feature length documentary about the lives and art of four extraordinary art prodigies culminating in a January 2011 museum exhibit of their work in Southern California. The Prodigies are: Alexandra Nechita, Victoria Yin, Lauren Voiers and Autumn de Forest."

- 13 -

57.     The Defendants prepared a "Co-Producer Agreement" promising the following, in
exchange for $35,000 from the Plaintiff: (1) $1.00 royalty from each and every book sold,
whether from the first edition or any subsequent editions released; (2) $1.00 royalty from each
and every DVD sold, whether from the first release or any subsequent releases; (3) a one percent
(1%) royalty from all film revenues after $250,000 costs and expenses has been recovered; (4)
$20,000 credit towards the purchase of any available original painting by Autumn de Forest,
Alexandra Nechita, Lauren Voiers and Victoria Tun, offered by Defendants; (5) 25 books
personalized and autographed by the four prodigies; (6) full publishing credit as Co-Producer
with special acknowledgement in the film and in the book; and (7) the opportunity to attend all
film premiers and promotional events as a VIP, with hotel and airfare costs paid by the
Defendants. See True Copy of the Co-Producer Agreement, annexed hereto as Exhibit A.

58.     The Defendants failed to make the book, or the movie, or hold the museum
exhibits in flagrant breach of the Co-Producer Agreement.

59.     The Defendants completely failed to honor their obligations under the Co-
Producer Agreement.

60.     The Defendants knew that they had no intention of completing the project at the
time they accepted money from the Plaintiff, and in fact did not complete the project.

61.     The Defendants have failed to account for any of the profits, or how they used the
Plaintiff's money.

62.     The Defendants have failed to return any money to the Plaintiff.

## Discovery of the Defendants' Fraudulent Conduct

63.     Soon after the August 11, 2011 auction, the Defendant learned for the first time that the pieces he purchased from the Defendants were inauthentic, of low quality, damaged, and virtually worthless, in contradiction to all verbal and written promises made by the Defendants.

64.     For example, the Plaintiff was promised, and insisted upon purchasing James Gill artwork from the 1960s, but experts have determined that the artwork was only recently painted.

65.     Other pieces that the Defendants claimed to be originals were merely posters with some embellishment on them.

66.     Additionally, some works were damaged and the frames from the Defendants were not the promised "museum quality".

67.     The Plaintiff learned that the Certificates of Authenticity and Appraisals provided by the Defendants were purposely incomplete, false, fraudulent and misleading, because they did not set forth the actual description, title, size, medium and/or provenance of the artwork, and grossly misrepresented the value of the artwork.

68.     The pieces that the Defendants claimed would be featured in museums, which would increase their rarity, fame, and value, were never included in the promised exhibits.

69.     The Defendants refused to provide the Plaintiff with a refund.

70.     Further, the Defendant is wrongfully withholding artwork already paid for by the Plaintiff.

71.     The inescapable conclusion is that Valenty is continuing his long-running career of criminal fraud through ImaginArt, and that the Plaintiff has become another of the Defendants' unfortunate victims.

- 15 -

72.     Further, the Defendants failed to meet their promises under the Co-Producer
Agreement for The Prodigies.

73.     Based upon the Defendants' misconduct explained above, Tucker sets forth the
following causes of action.

## COUNT I
### (Fraud)

74.     The Plaintiff repeats and realleges the allegations in the preceding paragraphs of
the Complaint as if fully set forth at length herein.

75.     The Defendants have engaged in a pattern of fraud and misconduct by
intentionally misrepresenting the authenticity and value of the artwork being offered to and sold
to the Plaintiff.

76.     At the time the Defendants sold the artwork to the Plaintiff, the Defendants all
knew or should have known the artwork was inauthentic and worth far less than the purchase
prices and appraisal price given to the Plaintiff.

77.     The Defendants knew that their statements regarding and involving the
authenticity and value of the artwork were false at the time the Defendants made them.

78.     The Defendants knew the Plaintiff was relying upon these fraudulent statements.

79.     The Defendants made these fraudulent statements intending for the Plaintiff to
rely upon them.

80.     The Plaintiff's reliance was reasonable under the circumstances, but the
Defendants violated the Plaintiff's trust.

81.     The Defendants also fraudulently induced the Plaintiff to invest money in "The
Prodigies".

82.     The Defendants never intended to meet their obligations under the Co-Producer

Agreement, and fraudulently induced the Plaintiff to enter into that Agreement.

83.     The Defendants worked in concert and conspired to defraud the Plaintiff, and, as a

consequence, he has suffered substantial losses through the purchase of fraudulent,

misrepresented, damaged, and undelivered artwork, and the signing of the unfulfilled Co-

Producer Agreement for the benefit of Defendants.

84.     The Plaintiff has sustained severe and continuing financial losses and damage as a

result of the Defendants' fraudulent conduct.

85.     As a direct and proximate result of the Defendants' fraud, the Plaintiff has

incurred damages, in an amount to be determined at trial but in no event less than $75,000, plus

interest, cost, attorney's fees and punitive damages.

### COUNT II
### (Breach of Contract)

86.     The Plaintiff repeats and realleges the allegations in the preceding paragraphs of

the Complaint as if fully set forth at length herein.

87.     The verbal and written statements made by the Defendants as to the authenticity

and value and quality of the artwork, as well as promises that certain artwork would be exhibited

in museums and other relevant statements related to the artwork for sale, constitute parts of

binding and enforceable agreements.

88.     The Plaintiff fully performed his obligations under the written and verbal

agreements.

89.     Defendants breached the written and verbal agreements by, among other things,

selling inauthentic and multiples of artwork which were represented as one-of-a-kind paintings,

grossly inflating the value of the artwork, failing to deliver artwork, deceiving the Plaintiff as to

- 17 -

the true market value and resale potential of the artwork in order to induce the sales of the
artwork, and more generally failing to safeguard the interests of Plaintiff.

90.     Further, the Co-Producer Agreement for "The Prodigies" constituted a binding
agreement.

91.     The Defendants breached the Agreement by failing to meet their contractual
obligations.

92.     The Defendants have no justification for their breaches of contract.

93.     As a direct and proximate result of the Defendants' breaches, the Plaintiff has
incurred damages, in an amount to be determined at trial but in no event less than $75,000, plus
interest, cost, attorney's fees and punitive damages.

## COUNT III
### (Conversion)

94.     The Plaintiff repeats and realleges the allegations in the preceding paragraphs of
the Complaint as if fully set forth at length herein.

95.     The Defendants wrongfully induced Plaintiff to pay his money for inauthentic,
damaged and grossly misrepresented artwork, and the fraudulent Co-Producer Agreement and
wrongfully received Tucker's money.

96.     Further, the Defendants did not deliver a large portion of the artwork for which
the Plaintiff paid, and the Defendants wrongfully retained the money for that artwork and the
artwork itself.

97.     The Defendants have a duty to return those wrongfully received and retained
funds and property, but have failed to do so.

98.     The Defendants' actions constitute common law and statutory conversion.

- 18 -

99.     As a direct and proximate result of the Defendants' common law and statutory conversion, the Plaintiff has incurred damages, in an amount to be determined at trial but in no event less than $75,000, treble damages, plus interest, cost, attorney's fees and punitive damages.

**COUNT IV**
**(Rescission)**

100.    The Plaintiff repeats and realleges the allegations in the preceding paragraphs of the Complaint as if fully set forth at length herein.

101.    Soon after the August 11, 2011 auction, before paying for that artwork, the Plaintiff learned that the artwork the Defendants sold to him was inauthentic, and grossly misrepresented.

102.    The Plaintiff seeks recession of that purchase based upon fraud committed by Defendant.

**COUNT V**
**(Consumer Fraud)**

103.    The Plaintiff repeats and realleges the allegations in the preceding paragraphs of the Complaint as if fully set forth at length herein.

104.    The Defendants have held themselves out as dealers, sellers, publishers, distributors and purported experts of artwork and art related investments, which they market nationally on television, the internet, magazines, and other publications.

105.    The artwork and investments sold by the Defendants are either not delivered at all, not one of a kind paintings or works of art, inauthentic, are copies of copies of a photomechanical reproduction, and/or are grossly misrepresented as to value, investment potential, and quality.

106.     The Defendants enticed customers, including the Plaintiff, through misleading advertisements, schemes, promises of astronomical increases in value of art and art-related investments, misrepresentation of the authenticity and value of artwork, and other disingenuous sales tactics.

107.     Valenty and ImaginArt specialize in selling artwork by so-called "child prodigies" whose artwork is worth virtually nothing as these "child prodigies" are unknown, new or emerging artists, with no verifiable sales record nor are there independent third-party records of bona fide sales, although the Defendants mislead purchasers such as the Plaintiff by claiming that these child-artists are the next breakout artists, such as Picasso and Van Gogh. The ImaginArt website asserts that "Ben Valenty is world reknown (sic) for discovering the next generation of superstars."

108.     The Defendants' material deception and misrepresentation constituted consumer fraud and was a violation New York's Consumer Fraud Act, N.Y. Gen. Bus. Law §349, et seq.

109.     As a result of the Defendants' violations of the Consumer Fraud Act, the Plaintiff has incurred damages, in an amount to be determined at trial but in no event less than $75,000, treble damages, plus interest, cost, attorney's fees and punitive damages.

WHEREFORE, the Plaintiff, Dr. William Tucker, prays for a judgment in his favor, in an amount no less than $75,000, plus interest, costs, attorney's fees, treble damages, and punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff William Tucker, by his attorneys, Levine DeSantis, P.C. and Seyburn, Kahn,

Ginn, Bess and Serlin, P.C., hereby requests a trial by jury in this matter.

Respectfully submitted,

ANTHONY N. GAETA (AG-9922)

LEVINE DESANTIS, P.C.
Attorneys at Law
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1648
agaeta@levinedesantis.com

November 18, 2011

- 21 -

# EXHIBIT "A"

WILLIAM M TUCKER MD

From: Mark Lewis [ml@lapart.com]
Sent: Wednesday, October 20, 2010 5:16 PM
To: 'WILLIAM M TUCKER MD'
Subject: THE PRODIGIES BOOK-DOC CO-PROD AGREEMENT.doc



# The Prodigies

## Museum Exhibit – Coffee Table Book – Feature Length Documentary

## CO-PRODUCER AGREEMENT

PROJECT:    A coffee table book and feature length documentary about the lives and art of four extraordinary art prodigies culminating in a January, 2011 museum exhibit of their work in Southern California . The Prodigies are: Alexandra Nechita, Victoria Yin, Lauren Volers and Autumn de Forest.

DOCUMENTARY SYNOPSIS:    The last two decades has seen the emergence of several young prodigies in sports, music and the visual arts. Our film and book will follow the lives and careers of four extraordinary visual arts prodigies. The camera will capture these special artists' trials, tribulations, successes and failures while sharing their rare and unique gifts with the world.

BOOK SYNOPSIS:    The book will consist of 200-300 works in paint, drawings, sculpture and glass by Alexandra Nechita, Autumn de Forest, Victoria Yin and Lauren Volers. The book will include candid photographs of the artists at work in their studios, working on Global Peace Initiative monuments and additional personal creative moments.

11/17/2010

WORKING BOOK & FILM TITLE:   *"The Prodigies"*

| | |
|---|---|
| EXECUTIVE PRODUCER: | ImaginArt, LLC. |
| CO-PUBLISHER: | _____ |
| BOOK JACKET PRICE: | $45.00 |
| BOOK WHOLESALE PRICE: | $22.00 |
| DOCUMENTARY DVD PRICE – RETAIL: | $15.00 |
| DOCUMENTARY DVD PRICE - WHOLESALE: | $15.00 |

DISTRIBUTION
NETWORK:
National book resellers, theaters, classrooms, museum gift shops, video rental outlets, satellite media tours, art galleries, media interviews, art exhibits, museum exhibits, artist's website and publisher's website.

CO-PUBLISHER
CONTRIBUTION:
$35,000 per unit.

DELIVERABLES TO
CO-PRODUCER:

1.) A $1.00 royalty from each and every book sold, whether from the first edition or any subsequent editions released;

2.) A $1.00 royalty from each and every DVD sold; whether from the first release or any subsequent releases;

3.) A 0.01 percent (1%) royalty from all film revenues after $250,000 costs and expenses has been recovered.

2.) Co-Producer to receive a $20,000 credit towards the purchase of any available original painting by Autumn de Forest, Alexandra Nechita, Lauren Voiers and Victoria Yin, offered by ImaginArt, LLC.

3.) Co-Publisher to receive twenty-five (25) books personalized and autographed by the four prodigies.

4.) Co-Publisher to receive full publishing credit as Co-Producer with special acknowledgement in the film and in the book;

5.) Co-Producer to attend all film premiers and promotional events as VIP, hotel and airfare provided by ImaginArt;

ROYALTY SCHEDULE:
A royalty accounting will be done at the conclusion of each calendar quarter (March, June, September and December). Royalty payments will be made on or about each April 15th, July 15th, October 15th and January 15th;

ROYALTY
VERIFICATION:
Co-publisher or co-publisher's authorized representative shall have the right, upon reasonable advance notice, to examine the books and records

11/17/2010

of PUBLISHER insofar as they relate to the book herein. Co-publisher shall be responsible for the cost of any such examination unless any such examination reveals a discrepancy in Co-publisher's favor greater than five percent (5%), in which case the cost of the examination shall become the responsibility of Publisher.

BOOK MECHANICALS:

     a.  Trimmed size @ 9 7/8" x 9 7/8"
     b.  135 pp + ends
     c.  Binding sewn, cased in square backed
     d.  Gloss 4-color dust jacket w/ photos

FILM MECHANICALS:       Shoot in High Def, NTSB & PAL, full length run time at: +45:00:00 -- wide screen format with letterbox capabilities

PRINT SCHEDULE:       10 weeks from receipt of camera-ready layout

PRODUCTION SCHEDULE:       12 weeks from story board approval

## REFERENCE AND SOURCE MATERIAL

Outside the Lines -- Alexandra Nechita
http://www.amazon.com/Outside-Lines-Alexandra-Nechita/dp/1563524546

Hands & Dove -- Alexandra Nechita
http://www.amazon.com/Hands-Dove-Alexandra-Nechita/dp/0972456880/ref=pd_sim_b_1

Strokes of Brilliance -- Part One
http://www.youtube.com/watch?v=jl-1QCAe9FU

"The Gift" -- Alexandra Nechita
http://www.amazon.com/Alexandra-Nechita-VHS/dp/B0000714FJ

"Peace & Harmony" -- Lauren Voiers -- Liverpool -- October 9, 2010
http://www.youtube.com/watch?v=BKx-2ZFSZRE

"Peace & Harmony" -- Lauren Voiers -- Liverpool -- October 9, 2010
http://www.youtube.com/watch?v=EypxR1M44mM

"Peace & Harmony" -- Lauren Voiers -- Liverpool -- October 9, 2010
http://www.youtube.com/watch?v=xNp_zW2lB5c

ITV -- London -- Autumn de Forest
http://www.vimeo.com/15988911

TODAY SHOW -- Matt Lauer Interview -- Autumn de Forest
http://today.msnbc.msn.com/id/39540273/ns/today-entertainment/

11/17/2010

Victoria Yin Article
http://www.andovertownsman.com/arts/x546084003/Local-art-prodigy-has-worldwide-reputation

Art Business News – Victoria Yin
http://artexponewyork.com/2009/11/artist-victoria-yin-child-prodigy/

### ImaginArt Artist Books
*Outside the Lines* – Alexandra Nechita   International best seller – 40,000+ units sold
*Guided by Angels* – Amanda Dunbar – Featured on Oprah Winfrey Show – May, 2000
*A Life In Full Bloom* – Featured on Oprah Winfrey Show – March, 2002
*Hands & Dove* – Alexandra Nechita – Foreword by Larry King

### ImaginArt Documentary Films
*The Fine Art of Print Making* – Mourlot Ateliers – released 1996
*The Alexandra Nechita Story* – released 2002
*Full Circle – The James Gill Story* – Winner, Best Short Documentary AAO Film Festival
*Strokes of Brilliance* – released 2009

I agree to be a co-publisher of *"The Prodigies"* at the terms set forth in this Co-Publishing Agreement.

_____
AGREED TO & ACCEPTED
(co-publisher)

_____
AGREED TO & ACCEPTED:
ImaginArt, LLC. (publisher)

_____
Dated:

_____
Dated:

# ARTIST BIOGRAPHY

### Lauren Voiers

Lauren was born January 7th, 1991 in Westake, Ohio. By the time she was thirteen, it became obvious that she possessed an incredible gift. Plumbed from the depths of raw emotions her canvases unfold special memories or simple moments from her life. Like so many giants of the art world, Lauren struggles with bipolar disorder. Famous names from Hans Christian Andersen to Virginia Woolf, Napoleon to Marilyn Monroe are but a few of the stars, icons and history makers who may have battled this psychological condition. Picasso, Pollock, Basquiat, Warhol and Van Gogh are just a few of the visual artists who created works of timeless beauty and importance while battling the disorder. Experts now believe that the disorder can, and often does, stimulate a high degree of creativity. Lauren Voiers certainly seems to bear that theory out. At a very early age, Lauren showed prodigal tendencies. She could not get enough of the vivid colors and would draw on everything she could get her hands on including the walls of her home! With the onset of her bipolar condition, Lauren became a young teen confused by the emotional roller-coaster that she felt unable to control. She discovered how to turn her feelings, energy and occasional depression into works of stunning mastery. Along with being bipolar, Lauren had also been giving a gift! While most prodigies have only shown an ability to work in one style, Lauren quickly mastered several styles ranging in variety from cubism to American traditionalism. As if being a multi-school prodigy wasn't enough, young Lauren may be the first artist to succeed at melding cubism and surrealism, something other great masters of the 20th century found too exasperating to actively pursue. In young Lauren Voiers, it is very possible that we are witnessing the birth of a bold new artistic movement... one that you can bet an entire breed of up-and-coming artists will soon join.

11/17/2010

On October 9, 2010 Lauren Volers, just 19 years old, cemented her place in history when her massive 18-foot monument entitled Peace & Harmony" was unveiled in Liverpool, England. The monument was unveiled on John Lennon's 70th birthday and pays tribute to the music legend and inspirational peace advocate. Liverpool officials estimate that Lauren's monument will attract an average of 15,000 visitors each day.

## Autumn de Forest

Autumn de Forest just turned 8 years old. Not only is she a visual prodigy, she is the rarest of prodigies... a master of conceptual contemporary art. Already insiders are comparing Autumn to such art world giants as Andy Warhol, Robert Rauchenburg and Yves Klein. It is, of course, so much more difficult to create conceptual art. It requires multi-dimensional thinking and the ability to think in terms of several medias. Autumn frequently uses plaster, cement, wire and plants in her paintings. Her use of spacial relationships is already developed to the level of master and her ability to modulate shapes and forms would make Dali himself take notice. Her color palette may very well be richer and more explosive than any in recent history. This artist, a mere child of 8, brings figures and stories to life with such whimsical abandon, born of such pure imagination, that it leaves the viewer near-speechless. Art collectors have already begun snapping up Autumn's work. At her last exhibit sales surpassed $100,000, and another every available piece sold out within hours of the exhibit's opening. Collector's include actor Martin Sheen of the West Wing.

As of this writing, Autumn has become a worldwide media sensation. She's been featured on The Discovery Channel. In just a single week in October, 2010, Autumn appeared on NBC's Today Show, Inside Edition, MSNBC, FOX TV, ABC, DayBreak (UK).

## Alexandra Nechita

Alexandra's journey to where she is today takes on a storybook aura. Alexandra's father Niki, fled communist Romania for the United States leaving his wife, Viorica, who was 6 months pregnant with Alexandra, behind. After arriving in the States Niki began his struggle to make a new home for his family in a new country. After almost 2 years Niki was reunited with Viorica and met his baby girl, now 1 1/2, for the first time in Los Angeles, California. Today Alexandra Nechita is one of the most highly recognized artists alive. Even at age 2, Alexandra was absorbed with her coloring books. Alexandra began to draw and color her own figures on scrap computer paper her mother would bring home from work. As a preschooler, Alexandra began using watercolors and another water-based paint called gouache. By the age of 6, Alexandra was introduced to oil paints and acrylics and she could not let them go. Soon she began asking for larger and larger canvases. Alexandra's first art exhibit came in 1994 at a community library when she was only 8 years old. In the spring of 1995, Alexandra's career explodedinternationaly due to her being discovered by Ben Valenty. The national and international press couldn't get enough of this artist. Alexandra has appeared on countless programs around the world including, NBC's Today, The Oprah Winfrey Show, The Rosie O'Donnell Show and the NBC nightly news with Tom Brokaw. Her list of acomplishments speaks for itself. Her commissions include the 39th Annual Grammy Awards, Polaroid's 50th Anniversary and the Andre Agassi Foundation.

Much has been written and said to describe this phenomenal artist, but Academy Award winner Whoopi Goldberg may have explained Alexandra the best in just one sentence;
"The thumbprint of the Great One is on her".

## Victoria Yin

Once in a great while a unique and special talent emerges in the art world. The result can and does often manifest itself in the form of renewed interest in a forgotten or neglected area of original artistic creation. Eleven year old Victoria Yin is such an artist. The rapport already building felt towards her by legions of collectors hasn't been seen to this degree since the glory days of the New York School artists. This is to a large extent due to the fact that young Victoria uses surrealism in the tradition of such masters as Salvador Dali. Shortly after her first birthday Victoria began crawling across the floor to pick up a pen and draw. By the time she turned two her geometric drawings were astonishing her pre-school teachers. By the ripe old age of three she began telling stories through her artwork. By the age of five, she had already received numerous accolades and awards for her extraordinary artwork. Yet what is most astonishing about this pure prodigy is the style she has mastered. Many great artists have spent a lifetime striving to succeed at painting surrealism, only to fail. And yet Victoria, still only a child, captures her fascination with science, mythology, religion and the future of civilization in a surrealistic motif that follows in the footsteps of great artists throughout history, from Michelangelo to Salvador Dali. Her artistic maturity is simply astonishing – she seems to paint from a desire to magically walk in each canvas.

As of this writing, Victoria is preparing for two museum exhibitions of her work. She is just 12 years old.

11/17/2010

AO 440 (Rev. 12/09) Summons in a Civil Action

**JUDGE ENGELMAYER**

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

WILLIAM TUCKER )
_____ )
*Plaintiff* )
)  **11 CIV 8447**
v. ) Civil Action No.
BENJAMIN VALENTY, IMAGINART PUBLISHING, )
IMAGINART PUBLISHING, LLC )
_____ )
*Defendant* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  BENJAMIN VALENTY
26439 RANCHO PARKWAY, SUITE 105
LAKE FOREST, CALIFORNIA 92630

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  ANTHONY N. GAETA, ESQ.
LEVINE DESANTIS, P.C.
5 PENN PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK.

*CLERK OF COURT*

Date: **NOV 2 1 2011** _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action

**JUDGE ENGELMAYER**

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

11 CIV 8447

WILLIAM TUCKER

)
)
)
*Plaintiff*

v.

)
)
) Civil Action No.
)

BENJAMIN VALENTY, IMAGINART PUBLISHING,
IMAGINART PUBLISHING, LLC

)
)

*Defendant*

)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* IMAGINART PUBLISHING
26439 RANCHO PARKWAY, SUITE 105
LAKE FOREST, CALIFORNIA 92630

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: ANTHONY N. GAETA, ESQ.
LEVINE DESANTIS, P.C.
5 PENN PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

*CLERK OF COURT*

Date: NOV 2 1 2011

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the **JUDGE ENGELMAYER**

Southern District of New York

**11 CIV 8447**

|  |  |  |
|---|---|---|
| WILLIAM TUCKER | ) | |
| _Plaintiff_ | ) ) ) | |
| v. | ) | Civil Action No. |
| BENJAMIN VALENTY, IMAGINART PUBLISHING, IMAGINART PUBLISHING, LLC | ) ) ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  IMAGINART PUBLISHING, LLC
26439 RANCHO PARKWAY, SUITE 105
LAKE FOREST, CALIFORNIA 92630

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    ANTHONY N. GAETA, ESQ.
LEVINE DESANTIS, P.C.
5 PENN PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

_CLERK OF COURT_

NOV 2 1 2011

Date: _____

_Signature of Clerk or Deputy Clerk_