IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

iGPS COMPANY LLC,

                     Plaintiff,

-against-                      13 CIV 9212

BOBBY L. MOORE,

                     Defendant.
-----------------------------------------------------------X

## NOTICE OF REMOVAL

Please take notice that pursuant to 28 U.S.C. §§ 1334 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), iGPS Company LLC ("iGPS" or the "Debtor"), as the plaintiff in the above-captioned case and as debtor in a chapter 11 case currently pending in the United States Bankruptcy Court for the District of Delaware (Case No. 13-11459), hereby removes to the United States District Court for the Southern District of New York, the matter of *iGPS v. Moore*, index number 652431/2011 (the "iGPS Litigation"), joined and pending with the matter of *Moore v. iGPS Company LLC, et al.*, index number 651907/2011 (the "Moore Litigation") before the Supreme Court of the State of New York, County of New York (collectively, the "State Court Litigation").[1] In support of removal, the Debtor states as follows:[2]

---

[1] In the matter of *Moore v. iGPS LLC, et al.*, index number 651907/2011 the Debtor is a defendant, along with certain Non-Debtor Defendants (as defined herein). The Non-Debtor Defendants in that matter are simultaneously filing a Notice of Removal to this Court. The Non-Debtor Defendants are as follows: Pegasus Capital Advisors LLP, Pegasus Partners III (AIV), L.P., Pegasus Investors III, L.P., Pegasus Investors III GP, L.L.C., Pegasus iGPS, LLC, iGPS Co-Investment LLC, iGPS Employee Participation, L.P., iGPS Executive (GP) LLC, and PP IV iGPS Holdings, LLC are hereinafter referred to as "Pegasus." Kelso & Company, KIA VIII

## PRELIMINARY STATEMENT

1.  The State Court Litigation qualifies for removal to this federal district court because these cases are "related to" the Debtor's bankruptcy case. Such "related to" jurisdiction exists where the outcome of the litigation-in-question would affect the administration of a debtor's estate or the debtor's rights or liabilities. Herein, because each of the claims in both actions implicate the potential for economic consequences upon the Debtor's estate, these cases fall within "related to" jurisdiction. Accordingly, the outcome of the State Court Litigation will have a significant impact on the administration of the Debtor's estate. Thus, the actions are entitled to removal to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE iGPS BANKRUPTCY

2.  On June 4, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See Pallet Company LLC, f/k/a In re iGPS Company LLC*, Case No. 13-11459-KG (Bankr. D. Del.) (ECF No. 1).

3.  On June 14, 2013, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). (ECF No. 101).

---

(iGPS), L.P., KIA VIII (iGPS) GP, L.P., KEP VI AIV (iGPS), LLC, and Kelso GP VIII, LLC are hereinafter referred to as "Kelso." Pegasus, Kelso, Rich Weinberg, Craig Cogut, Frank Nickell, and Phil Berney, hereinafter referred to as the "Non-Debtor Defendants."

[2] Pursuant to Bankruptcy Rule 9027, all process and pleadings in Index No. 652431/2011 are attached hereto as **Exhibit A**.

4.     On June 20, 2013, Bobby L. Moore ("Moore") filed a proof of claim (the "Proof of Claim") related to the State Court Litigation in the Bankruptcy Court.[3] (Claim No. 20). By filing the Proof of Claim, Moore consented to the jurisdiction of the Bankruptcy Court. Moore subsequently amended the Proof of Claim, and the Committee and the Debtor filed objections to the Proof of Claim that remain pending before the Bankruptcy Court. *See* ECF Nos. 518, 523.

5.     On July 29, 2013, the Bankruptcy Court entered an order approving the Debtor's sale of substantially all of its assets to iGPS Logistics, LLC (the "Buyer"). (ECF No. 416). Subsequently, the Debtor and the Buyer closed the sale on August 1, 2013.

6.     On August 27, 2013, the Debtor filed the chapter 11 plan and the disclosure statement related thereto. (ECF Nos. 467, 468). On September 25, 2013, the Debtor and the Committee jointly filed the amended chapter 11 plan (as supplemented and further amended, the "Plan") and the amended disclosure statement related thereto. *See* ECF Nos. 533, 535. *See also Second Amended Chapter 11 Plan for Pallet Company LLC Proposed by the Debtor and the Official Committee of Unsecured Creditors* (ECF No. 558); *Disclosure Statement with Respect to the Second Amended Chapter 11 Plan for Pallet Company LLC Proposed by the Debtor and the Official Committee of Unsecured Creditors* (ECF No. 560).

7.     On November 14, 2013, the Bankruptcy Court entered the order confirming the Plan (the "Confirmation Order"). (ECF No. 678). Pursuant to the terms of the Plan, the remaining assets of the Debtor were assigned to the Pallet Company LLC Liquidation Trust (the "Liquidation Trust"). Peter Kravitz of SLTNTRST LLC d/b/a Solution Trust was duly appointed as the liquidation trustee (the "Liquidation Trustee") for the Liquidation Trust.

---

[3] Moore also filed a motion for relief from the automatic stay under section 362 of the Bankruptcy Code to proceed with the State Court Litigation. (ECF No. 235). The Committee and the Debtor filed objections to this motion, which is still pending in the Bankruptcy Court. (ECF Nos. 325, 334).

3

8. The Plan became effective on November 27, 2013 (the "Effective Date"). (ECF No. 710). On the Effective Date, the Committee dissolved automatically and the authority, power and incumbency of the Debtor terminated and vested in the Liquidation Trustee pursuant to the Plan and the Confirmation Order. Plan, at Sections 8.3, 14.7; Confirmation Order, at ¶¶ 15, 34.

9. Further, the Plan and the Confirmation Order provide for the following injunctions:

> On the Effective Date . . . , all Persons who have been, are or may be holders of Claims against or Equity Interests in the Debtor **shall be permanently enjoined from** taking any of the following actions against or affecting the Debtor, its Estate, the Assets or the Liquidation Trustee, or any of their current or former respective members, directors, managers, officers, employees, agents, professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (except for actions brought to enforce any rights or obligations under the Plan, the Asset Purchase Agreement and/or the Sale Order, including but not limited to Claims held by the Liquidation Trust):
>
> > (a) **commencing, conducting or <u>continuing</u> in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, <u>all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice</u>) . . . .**

Plan, at Section 14.18 (emphasis added). *See also* Confirmation Order, at ¶ 29. Pursuant to the injunctions, Moore is permanently enjoined from continuing the State Court Litigation against the Debtor and the Non-Debtor Defendants. *Id.* Further, the Plan provides that the State Court Litigation must be withdrawn or dismissed with prejudice. *Id.*

### B. THE STATE COURT LITIGATION

10. The State Court Litigation wholly arises out of Moore's former employment at iGPS and subsequent termination of employment. Moore's role with the Debtor began at the initiation of the company when Moore, along with equity investors Pegasus and Kelso, launched iGPS on or about March 15, 2006. In fact, upon the formation of the company in 2006, iGPS

4

instituted Moore as CEO of the company pursuant to an employment agreement (the "CEO Employment Agreement"). Then, in December 2010, Moore's position transitioned to become Chairman of iGPS's Board pursuant to a new employment agreement (the "Chairman Employment Agreement," and together with the CEO Employment Agreement, the "Employment Agreements").

11.     Furthermore, on June 14, 2006, iGPS entered into a loan agreement with Moore (the "Original Loan Agreement"). Pursuant to the Original Loan Agreement, iGPS agreed to extend a loan of $960,784 to Moore in order to fund Moore's capital contributions to iGPS. In return, Moore pledged certain security interests as collateral for the loan.[4] Thereafter, on March 14, 2008, iGPS increased the amount of the loan to Moore from $960,784 to the amount of $1,960,784 ("Amended Loan Agreement" and with the "Original Loan Agreement" as "Loan Agreements"). The amount owed under the Loan Agreements became due and payable on June 1, 2013.

12.     During Moore's tenure as CEO and Chairman of iGPS, Moore repeatedly engaged in misconduct that disadvantaged the Debtor and harmed its interests. Further, these actions were not in accordance with Debtor's guidelines, policies and procedures. The Debtor came to learn that Moore had disregarded his fiduciary and contractual obligations to the company and its shareholders by managing the company for his personal benefit. In light of Moore's gross misconduct, the iGPS delivered a notice of for cause termination to Moore and his counsel by letter dated May 25, 2011.

13.     The State Court Litigation began shortly thereafter on July 12, 2011, when Moore instituted an action against the Debtor and the Non-Debtor Defendants. These Non-Debtor

---

[4] In May 2007, Moore sold his interest in collateral that he had pledged in the Loan Agreements and thus violated numerous provisions of the Loan Agreements, triggering a default and the Debtor's right to immediate repayment.

Defendants consist of individuals and investment vehicles affiliated with the Debtor's two former investors and equity holders—Pegasus and Kelso.

14.     On September 2, 2011, the Debtor brought an affirmative action against Moore for breaches of contract related to his Employment Agreements, breach of contract of the Loan Agreements, and several torts arising out of Moore's misconduct while acting as CEO and Chairman.

15.     Since the initial filing, both Moore and the Debtor have each twice amended their complaints, most recently on October 2, 2012.

16.     In Moore's second amended complaint, Moore pursues twelve causes of action against the Debtor and the Non-Debtor Defendants. The gravamen of Moore's second amended complaint is the allegation that the Debtor wrongfully terminated Moore in May 2011 and thus deprived him of his proper equity stake due upon termination. Against the Debtor, Moore asserts claims for breaches of his Employment Agreements and breach of the implied covenant of good faith and fair dealing. Against the Non-Debtor Defendants, Moore asserts additional claims[5] and allegations that relate only to Moore's employment and termination by the Debtor.

17.     Since the initiation of this case two and a half years ago, the parties have engaged in multiple rounds of motion practice and a fulsome discovery effort, with thousands of documents exchanged and multiple witnesses deposed. In fact, at the time of the Debtor's petition for bankruptcy in June 2013, the parties had completed fact discovery and were on the verge of expert depositions.

18.     On June 4, 2013, the Debtor filed for bankruptcy, thereby staying the State Court Litigation against itself. Subsequently, on June 25, 2013, the Non-Debtor Defendants moved to

---

[5] The additional claims against the Non-Debtor Defendants include: (1) tortious interference; (2) breaches of fiduciary duty; (3) fraudulent inducement; (4) conspiracy to commit fraud; and (5) breaches of the Debtor's LLC Agreement.

6

extend the stay to cover the Moore Litigation against the Non-Debtor Defendants. On August 1, 2013, the New York state court judge presiding over the case granted the Non-Debtor Defendants' motion to extend the stay, thus staying the entirety of the State Court Litigation.

### C. THE DEBTOR'S CONTRACTUAL OBLIGATIONS TO INDEMNIFY THE NON-DEBTOR DEFENDANTS FOR ANY EXPENSES AND/OR LIABILITY ARISING FROM MOORE'S CLAIMS.

19. The relationship between the Debtor and the Non-Debtor Defendants is governed by the LLC Agreements through which the Non-Debtor Defendants, either directly or as agents, invested in the Debtor. The LLC Agreement and its six subsequent amendments include provisions that require the Debtor to indemnify, subject to certain limitations, each of the Non-Debtor Defendants for any expenses (including legal costs), obligations, and/or liability arising out of the performance of their duties on behalf of iGPS.[6]

## JURISDICTION AND VENUE

20. Pursuant to 28 U.S.C. § 1452(a), "any claim or cause of action in a civil action" may be removed "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

21. This Court has jurisdiction of the removed State Court Litigation under 28 U.S.C. § 1334(b), which provides that district courts shall have original subject matter jurisdiction if the claim for relief or cause of action is a civil proceeding either (1) "arising under" title 11 (the Bankruptcy Code), or (2) "arising in" or "related to" a case under title 11. Moreover, the Supreme Court clarified that under § 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all

---

[6] The Liquidation Trustee expressly reserves the right to object to any indemnification claims filed by the Non-Debtor Defendants in the bankruptcy case.

matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

22. A claim is "related to" a bankruptcy case if the resolution of the claim could have a "conceivable effect" on the administration of the bankrupt estate. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *5 (S.D.N.Y. 2004).

23. Courts conclude that an action qualifies under "related to" jurisdiction "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and the administration of the bankrupt estate." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *4 (S.D.N.Y. 2004). Thus, where "the *outcome* of the case will effect [sic] the debtor's estate," such will be considered "related to" jurisdiction, sufficient to warrant removal. *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *5 (S.D.N.Y. 2004).

24. Herein, it is plain that every single claim in the State Litigation relates to the Debtor's pending bankruptcy because each claim could potentially have an immediate economic impact on the Debtor's estate.

25. Specifically, each of the claims in the Moore Litigation could result in a judgment for monetary liability against the Debtor. Count One (breach of the Employment Agreements for failure to pay proper compensation), Count Eight (breach of the implied covenant of good faith and fair dealing), and Count Nine (breach of the Employment Agreements for termination of Moore's vested units) all implicate the Debtor's potential for liability because in each one of these claims Moore seeks compensatory damages against the Debtor. Any determination of damages owed by the Debtor will have an immediate effect on the Debtor's estate and thus falls

within "related to" jurisdiction. Courts find that where a party seeks damages against a debtor, such a claim clearly involves the debtor's estate and thus constitutes related to jurisdiction. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, *4-10 (S.D.N.Y. 2004) (denying remand and finding that claims for damages against debtor defendant were "related to" the bankruptcy case and therefore conferred jurisdiction on the District Court).

26.     Furthermore, in Moore's claims against the Non-Debtor Defendants, Moore seeks compensatory and punitive damages. The Non-Debtor Defendants may have a claim under the LLC Agreements that the Debtor is contractually bound to indemnify the Non-Debtor Defendants for any liability arising out of Moore's claims. Regardless of the fact that the Liquidation Trustee may dispute these potential assertions, Moore's claims in Counts Two through Seven and Counts Ten through Twelve against the Non-Debtor Defendants could create potential indemnity liability from the Debtor's estate to the Non-Debtor Defendants. Thus, these claims against the Non-Debtor Defendants are also related to the Debtor's pending bankruptcy. In instances where a non-debtor defendant has been indemnified by the debtor, courts find that these actions should proceed before bankruptcy court where the debtor's case is pending because of the potential effect on the debtor's liabilities. *See In re River Ctr. Holdings, LLC*, 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003) (finding "even if [an asserted indemnification] obligation is not contractual and absolute, 'related to' jurisdiction exists if the disputed or conditional indemnity claim has a 'reasonable legal basis.'") (citing *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 515 (Bankr. S.D.N.Y. 1999)); *Bond St. Assocs. v. Ames Dep't. Stores, Inc.*, 174 B.R. 28, 33 (S.D.N.Y. 1994) (court found reasonable basis for jurisdiction absent an indemnification agreement where the third-party defendant would "normally have a claim" for indemnification against the debtor).

27.     In any event, under the applicable federal statute, *any* party involved in a cause of action that is part of a bankruptcy estate may remove the *entire* cause of action to the bankruptcy court provided that they meet the applicable jurisdictional requirements. 28 U.S.C. § 1452; *see In re New 118th LLC*, 396 B.R. 885, 889 (Bankr. S.D.N.Y. 2008) ("Section 1452(a) of title 28 authorizes any party to a state court civil action to remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of 28 U.S.C. § 1334."); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003) (rejecting arguments that removal was improper because of lack of consent of third parties and noting that ". . . 28 U.S.C. § 1452(a), does not require that all defendants join in removal; it rather provides that '[a] party,' (citation omitted), may remove") (citing *In re Talon Holding, Inc.*, 221 B.R. 214, 218 (N.D. Ill. 1998)); *In re Northwood Flavors, Inc.*, 202 B.R. 63, 67 (Bankr. W.D. Pa. 1996) (noting that Section 1452 "permits a party to remove *all* of the claims or causes of action, thereby depriving the other forum of any jurisdiction over them unless and until they are remanded.") (citing *In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D. Cal. 1987)).

28.     Furthermore, each of the causes of action in the iGPS Litigation against Moore—including a claim for over $2 million in back-due loan obligations—involves the Debtor's rights and potential for monetary relief. Successful litigation of the Debtor's affirmative case would result in a significant boost to the Debtor's estate and assets thereunder. Thus, the Debtor's action against Moore also appropriately constitutes "related to" jurisdiction. It is axiomatic, that a debtor's affirmative claim for damages that could result in an increase of funds for the debtor's estate falls within a bankruptcy court's jurisdiction. *See Liddle & Robinson, L.L.P. v. Daley (In re Daley)*, 224 B.R. 307, 313 (Bankr. S.D.N.Y. 1998) (noting that "causes of action owned by the

debtor prior to its bankruptcy and which become property of the debtor's estate as well as suits between third parties which have an effect on the bankruptcy estate are bases for related to jurisdiction") (citing *Celotex v. Edwards*, 514 U.S. 300, 308 at n. 5 (1995)).

29. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1334(b) and 1452(a) over each of the claims in the State Court Litigation. Furthermore, removal to this Court, and venue in this Court, is proper under § 1452(a) because the State Court Litigation is pending in a state court in this district.

### NON-CORE PROCEEDING AND CONSENT TO FINAL ORDERS

30. Pursuant to Bankruptcy Rule 9027(a)(1), upon removal of the State Court Litigation, the proceedings will be core. To the extent the State Court Litigation is deemed to be non-core, the Debtor consents to entry of final orders or judgment by the bankruptcy judge.

### REFERRAL TO BANKRUPTCY COURT

31. Under this Court's standing administrative order on the referral of matters to bankruptcy judges, this action should be automatically referred to the bankruptcy court for this district.[7] *See Amended Standing Order of Reference Re: Title 11*, No. 12 Misc. 0032 (S.D.N.Y. Jan. 31, 2012)

### CONCLUSION

Based upon the foregoing, the Debtor and the Non-Debtor Defendants request that this action proceed in this Court as an action properly removed to it, and that this action be referred to the Bankruptcy Court for the Southern District of New York so that the Debtor and Non-Debtor Defendants may thereafter move to transfer venue to the Bankruptcy Court for the District of Delaware.

---

[7] Upon referral to the Bankruptcy Court of the Southern District of New York, the Debtor and the Non-Debtor Defendants intend to move to transfer venue to Bankruptcy Court for the District of Delaware where the Debtor's bankruptcy proceeding is currently pending.

Dated: December 31, 2013
      New York, New York

                                                      Respectfully submitted,

*[SIGNATURE CONTINUED ON FOLLOWING PAGE]*

McKENNA LONG & ALDRIDGE LLP

By: _____
Christopher F. Graham
230 Park Avenue
New York, NY 10169
Telephone: (212) 905-8300
(Facsimile: (212) 922-1819 (facsimile)

*Counsel for iGPS Company LLC,*
*n/k/a Pallet Company LLC, by and through*
*Peter Kravitz of SLTNTRST LLC d/b/a*
*Solution Trust, the Liquidation Trustee for*
*the Pallet Company LLC Liquidation Trust*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

iGPS COMPANY LLC

                Plaintiff,

- against -

BOBBY L. MOORE

                Defendant.

No. _____

**SUMMONS**

TO:   Bobby L. Moore
       9350 Bentley Park Circle
       Orlando, Florida 32819

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on Plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial because the contracts at issue designate New York County as a proper forum for actions with respect to the subject matters of those agreements.

DATED:   New York, New York
          September 2, 2011

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____

Stephen M. Baldini
Samidh Guha

One Bryant Park
New York, New York 10036
Telephone: (212) 872-1062
Fax: (212) 872-1002
sbaldini@akingump.com
sguha@akingump.com

*Attorneys for Plaintiff iGPS Company LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| iGPS COMPANY LLC<br><br>       Plaintiff,<br><br>    - against -<br><br>BOBBY L. MOORE<br><br>       Defendant. | No. _____<br><br>**COMPLAINT** |

  Plaintiff iGPS Company LLC ("iGPS" or the "Company"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its Complaint against Bobby L. Moore ("Moore") alleges as follows upon information and belief:

## NATURE OF THE ACTION

  1.  This action stems from Defendant Moore's gross misconduct and improper actions during his tenure as the CEO and Chairman of the iGPS, during which Moore steered Company corporate funds to himself for his own personal benefit and ran roughshod over Company policies and practices for his own enrichment. Plaintiff iGPS also seeks by this action to recover over $1 million in advances and loans extended to Moore at his request.

  2.  Prior to his termination in May 2011, Moore's employment by the Company was governed at different times by two separate employment agreements. Moore repeatedly breached both of these employment agreements, violated his fiduciary duties to the Company, and converted iGPS assets for his own personal use.

3. Separate and apart from Moore's breaches of the employment agreements and of his fiduciary duties to the Company, the Company generously extended a loan agreement and promissory note to Moore to provide financial assistance at his request.

4. The documents that govern the loan made by iGPS to Moore require Moore to repay the full amount of the loan he received from iGPS upon the occurrence of certain triggering events. The loan agreement and promissory note also give iGPS the right to bring this suit for collection of the full loan amount should any of these triggering events occur. There can be no dispute that Moore is required to repay the loan agreement and promissory note immediately, yet Moore has repeatedly refused to do so.

## PARTIES

5. Plaintiff iGPS is a limited liability company organized under the laws of Delaware, with its principal place of business in Orlando, Florida.

6. Defendant Moore is a resident of Orlando, Florida.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Moore under CPLR § 301 because both parties consented to the jurisdiction of the State Courts of New York in the relevant agreements.

8. Venue is proper under CPLR § 501 because the relevant agreements identify New York State court as an appropriate venue for any claims arising out of or relating to those agreements.

## FACTUAL BACKGROUND

I. **Moore's Employment by iGPS**

9. iGPS was launched on or about March 15, 2006 pursuant to the Limited Liability Company Agreement of iGPS Company LLC ("Original LLC Agreement") between and among Moore and Pegagus Partners III (AIV), L.P., Pegagus iGPS, LLC, and Pegagus Investors III,

2

L.P. (the "Pegasus Entities"). The Original LLC Agreement was subsequently amended on six different occasions, most recently in or about April 2009.

10. In December 2007, KIA VIII (IGPS), L.P., KIA VIII (IGPS) GP, L.P., KEP VI AIV (IGPS), LLC, and Kelso GP VIII (the "Kelso Entities") became members of the Company.

11. The Pegasus Entities, along with the Kelso Entities, invested a significant amount of money into iGPS and trusted that Moore, as the CEO of the Company, would steer its progress faithfully. In return, Moore was very handsomely compensated with a combination of salary and equity.

12. On March 15, 2006, Moore was made the CEO of iGPS pursuant to an employment agreement (the "Original Employment Agreement").

13. Moore's performance as CEO was inconsistent with the Company's business plan and market advantages for its product. Accordingly, in late 2009, iGPS undertook a search for a new CEO.

14. When the Original Employment Agreement lapsed in December 2010[1], iGPS transitioned Moore to a position as Chairman of its Board pursuant to a new employment agreement (the "Employment Agreement," and together with the Original Employment Agreement, the "Employment Agreements").

15. Under Section 3(a) of the Employment Agreements, Moore agreed to:

> undertake to perform his duties and obligation in a manner consistent with the best interests of the Company, and shall perform all duties, services and responsibilities in accordance with the guidelines, policies and procedures established by the Company Board.

---

[1] The Original Employment Agreement was modified by the Amended and Restated Employment Agreement in December 2007. The Amended and Restated Employment Agreement had a three-year term.

16. After installing a new CEO, the Company for the first time was able to get a clearer picture as to the manner in which Moore had operated the Company during his tenure as CEO. It learned that Moore had in fact operated the Company in a manner that benefitted him personally, disregarding his fiduciary obligations to the Company and its shareholders. It also learned that Moore had committed significant financial improprieties with the Company's funds for his own benefit.

17. During his time as CEO of the Company Moore repeatedly engaged in conduct that was not in the best interests of the Company, and was not in accordance with Company guidelines, policies and procedures. A more detailed description of these violations is included below.

18. In light of Moore's gross misconduct, a notice of for Cause termination was delivered to Moore and his counsel by letter dated May 25, 2011.

## II. Moore's Breaches of the Employment Agreements

### A. Moore Misappropriated Company Funds

19. In 2007, Moore requested and received an advance of $79,172.43 from iGPS. Moore told the then CFO of iGPS that the requested sum was an advance on an expected Internal Revenue Service ("IRS") refund and that he would repay the advanced sum immediately upon receipt of the IRS refund.

20. Despite repeated requests from the CFO and others at iGPS that Moore repay the advance over subsequent months and years, and despite receiving the expected IRS refund, Moore never repaid the $79,172.43 that was advanced to him by the Company.

21. Upon information and belief, Moore received a refund for approximately $79,172.43 which he deposited in his personal bank account and has kept to this day.