Loan Agreement, Moore agreed that all the terms and conditions of the Loan Documents continued in full force. Further, Moore covenanted that he had no defenses or challenges to the Loan Documents.

44.     Pursuant to the Allonge and Amended Loan Agreement, iGPS loaned the additional $1,000,000 to Moore in connection with an equity offering of 150,000,000 Series B Preferred Units (the "Offering") in order to enable Moore to purchase 666,666.67 Series B Preferred Units in the Offering.

45.     Moore's sale of his interest in Bubbadog in May 2007 was a direct breach of the Original Loan Agreement and constituted an Event of Default as defined by the Loan Documents. The entire amount of the loan from iGPS to Moore is currently outstanding and Moore is obligated to repay iGPS in full.

46.     The Original Loan Agreement also includes certain affirmative and negative covenants (the "Loan Covenants").

47.     Under Section 4(a) of the Original Loan Agreement, Moore agreed to:

Use commercially reasonable efforts to (i) continue to conduct, operate, and manage the business of Bubbadog substantially as such business has been conducted, operated, and managed in the past; and (ii) maintain, preserve, and protect the assets used or useful in the conduct of Bubbadog's business, keep Bubbadog's assets in good repair, working order and condition, and make, or cause to be made, all needful or proper repairs, replacements and improvements to these assets.

48.     Furthermore, under Section 4(c) of the Original Loan Agreement, Moore had an obligation to inform the Company in writing of any material adverse change or event that "may reasonably be expected to have a negative impact of more than $25,000 on the Borrower [Moore] or Bubbadog;" and "any Default or Event of Default."

49.     Under Section 5(a) to (c) of the Original Loan Agreement, Moore agreed to cause Bubbadog *not to*:

Liquidate, merge, dissolve or consolidate with or into any other entity . . . . without, in each case, the prior written consent of the Company, which consent shall not be unreasonably withheld;

Sell, transfer, or otherwise dispose of any of its assets or properties . . . . without the prior written consent of the Company, which consent shall not reasonably be withheld; and,

Create or permit or suffer to occur the existence of any lien or encumbrance on any of its assets or properties [limited exceptions omitted].

50.    Under Section 6(a) of the Original Loan Agreement, an Event of Default shall occur upon:

[t]he failure of [Moore] to timely and properly observe, keep, or perform any covenant, agreement, warranty, or condition required by or otherwise set forth in this [Loan Agreement] or [the Promissory Note].

51.    In the event of an Event of Default, Section 7(a) of the Original Loan Agreement authorizes iGPS to:

declare the entire principal amount of the Loan then outstanding and the interest accrued thereon and all other Obligations immediately due and payable in full, and [Moore] shall thereupon pay all such amounts and all other Obligations for which it is responsible immediately to [iGPS] in full.

52.    Section 7(b) of the Original Loan Agreement authorizes iGPS, upon the occurrence of any Event of Default, to among other things, "bring suit for collection of the Loan and all other Obligations."

53.    Section 14 of the Original Loan Agreement states that if an Event of Default occurs, Moore must pay iGPS "all actual and reasonable out-of-pocket costs and expenses of the Company (including, without limitation, legal fees, filing fees, recording costs and search fees) incurred in connection with protecting and/or enforcing the Company's rights and remedies under the Loan Documents and/or applicable law."

## IV.    The Promissory Note

54.    The loan is evidenced by the Promissory Note.

11

55.    Pursuant to the Promissory Note and the Allonge, Moore promised to pay to the order of iGPS the principal amount of $1,960,784, or the outstanding principal amount at the date of payment, together with interest from the date of advance of each installment of the loan until maturity at the rate of eight percent per annum, by June 1, 2013.

56.    The Promissory Note and the Allonge are subject to mandatory prepayment upon certain circumstances under Section 4, including

- The acceleration of the maturity of the Bubbadog Note following the occurrence of an Event of Default thereunder (4.1); or

- The dissolution or liquidation of Bubbadog, or the public announcement of any plan to liquidate Bubbadog or cease its operations (4.5); or

- The termination of [Moore's] employment pursuant to the terms of the Employment Agreement (4.8); or

- Any event or transaction as a result of which one or more third parties who are not affiliated with Borrower holds a majority of the issued and outstanding capital stock of Bubbadog, Inc. . . . or (ii) any sale or disposition by Bubbadog, Inc. of all or substantially all of its assets to any person (4.9).

57.    Pursuant to the Promissory Note and the Allonge, the occurrence of any Event of Default under the Loan Documents also constitutes an Event of Default under the Promissory Note.

58.    As with the Original Loan Agreement, the Promissory Note authorizes iGPS to declare the entire unpaid principal balance and accrued interest on the Promissory Note immediately due and payable in full upon and at any time after the occurrence of any Event of Default.

59.    In addition, the Promissory Note did not impose a notice requirement upon iGPS to pursue its right to recover on the loan. Under Section 8, the note stated that, "[u]pon and at any time after the occurrence and during the continuance of any Event of Default, (a) IGPS at its

option and without the necessity of any presentment, demand or notice(s) of default, intent to

accelerate, demand or acceleration, or any other notices, all of which are expressly waived by

Borrower except to the extent specifically granted in the Loan Agreement, may declare the entire

Unpaid Principal Balance and the accrued interest thereon on this Note and all other Obligations

immediately due and payable in full; and Borrower agrees thereupon to pay all such amounts and

all other Obligations immediately to IGPS in full . . . ."

60.     As with the Original Loan Agreement, the Promissory Note requires Moore to pay

reasonable attorneys' fees and all other out-of-pocket costs and expenses incurred by iGPS in the

enforcement and collection of the Note.

**V.      Moore's Breaches of the Loan Agreement and the Event of Default**

61.     Upon information and belief, Moore maintained Bubbadog in an extremely under-

capitalized state in contravention and breach of his affirmative covenant in Section 4(a) to use

commercially reasonable efforts to preserve the business and assets of Bubbadog.

62.     Further, upon information and belief, Moore sold Bubbadog to Cottondog in or

about May 2007.

63.     Moore acted deceptively, hiding the fact of the sale from the Company despite

knowing that he had pledged Bubbadog as collateral and that the Company had relied on that

pledge in extending to Moore  nearly two million dollars.

64.     By selling Bubbadog, Moore materially breached Sections 4(a) and 5(b) of the

Loan Agreement.  These breaches, among others, constitute an Event of Default under Section

6(a).  The sale of Bubbadog by Moore was a breach of Section 4(a) of the Loan Agreement.

65.     The sale of Bubbadog by Moore was also an Event of Default under Section 6(b)

of the Loan Agreement.

13

66.    Thus, the loan is immediately due and payable. Moore is liable for additional damages under the Agreements and the law.

## VI.    **Mandatory Prepayment Pursuant to the Promissory Note**

67.    Moore's default on the Original Loan Agreement and the Amended Loan Agreement and the termination of his employment caused the Promissory Note and the Allonge to be immediately subject to mandatory prepayment.

68.    Moore has not repaid the loan to iGPS.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breaches of the Employment Agreements)

69.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs.

70.    The Employment Agreements are valid and enforceable contracts, and iGPS and Moore are each bound by their terms.

71.    At all relevant times, iGPS fulfilled its required duties and obligations under the Employment Agreements.

72.    Moore breached the Employment Agreements by, among other things, failing to act in the best interest of the Company when he refused to repay Company loans, directing the CFO of iGPS to write off one of the unpaid loans, and abusing the Company's expense reimbursement policy.

73.    Moore's intentional, willful, wrongful, and knowing breaches of the Employment Agreements have caused iGPS damages in an amount to be determined at trial, plus all costs and interest to which iGPS is lawfully entitled.

14

## SECOND CAUSE OF ACTION
### (Breach of the Duty of Loyalty)

74.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs.

75.    As the CEO and Chairman of the Board of iGPS, Moore owed a fiduciary duty of loyalty to iGPS to act in accordance with its best interest and not on his own behalf.

76.    Moore breached that duty of loyalty, by, among other things, failing to return money advanced to him by the Company.

77.    Moore further breached his fiduciary duty by directing the CFO of iGPS to write off the outstanding amount of the advance he took from the Company.

78.    Moore additionally breached his duty by charging inappropriate, non-business expenses to the Company.

79.    Moore additionally breached his duty by acting in his own personal interest and failing to act in the best interest of the Company.

80.    Furthermore, Moore breached his duty to the Company by selling Bubbadog—the collateral underlying his loan with iGPS—without proper notice to the Company.

81.    As a result of Moore's breaches of his fiduciary duties, iGPS has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Conversion)

82.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs.

83.    iGPS had an immediate superior right of possession to all Company funds.

15

84.    Moore's retention of the at least $2,086,719.43 loaned to him by iGPS, even after iGPS demanded that Moore repay the Company, constituted a conversion.

85.    Moore's retention of at least $268,702.40 in reimbursement for certain inappropriate, non-business expenses also constituted conversion.

### FOURTH CAUSE OF ACTION
#### (Unjust Enrichment)

86.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs.

87.    Moore has been unjustly enriched at the expense of iGPS by retaining Company funds.

88.    Moore unjustly retained at least $2,086,719.43 in sums advanced to him by the Company, as well as at least $268,702.40 in reimbursement for inappropriate, non-business expenses at iGPS' expense.

89.    Because Moore received and unjustly retained at iGPS' expense such monetary benefits, the parties should be returned to their original position prior to Moore's misconduct.

### FIFTH CAUSE OF ACTION
#### (Breach of the Loan Agreement)

90.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs.

91.    The Loan Agreement is a valid and enforceable contract, and iGPS and Moore are each bound by its terms.

92.    At all relevant times, iGPS fulfilled its required duties and obligations under the Loan Agreement.

16

93.    Moore materially breached numerous provisions of the Loan Documents by, among other things, selling Bubbadog and thereby forfeiting the Collateral that secured the loan from iGPS.

94.    Pursuant to Section 6(a) of the Original Loan Agreement, in the event of a failure to perform any covenant required by the Original Loan Agreement, all loans to iGPS become "immediately due and payable in full."

95.    Given the acceleration clause, and Moore's breaches of covenants in the Loan Documents and duly noticed Event of Default, iGPS is entitled to damages in an amount equal to at least $1,960,784, the amount of principal currently due and owing under the Agreements, as well as the interest owed pursuant to the Promissory Note.

96.    iGPS is also entitled to attorneys' fees and costs incurred in enforcing the Loan Documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff iGPS prays for the following relief and judgment:

1.  Judgment awarding iGPS compensatory damages owed by virtue of acceleration of loan payments from Moore to iGPS, as well as damages suffered by iGPS in an amount to be determined at trial, but in no event less than $2,355,421.83 plus attorneys fees;

2.  Compensatory damages in an amount to be determined at trial;

3.  Punitive damages in an amount to be proven at trial;

4.  Disgorgement of unjustly retained gains;

5.  Reasonable costs and expenses associated with this action, including, without limitation, attorneys' fees and other professional fees;

6.  Prejudgment interest and/or opportunity cost damages in favor of Plaintiff iGPS; and

17

7. Repayment by Moore of compensation paid by iGPS to Moore during his employment from at least April 2006 through May 2011;

8. Such other and further relief as this Court may deem just and proper.

DATED:    New York, New York          AKIN GUMP STRAUSS HAUER & FELD LLP

October 2, 2012

By: _____
Stephen M. Baldini
Samidh Guha
One Bryant Park
New York, New York  10036
Telephone: (212) 872-1062
Fax: (212) 872-1002
sbaldini@akingump.com
sguha@akingump.com

*Attorneys for Plaintiff iGPS Company LLC*

FILED: NEW YORK COUNTY CLERK 10/16/2012

INDEX NO. 652431/2011

NYSCEF DOC. NO. 27

RECEIVED NYSCEF: 10/16/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

iGPS COMPANY LLC,                              Index No. 652431/2011

               Plaintiff,

    -against -                                **ANSWER AND
                                               AFFIRMATIVE DEFENSES**
BOBBY L. MOORE,                                **TO SECOND AMENDED
                                               COMPLAINT**

               Defendant.

------------------------------------------------------------x

      Defendant, Bobby L. Moore, by his attorneys, Kaiser Saurborn & Mair, P.C., as and for

his answer to the Second Amended Complaint in this action responds as follows:

      1.    Defendant denies the allegations in paragraph 1 of the Second Amended

Complaint.

      2.    Defendant denies the allegations in paragraph 2 of the Second Amended

Complaint.

      3.    Defendant denies the allegations in paragraph 3 of the Second Amended

Complaint.

      4.    Defendant denies the allegations in paragraph 4 of the Second Amended

Complaint.

      5.    Defendant denies the allegations in paragraph 5 of the Second Amended

Complaint.

      6.    Defendant admits the allegations in paragraph 6 of the Second Amended

Complaint.

      7.    Defendant admits the allegations in paragraph 7 of the Second Amended

Complaint.

8.     Defendant neither admits nor denied the allegations in paragraph 8 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

9.     Defendant neither admits nor denied the allegations in paragraph 9 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

10.    Defendant denies the allegations in paragraph 10 of the Second Amended Complaint except admits that iGPS was formed in March, 2006.

11.    Defendant admits the allegations in paragraph 11 of the Second Amended Complaint.

12.    Defendant denies the truth of the allegations in paragraph 12 of the Second Amended Complaint, except admits that some or all of the Kelso and Pegasus entities invested in iGPS, that as CEO he rendered faithful service to the company and that in return the company compensated him although has not paid to him all of the compensation to which he is entitled.

13.    Defendant denies the allegations in paragraph 13 of the Second Amended Complaint.

14.    Defendant admits the allegations of paragraph 14 of the Second Amended Complaint except clarifies that he was made CEO and Chairman.

15.    Defendant denies the allegations of paragraph 15 of the Second Amended Compalint.

16.    Defendant denies the allegations of paragraph 16 of the Second Amended

2

Complaint.

17.    .Defendant neither admits nor denies the allegations in paragraph 17 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

18.    Defendant neither admits nor denies the allegations in paragraph 18 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

19.    Defendant neither admits nor denies the allegations in paragraph 19 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

20.    Defendant neither admits nor denies the allegations in paragraph 20 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

21.    Defendant neither admits nor denies the allegations in paragraph 21 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

22.    Defendant neither admits nor denies the allegations in paragraph 22 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

23.    Defendant denies the allegations in paragraph 23 of the Second Amended Complaint.

24.     Defendant denies the allegations in paragraph 24 of the Second Amended Complaint.

25.     Defendant denies the allegations in paragraph 25 of the Second Amended Complaint except admits that on or about May 25, 2011, iGPS notified defendant's counsel in writing that his employment was being terminated allegedly for cause.

26.     Defendant denies the allegations in paragraph 26 of the Second Amended Complaint.

27.     Defendant denies the allegations in paragraph 27 of the Second Amended Complaint.

28.     Defendant denies the allegations in paragraph 28 of the Second Amended Complaint.

29.     Defendant denies the allegations in paragraph 29 of the Second Amended Complaint.

30.     Defendant denies the allegations in paragraph 30 of the Second Amended Complaint.

31.     Defendant denies the allegations in paragraph 31 of the Second Amended Complaint.

32.     Defendant neither admits nor denies the allegations in paragraph 32 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

33.     Defendant denies the allegations in paragraph 33 of the Second Amended Complaint.

4

34.    Defendant denies the allegations in paragraph 34 of the Second Amended Complaint.

35.    Defendant denies the allegations in paragraph 35 of the Second Amended Complaint.

36.    Defendant denies the allegations in paragraph 36 of the Second Amended Complaint.

37.    Defendant denies the allegations in paragraph 37 of the Second Amended Complaint.

38.    Defendant denies the allegations in paragraph 38 of the Second Amended Complaint.

39.    Defendant denies the allegations in paragraph 39 of the Second Amended Complaint.

40.    Defendant denies the allegations in paragraph 40 of the Second Amended Complaint.

41.    Defendant denies the allegations in paragraph 41 of the Second Amended Complaint.

42.    Defendant denies the allegations in paragraph 42 of the Second Amended Complaint.

43.    Defendant denies the allegations in paragraph 43 of the Second Amended Complaint.

44.    Defendant denies the allegations in paragraph 44 of the Second Amended Complaint.

45.    Defendant denies the allegations in paragraph 45 of the Second Amended Complaint.

46.    Defendant neither admits nor denies the allegations in paragraph 46 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

47.    Defendant neither admits nor denies the allegations in paragraph 47 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

48.    Defendant neither admits nor denies the allegations in paragraph 48 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

49.    Defendant neither admits nor denies the allegations in paragraph 49 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

50.    Defendant neither admits nor denies the allegations in paragraph 50 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

51.    Defendant neither admits nor denies the allegations in paragraph 51 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

52.    Defendant neither admits nor denies the allegations in paragraph 52 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a

response.

53.     Defendant neither admits nor denies the allegations in paragraph 53 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

54.     Defendant denies the allegations of paragraph 54 of the Second Amended Complaint.

55.     Defendant neither admits nor denies the allegations in paragraph 55 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

56.     Defendant neither admits nor denies the allegations in paragraph 56 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

57.     Defendant neither admits nor denies the allegations in paragraph 57 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

58.     Defendant neither admits nor denies the allegations in paragraph 58 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

59.     Defendant neither admits nor denies the allegations in paragraph 59 of the Second Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

60.     Defendant neither admits nor denies the allegations in paragraph 60 of the Second

7

Amended Complaint as legal contentions or conclusions and not allegations of fact requiring a response.

61.    Defendant denies the allegations in paragraph 61 of the Second Amended Complaint.

62.    Defendant denies the allegations in paragraph 62 of the Second Amended Complaint.

63.    Defendant denies the allegations in paragraph 63 of the Second Amended Complaint.

64.    Defendant denies the allegations in paragraph 64 of the Second Amended Complaint.

65.    Defendant denies the allegations in paragraph 65 of the Second Amended Complaint.

66.    Defendant denies the allegations in paragraph 66 of the Second Amended Complaint.

67.    Defendant denies the allegations in paragraph 67 of the Second Amended Complaint.

68.    Defendant admits the allegations of paragraph 68 of the Second Amended Complaint but denies that the repayment of any loan is due and owing.

69.    Defendant neither admits nor denies the allegations in paragraph 70 of the Second Amended Complaint as containing legal contentions or conclusions and not allegations of fact requiring a response.

70.    Defendant denies the allegations in paragraph 71 of the Second Amended

Complaint.

71.    Defendant denies the allegations in paragraph 72 of the Second Amended Complaint.

72.    Defendant denies the allegations of paragraph 73 of the Second Amended Complaint.

73.    Defendant denies the allegations in paragraph 75 of the Second Amended Complaint.

74.    Defendant denies the allegations in paragraph 76 of the Second Amended Complaint.

75.    Defendant denies the allegations in paragraph 77 of the Second Amended Complaint.

76.    Defendant denies the allegations in paragraph 78 of the Second Amended Complaint.

77.    Defendant denies the allegations in paragraph 79 of the Second Amended Complaint.

78.    Defendant denies the allegations in paragraph 80 of the Second Amended Complaint.

79.    Defendant denies the allegations in paragraph 81 of the Second Amended Complaint.

80.    Defendant denies the allegations in paragraph 83 of the Second Amended Complaint.

81.    Defendant denies the allegations in paragraph 84 of the Second Amended

Complaint.

    82.    Defendant denies the allegations in paragraph 85 of the Second Amended Complaint.

    83.    Defendant denies the allegations in paragraph 87 of the Second Amended Complaint.

    84.    Defendant denies the allegations in paragraph 88 of the Second Amended Complaint.

    85.    Defendant denies the allegations in paragraph 89 of the Second Amended Complaint.

    86.    Defendant denies the allegations in paragraph 91 of the Second Amended Complaint.

    87.    Defendant denies the allegations in paragraph 92 of the Second Amended Complaint.

    88.    Defendant denies the allegations in paragraph 93 of the Second Amended Complaint.

    89.    Defendant denies the allegations in paragraph 94 of the Second Amended Complaint.

    90.    Defendant denies the allegations in paragraph 95 of the Second Amended Complaint.

    91.    Defendant denies the allegations in paragraph 96 of the Second Amended Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state any claim, in whole or in part, upon which

relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

The claims are barred, in whole or in part, by the doctrines of waiver, laches, unclean

hands and equitable estoppel.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

The claims are barred or diminished by the applicable statutes of limitations.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim upon which an award of punitive

damages can be granted.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

The claims are barred and/or diminished, in whole or in part, by plaintiff's failure to

properly mitigate its alleged damages.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim upon which an award of attorneys'

fees can be granted.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

The First Amended Complaint is barred because the applicable administrative

procedure(s) and/or condition(s) precedent were not properly effectuated, complied with, or

exhausted before this action was commenced.

11

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

The First Amended Complaint is barred in whole or in part by the Plaintiff's own contributory negligence.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for lack of jurisdiction.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The plaintiff has failed to plead its claims with the requisite specificity.

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is estopped and barred by its own conduct from recovering any relief.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to satisfy the conditions precedent within the at issue contracts and documents to be entitled to maintain a cause of action and/or be entitled to a recovery.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

Defendant denies all other allegations of the Second Amended Complaint not specifically admitted or otherwise responded to in this Answer.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

Defendant hereby reserves the right to amend its Answer to assert additional affirmative defenses as revealed or suggested by the completion of Defendant's on-going investigation and discovery.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to sue for the relief requested.

**WHEREFORE**, the defendant, Bobby L. Moore, demands judgment in his favor

dismissing the Second Amended Complaint in its entirety, with prejudice, and awarding it any

costs and disbursements, including his reasonable attorney's fees, incurred in defending this

action. Defendant further requests that the Court grant him such other and further relief as may

be just and proper.

Dated: New York, New York
      October 16, 2012

                            **KAISER SAURBORN & MAIR, P.C.**
                            Attorneys for Defendant

By:      _____
                         Daniel J. Kaiser, Esq.

                            111 Broadway, 18th Floor
                            New York, New York 10006
                            (212) 338-9100

To:    Steven M. Baldini, Esq.
       Akin Gump Strauss Hauer & Feld LLP
       Attorneys for Plaintiff
       One Bryant Park
       New York, New York 10036
       (212) 872-1062