## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

BOBBY L. MOORE,                                :

               Plaintiff,            :

    -against-                              :

IGPS COMPANY LLC, PEGASUS CAPITAL       :
ADVISORS LLP, PEGASUS PARTNERS III
(AIV), L.P., PEGASUS INVESTORS III, L.P.,     :
PEGASUS INVESTORS III GP, L.L.C.,
PEGASUS IGPS, LLC, IGPS CO-INVESTMENT   :
LLC, IGPS EMPLOYEE PARTICIPATION, L.P.,
IGPS EXECUTIVE (GP) LLC, PP IV IGPS          :
HOLDINGS, LLC, KELSO & COMPANY, KIA
VIII (IGPS), L.P., KIA VIII (IGPS) GP, L.P., KEP  :
VI AIV (IGPS), LLC, KELSO GP VIII, LLC,
RICH WEINBERG, CRAIG COGUT, FRANK      :
NICKELL, and PHIL BERNEY,

               Defendants.          :

------------------------------------------------------X



JUDGE SULLIVAN

13 CIV 9211

RECEIVED DEC 31 2013 U.S.D.C. S.D.N.Y. CASHIERS

### NOTICE OF REMOVAL

    Please take notice that pursuant to 28 U.S.C. §§ 1334 and 1452 and Rule 9027 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Non-Debtor Defendants[1]

in the above-captioned cases hereby remove to the United States District Court for the Southern

District of New York, the matters of *Moore v. iGPS Company LLC, et al.*, index number

651907/2011 (the "Moore Litigation"), joined and pending with *iGPS v. Moore*, index number

652431/2011 (the "iGPS Litigation") before the Supreme Court of the State of New York,

---

[1] Pegasus Capital Advisors LLP, Pegasus Partners III (AIV), L.P., Pegasus Investors III, L.P., Pegasus Investors III GP, L.L.C., Pegasus iGPS, LLC, iGPS Co-Investment LLC, iGPS Employee Participation, L.P., iGPS Executive (GP) LLC, and PP IV iGPS Holdings, LLC are hereinafter referred to as "Pegasus." Kelso & Company, KIA VIII (iGPS), L.P., KIA VIII (iGPS) GP, L.P., KEP VI AIV (iGPS), LLC, and Kelso GP VIII, LLC are hereinafter referred to as "Kelso." Pegasus, Kelso, Rich Weinberg, Craig Cogut, Frank Nickell, and Phil Berney are hereinafter referred to as the "Non-Debtor Defendants."

County of New York (collectively, the "State Court Litigation").[2]  The Non-Debtor Defendants

are co-defendants in the above captioned matter with iGPS Company LLC ("iGPS" or the

"Debtor"), a debtor in a chapter 11 case currently pending in the United States Bankruptcy Court

for the District of Delaware (Case No. 13-11459).  In support of removal, the Non-Debtor

Defendants state as follows:[3]

## PRELIMINARY STATEMENT

1.     The State Court Litigation qualifies for removal to this federal district court

because these cases are "related to" the Debtor's bankruptcy case.  Such "related to" jurisdiction

exists where the outcome of the litigation-in-question would affect the administration of a

debtor's estate or the debtor's rights or liabilities.  Herein, because each of the claims in both

actions implicate the potential for economic consequences upon the Debtor's estate, these cases

fall within "related to" jurisdiction.  Accordingly, the outcome of the State Court Litigation will

have a significant impact on the administration of the Debtor's estate.  Thus, the actions are

entitled to removal to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE iGPS BANKRUPTCY

2.     On June 4, 2013, the Debtor filed a voluntary petition for relief under chapter 11

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  *See*

*Pallet Company LLC, f/k/a In re iGPS Company LLC*, Case No. 13-11459-KG (Bankr. D. Del.)

(ECF No. 1).

---

[2] The Debtor (as defined herein) is simultaneously filing a Notice of Removal to this Court in the iGPS
Litigation.
    [3] Pursuant to Bankruptcy Rule 9027, all process and pleadings in Index No. 651907/2011 are attached
hereto as **Exhibit A**.

3.      On June 14, 2013, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). (ECF No. 101).

4.      On June 20, 2013, Bobby L. Moore ("Moore") filed a proof of claim (the "Proof of Claim") related to the State Court Litigation in the Bankruptcy Court.[4] (Claim No. 20). By filing the Proof of Claim, Moore consented to the jurisdiction of the Bankruptcy Court. Moore subsequently amended the Proof of Claim, and the Committee and the Debtor filed objections to the Proof of Claim that remain pending before the Bankruptcy Court. *See* ECF Nos. 518, 523.

5.      On July 29, 2013, the Bankruptcy Court entered an order approving the Debtor's sale of substantially all of its assets to iGPS Logistics, LLC (the "Buyer"). (ECF No. 416). Subsequently, the Debtor and the Buyer closed the sale on August 1, 2013.

6.      On August 27, 2013, the Debtor filed the chapter 11 plan and the disclosure statement related thereto. (ECF Nos. 467, 468). On September 25, 2013, the Debtor and the Committee jointly filed the amended chapter 11 plan (as supplemented and further amended, the "Plan") and the amended disclosure statement related thereto. *See* ECF Nos. 533, 535. *See also Second Amended Chapter 11 Plan for Pallet Company LLC Proposed by the Debtor and the Official Committee of Unsecured Creditors* (ECF No. 558); *Disclosure Statement with Respect to the Second Amended Chapter 11 Plan for Pallet Company LLC Proposed by the Debtor and the Official Committee of Unsecured Creditors* (ECF No. 560).

7.      On November 14, 2013, the Bankruptcy Court entered the order confirming the Plan (the "Confirmation Order"). (ECF No. 678). Pursuant to the terms of the Plan, the remaining assets of the Debtor were assigned to the Pallet Company LLC Liquidation Trust (the

---

[4] Moore also filed a motion for relief from the automatic stay under section 362 of the Bankruptcy Code to proceed with the State Court Litigation. (ECF No. 235). The Committee and the Debtor filed objections to the this motion, which is still pending in the Bankruptcy Court. (ECF Nos. 325, 334).

"Liquidation Trust").  Peter Kravitz of SLTNTRST LLC d/b/a Solution Trust was duly appointed

as the liquidation trustee (the "Liquidation Trustee") for the Liquidation Trust.

       8.     The Plan became effective on November 27, 2013 (the "Effective Date").  (ECF

No. 710).  On the Effective Date, the Committee dissolved automatically and the authority,

power and incumbency of the Debtor terminated and vested in the Liquidation Trustee pursuant

to the Plan and the Confirmation Order.  Plan, at Sections 8.3, 14.7; Confirmation Order, at ¶¶

15, 34.

       9.     Further, the Plan and the Confirmation Order provide for the following

injunctions:

> On the Effective Date . . . , all Persons who have been, are or may be holders of
> Claims against or Equity Interests in the Debtor **shall be permanently enjoined
> from** taking any of the following actions against or affecting the Debtor, its
> Estate, the Assets or the Liquidation Trustee, or any of their current or former
> respective members, directors, managers, officers, employees, agents,
> professionals, successors and assigns or their respective assets and property with
> respect to such Claims or Equity Interests (except for actions brought to enforce
> any rights or obligations under the Plan, the Asset Purchase Agreement and/or the
> Sale Order, including but not limited to Claims held by the Liquidation Trust):
>
> > (a)    **commencing, conducting or <u>continuing</u> in any manner, directly
> > or indirectly, any suit, action or other proceeding of any kind
> > (including, without limitation, <u>all suits, actions and
> > proceedings that are pending as of the Effective Date, which
> > must be withdrawn or dismissed with prejudice</u>)** . . . .

Plan, at Section 14.18 (emphasis added).  *See also* Confirmation Order, at ¶ 29.  Pursuant to the

injunctions, Moore is permanently enjoyed from continuing the State Court Litigation against the

Debtor and the Non-Debtor Defendants.  *Id.*  Further, the Plan provides that the State Court

Litigation must be withdrawn or dismissed with prejudice.  *Id.*

## B.    THE STATE COURT LITIGATION

      10.    The State Court Litigation wholly arises out of Moore's former employment at

iGPS and subsequent termination of employment.  Moore's role with the Debtor began at the

initiation of the company when Moore, along with equity investors Pegasus and Kelso, launched iGPS on or about March 15, 2006. In fact, upon the formation of the company in 2006, iGPS instituted Moore as CEO of the company pursuant to an employment agreement (the "CEO Employment Agreement"). Then, in December 2010, Moore's position transitioned to become Chairman of iGPS's Board pursuant to a new employment agreement (the "Chairman Employment Agreement," and together with the CEO Employment Agreement, the "Employment Agreements").

11.    Furthermore, on June 14, 2006, iGPS entered into a loan agreement with Moore (the "Original Loan Agreement"). Pursuant to the Original Loan Agreement, iGPS agreed to extend a loan of $960,784 to Moore in order to fund Moore's capital contributions to iGPS. In return, Moore pledged certain security interests as collateral for the loan.[5] Thereafter, on March 14, 2008, iGPS increased the amount of the loan to Moore from $960,784 to the amount of $1,960,784 ("Amended Loan Agreement" and with the "Original Loan Agreement" as "Loan Agreements"). The amount owed under the Loan Agreements became due and payable on June 1, 2013.

12.    During Moore's tenure as CEO and Chairman of iGPS, Moore repeatedly engaged in misconduct that disadvantaged the Debtor and harmed its interests. Further, these actions were not in accordance with Debtor's guidelines, policies and procedures. The Debtor came to learn that Moore had disregarded his fiduciary and contractual obligations to the company and its shareholders by managing the company for his personal benefit. In light of Moore's gross misconduct, the iGPS delivered a notice of for cause termination to Moore and his counsel by letter dated May 25, 2011.

---

[5] In May 2007, Moore sold his interest in collateral that he had pledged in the Loan Agreements and thus violated numerous provisions of the Loan Agreements, triggering a default and the Debtor's right to immediate repayment.

13.    The State Court Litigation began shortly thereafter on July 12, 2011, when Moore instituted an action against the Debtor and the Non-Debtor Defendants. These Non-Debtor Defendants consist of individuals and investment vehicles affiliated with the Debtor's two former investors and equity holders—Pegasus and Kelso.

14.    On September 2, 2011, the Debtor brought an affirmative action against Moore for breaches of contract related to his Employment Agreements, breach of contract of the Loan Agreements, and several torts arising out of Moore's misconduct while acting as CEO and Chairman.

15.    Since the initial filing, both Moore and the Debtor have each twice amended their complaints, most recently on October 2, 2012.

16.    In Moore's second amended complaint, Moore pursues twelve causes of action against the Debtor and the Non-Debtor Defendants. The gravamen of Moore's second amended complaint is the allegation that the Debtor wrongfully terminated Moore in May 2011 and thus deprived him of his proper equity stake due upon termination. Against the Debtor, Moore asserts claims for breaches of his Employment Agreements and breach of the implied covenant of good faith and fair dealing. Against the Non-Debtor Defendants, Moore asserts additional claims[6] and allegations that relate only to Moore's employment and termination by the Debtor.

17.    Since the initiation of this case two and a half years ago, the parties have engaged in multiple rounds of motion practice and a fulsome discovery effort, with thousands of documents exchanged and multiple witnesses deposed. In fact, at the time of the Debtor's petition for bankruptcy in June 2013, the parties had completed fact discovery and were on the verge of expert depositions.

---

[6] The additional claims against the Non-Debtor Defendants include: (1) tortious interference; (2) breaches of fiduciary duty; (3) fraudulent inducement; (4) conspiracy to commit fraud; and (5) breaches of the Debtor's LLC Agreement.

18.    On June 4, 2013, the Debtor filed for bankruptcy, thereby staying the State Court

Litigation against itself.  Subsequently, on June 25, 2013, the Non-Debtor Defendants moved to

extend the stay to cover the Moore Litigation against the Non-Debtor Defendants.  On August 1,

2013, the New York state court judge presiding over the case granted the Non-Debtor

Defendants' motion to extend the stay, thus staying the entirety of the State Court Litigation.

### C.    THE DEBTOR'S CONTRACTUAL OBLIGATIONS TO INDEMNIFY THE NON-DEBTOR DEFENDANTS FOR ANY EXPENSES AND/OR LIABILITY ARISING FROM MOORE'S CLAIMS.

19.    The relationship between the Debtor and the Non-Debtor Defendants is governed

by the LLC Agreements through which the Non-Debtor Defendants, either directly or as agents,

invested in the Debtor.  The LLC Agreement and its six subsequent amendments include

provisions that require the Debtor to indemnify, subject to certain limitations, each of the Non-

Debtor Defendants for any expenses (including legal costs), obligations, and/or liability arising

out of the performance of their duties on behalf of iGPS.[7]

### JURISDICTION AND VENUE

20.    Pursuant to 28 U.S.C. § 1452(a), "any claim or cause of action in a civil action"

may be removed "to the district court for the district where such civil action is pending, if such

district court has jurisdiction of such claim or cause of action under section 1334 of this title."

21.    This Court has jurisdiction of the removed State Court Litigation under 28 U.S.C.

§ 1334(b), which provides that district courts shall have original subject matter jurisdiction if the

claim for relief or cause of action is a civil proceeding either (1) "arising under" title 11 (the

Bankruptcy Code), or (2) "arising in" or "related to" a case under title 11.  Moreover, the

Supreme Court clarified that under § 1334(b), "Congress intended to grant comprehensive

---

[7] The Liquidation Trustee expressly reserves the right to object to any indemnification claims filed by the Non-Debtor Defendants in the bankruptcy case.

jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

22.    A claim is "related to" a bankruptcy case if the resolution of the claim could have a "conceivable effect" on the administration of the bankrupt estate. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *5 (S.D.N.Y. 2004).

23.    Courts conclude that an action qualifies under "related to" jurisdiction "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and the administration of the bankrupt estate." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *4 (S.D.N.Y. 2004). Thus, where "the *outcome* of the case will effect [sic] the debtor's estate," such will be considered "related to" jurisdiction, sufficient to warrant removal. *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *5 (S.D.N.Y. 2004).

24.    Herein, it is plain that every single claim in the State Court Litigation relates to the Debtor's pending bankruptcy because each claim could potentially have an immediate economic impact on the Debtor's estate.

25.    Specifically, each of the claims in the Moore Litigation could result in a judgment for monetary liability against the Debtor. Count One (breach of the Employment Agreements for failure to pay proper compensation), Count Eight (breach of the implied covenant of good faith and fair dealing), and Count Nine (breach of the Employment Agreements for termination of Moore's vested units) all implicate the Debtor's potential for liability because in each one of these claims Moore seeks compensatory damages against the Debtor. Any determination of

damages owed by the Debtor will have an immediate effect on the Debtor's estate and thus falls

within "related to" jurisdiction. Courts find that where a party seeks damages against a debtor,

such a claim clearly involves the debtor's estate and thus constitutes related to jurisdiction. *See*

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, *4-10

(S.D.N.Y. 2004) (denying remand and finding that claims for damages against debtor defendant

were "related to" the bankruptcy case and therefore conferred jurisdiction on the District Court).

      26.    Furthermore, in Moore's claims against the Non-Debtor Defendants, Moore seeks

compensatory and punitive damages. The Non-Debtor Defendants may have a claim under the

LLC Agreements that the Debtor is contractually bound to indemnify the Non-Debtor

Defendants for any liability arising out of Moore's claims. Regardless of the fact that the

Liquidation Trustee may dispute these potential assertions, Moore's claims in Counts Two

through Seven and Counts Ten through Twelve against the Non-Debtor Defendants could create

potential indemnity liability from the Debtor's estate to the Non-Debtor Defendants. Thus, these

claims against the Non-Debtor Defendants are also related to the Debtor's pending bankruptcy.

In instances where a non-debtor defendant has been indemnified by the debtor, courts find that

these actions should proceed before bankruptcy court where the debtor's case is pending because

of the potential effect on the debtor's liabilities. *See In re River Ctr. Holdings, LLC*, 288 B.R. 59,

65 (Bankr. S.D.N.Y. 2003) (finding "even if [an asserted indemnification] obligation is not

contractual and absolute, 'related to' jurisdiction exists if the disputed or conditional indemnity

claim has a 'reasonable legal basis.'") (citing *Masterwear Corp. v. Rubin Baum Levin Constant*

*& Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 515 (Bankr. S.D.N.Y. 1999)); *Bond St.*

*Assocs. v. Ames Dep't. Stores, Inc.*, 174 B.R. 28, 33 (S.D.N.Y. 1994) (court found reasonable

basis for jurisdiction absent an indemnification agreement where the third-party defendant would "normally have a claim" for indemnification against the debtor).

27.     In any event, under the applicable federal statute, *any* party involved in a cause of action that is part of a bankruptcy estate may remove the *entire* cause of action to the bankruptcy court provided that they meet the applicable jurisdictional requirements.  28 U.S.C. § 1452; *see In re New 118ᵗʰ LLC*, 396 B.R. 885, 889 (Bankr. S.D.N.Y. 2008) ("Section 1452(a) of title 28 authorizes any party to a state court civil action to remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of 28 U.S.C. § 1334."); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003) (rejecting arguments that removal was improper because of lack of consent of third parties and noting that ". . . 28 U.S.C. § 1452(a), does not require that all defendants join in removal; it rather provides that '[a] party,' (citation omitted), may remove") (citing *In re Talon Holding, Inc.*, 221 B.R. 214, 218 (N.D. Ill. 1998)); *In re Northwood Flavors, Inc.*, 202 B.R. 63, 67 (Bankr. W.D. Pa. 1996) (noting that Section 1452 "permits a party to remove *all* of the claims or causes of action, thereby depriving the other forum of any jurisdiction over them unless and until they are remanded.") (citing *In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D. Cal. 1987)).

28.     Furthermore, each of the causes of action in the iGPS Litigation against Moore— including a claim for over $2 million in back-due loan obligations—involves the Debtor's rights and potential for monetary relief.  Successful litigation of the Debtor's affirmative case would result in a significant boost to the Debtor's estate and assets thereunder.  Thus, the Debtor's action against Moore also appropriately constitutes "related to" jurisdiction.  It is axiomatic, that a debtor's affirmative claim for damages that could result in an increase of funds for the debtor's

estate falls within a bankruptcy court's jurisdiction. *See Liddle & Robinson, L.L.P. v. Daley* (*In re Daley*), 224 B.R. 307, 313 (Bankr. S.D.N.Y. 1998) (noting that "causes of action owned by the debtor prior to its bankruptcy and which become property of the debtor's estate as well as suits between third parties which have an effect on the bankruptcy estate are bases for related to jurisdiction") (citing *Celotex v. Edwards*, 514 U.S. 300, 308 at n. 5 (1995)).

29.     Accordingly, this Court has jurisdiction under 28 U.S.C. § 1334(b) and 1452(a) over each of the claims in the State Court Litigation. Furthermore, removal to this Court, and venue in this Court, is proper under § 1452(a) because the State Court Litigation is pending in a state court in this district.

## NON-CORE PROCEEDING AND CONSENT TO FINAL ORDERS

30.     Pursuant to Bankruptcy Rule 9027(a)(1), upon removal of the State Court Litigation, the proceedings will be core. To the extent the State Court Litigation is deemed to be non-core, the Non-Debtor Defendants consent to entry of final orders or judgment by the bankruptcy judge.

## REFERRAL TO BANKRUPTCY COURT

31.     Under this Court's standing administrative order on the referral of matters to bankruptcy judges, this action should be automatically referred to the bankruptcy court for this district.[8] *See Amended Standing Order of Reference Re: Title 11,* No. 12 Misc. 0032 (S.D.N.Y. Jan. 31, 2012).

## CONCLUSION

Based upon the foregoing, the Debtor and the Non-Debtor Defendants request that this action proceed in this Court as an action properly removed to it, and that this action be referred

---

[8] Upon referral to the Bankruptcy Court of the Southern District of New York, the Debtor and the Non-Debtor Defendants intend to move to transfer venue to Bankruptcy Court for the District of Delaware where the Debtor's bankruptcy proceeding is currently pending.

to the Bankruptcy Court for the Southern District of New York so that the Debtor and Non-

Debtor Defendants may thereafter move to transfer venue to the Bankruptcy Court for the

District of Delaware.

Dated: December 31, 2013
      New York, New York

                    Respectfully submitted,

                    AKIN GUMP STRAUSS HAUER & FELD LLP

                    By: _____
                    Stephen M. Baldini
                    Samidh Guha
                    Roxanne Tizravesh
                    One Bryant Park
                    New York, NY 10036
                    (212) 872-1015 (phone)
                    (212) 872-1002 (fax)

                    *Counsel for Non-Debtor Defendants*

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
--------------------------------------------------------------------------X
BOBBY L. MOORE,                                                    Index No.:

       Plaintiff,

   -against-                                                    **SUMMONS**
                                                                 Date of Purchase of
                                                                 Index No.:

IGPS COMPANY LLC, PEGASUS CAPITAL
ADVISORS LLP, PEGASUS PARTNERS III (AIV), L.P.,
PEGASUS INVESTORS III, L.P., PEGASUS
INVESTORS III GP, L.L.C., PEGASUS IGPS, LLC, IGPS
CO-INVESTMENT LLC, IGPS EMPLOYEE
PARTICIPATION, L.P., IGPS EXECUTIVE (GP) LLC,
PP IV IGPS HOLDINGS, LLC, KELSO, KIA VIII (IGPS),
L.P., KIA VIII (IGPS) GP, L.P., KEP VI AIV (IGPS),
LLC, KELSO GP VIII, LLC, RICH WEINBERG, CRAIG
COGUT, FRANK NICHOLS, and PHIL BERNEY,

       Defendants.
--------------------------------------------------------------------------X

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer within twenty [20] days after the service (or within thirty [30] days after the
service is complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgement will be taken against you by
default for the relief demanded in the complaint.

     The Plaintiff designates **New York County** as the place of trial which is the county in
which **the acts and omissions giving rise to the allegations made in the complaint occurred
and which the at issue employment agreement provides for the venue**.

Dated: New York, New York
     July 12, 2011

          **KAISER SAURBORN & MAIR, P.C.**

     By: _____
           Daniel J. Kaiser, Esq.

          Attorney for plaintiff
          111 Broadway, Suite 1805
          New York, New York 10006
          (212) 338-9100

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------------------------------------X

BOBBY L. MOORE,                                                    **Index No.:**

       Plaintiff,

   -against-                                            **COMPLAINT**

IGPS COMPANY LLC, PEGASUS CAPITAL
ADVISORS LLP, PEGASUS PARTNERS III (AIV), L.P.,
PEGASUS INVESTORS III, L.P., PEGASUS
INVESTORS III GP, L.L.C., PEGASUS IGPS, LLC, IGPS
CO-INVESTMENT LLC, IGPS EMPLOYEE
PARTICIPATION, L.P., IGPS EXECUTIVE (GP) LLC,
PP IV IGPS HOLDINGS, LLC, KELSO, KIA VIII (IGPS),
L.P., KIA VIII (IGPS) GP, L.P., KEP VI AIV (IGPS),
LLC, KELSO GP VIII, LLC, RICH WEINBERG, CRAIG
COGUT, FRANK NICHOLS, and PHIL BERNEY,

       Defendants.
------------------------------------------------------------------------X

      Plaintiff, Bobby L. Moore, by his attorneys Kaiser Saurborn & Mair, P.C., as and

for his complaint against defendants, alleges as follows:

### PARTIES, JURISDICTION, AND NATURE OF ACTION

    1.     Plaintiff, Bobby L. Moore ("plaintiff" or "Moore"), is a former Chairman of the

Board and Chief Executive Officer of IGPS Company LLC.

    2.     Upon information and belief, defendant, IGPS Company LLC ("defendant" or

"IGPS"), is a distributor of plastic pallets authorized to do business under the laws of New York

State.

    3.     Defendant, Pegasus Capital Advisors LLP ("defendant" or "Pegasus" or

collectively with all of the Pegasus related entities "Pegasus Group"), is a private equity firm and

the majority shareholder of IGPS.

4.      Defendant, Pegasus Partners III (AIV), L.P. ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a member and/or partner of Pegasus and a signatory to the LLC.

5.      Defendant, Pegasus Investors III, L.P. ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a general partner of Pegasus Partners III (AIV), L.P. and a signatory to the LLC.

6.      Defendant, Pegasus Investors III GP, L.L.C. ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a general partner of Pegasus Partners III (AIV), L.P. and a signatory to the LLC.

7.      Defendant, Pegasus IGPS, LLC ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a member and /or partner of Pegasus Capital Advisors LLP and a signatory to the LLC.

8.      Defendant, IGPS Co-Investment LLC ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a partner of Pegasus and a signatory to the Sixth Amended and Restated Limited Liability Company Agreement of IGPS Company LLC. ["LLC Agreement"]

9.      Defendant, IGPS Employee Participation, L.P. ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a member and/or partner of Pegasus and a signatory to the LLC.

10.      Defendant, IGPS Executive (GP) LLC ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a general partner of IGPS Employee Participation and a signatory to the LLC.

-2-

11.     Defendant, PP IV IGPS Holdings, LLC ("defendant" or collectively with all of the Pegasus related entities "Pegasus Group"), is a member and/or partner of Pegasus Capital Advisors.

12.     Defendant, Kelso ("defendant" or "Kelso" or collectively with all of the Kelso related entities "Kelso Group"), is a private equity firm and a principle shareholder of IGPS.

13.     Defendant, KIA VIII (IGPS), L.P. ("defendant" or collectively with all of the Kelso related entities "Kelso Group"), is a member and/or partner of Kelso.

14.     Defendant, KIA VIII (IGPS) GP, L.P. ("defendant" or collectively with all of the Kelso related entities "Kelso Group"), is a member and/or partner of Kelso and a signatory to the LLC.

15.     Defendant, KEP VI AIV (IGPS), LLC ("defendant" or collectively with all of the Kelso related entities "Kelso Group"), is a member and/or partner of Kelso and a signatory to the LLC.

16.     Defendant, Kelso GP VIII, LLC ("defendant" or collectively with all of the Kelso related entities "Kelso Group"), is a member and/or partner of Kelso and a signatory of to the LLC.

17.     Defendant, Rich Weinberg ("defendant" or "Weinberg"), is an officer of all the individually named Pegasus entities and the officer who executed the LLC on behalf of the Pegasus Group.

18.     Defendant, Craig Cogut, ("defendant" or "Cogut") is the founder and owner of Pegasus.

19.    Defendant, Frank Nichols ("defendant" or "Nichols") is the Chief Executive Officer of Kelso.

20.    Defendant, Phil Berney ("defendant" or "Berney"), is a partner of Kelso.

21.    Venue is properly laid in this court in that the causes of action arose in New York County and further the at issue employment agreement provides for New York venue.

22.    IGPS breached its employment agreement with Mr. Moore when it failed to compensate him consistent with the terms of his written employment agreement following his termination without cause on May 25, 2011. This breach of contract was directed by defendants, Pegasus, Kelso, and their senior partners and executives, who tortiously interfered with Mr. Moore's employment relationship with IGPS coercing IGPS to materially breach its written contract with Mr. Moore for no legitimate business purpose and to personally benefit themselves. Defendants, Pegasus, Kelso, Cogut, Nichols, and Berney, also breached their fiduciary duty to Mr. Moore by forcing a dilution of his equity stake in IGPS without his consent and employing economic coercion to require Mr. Moore to sign amended LLC agreements that resulted in a dilution of Mr. Moore's equity stake and a corresponding enrichment of their own equity stakes.

23.    Further, defendants, Pegasus Group and Kelso Group, breached the LLC Agreement when they directed that Mr. Moore be terminated falsely for cause and denied him his accumulated equity in IGPS.

24.    Defendants' fraudulent business practices directed at Mr. Moore were typical of a larger pattern and practice of fraud in the manner in which defendants conducted their business affairs.

## BACKGROUND

## I.

### THE CREATION OF IGPS AND THE COMMENCEMENT
### OF MR. MOORE'S IGPS EMPLOYMENT

25.    In August 2005, Mr. Moore met with Mr. Cogut to discuss launching a company

that would distribute plastic pallets with Pegasus providing the principle funding.

26.    In or about October 2005, Mr. Moore and Mr. Cogut agreed to launch IGPS with

Pegasus as the majority shareholder and Mr. Moore assuming the position of IGPS's Chief

Executive Officer and Chairman.

27.    In or about December 2007, Kelso and Pegasus reached a deal allowing Kelso to

invest $250,000,000.00 in IGPS.  Pegasus, at the last possible moment, reneged on the deal, and

Kelso's investment was reduced to $125,000,000.00.

## II.

### IN CONNECTION WITH THE LAUNCH OF IGPS, MR. MOORE WAS
### AWARDED CLASS A NON-PREFERRED SHARES WHICH REPRESENTED A 6.5
### PERCENTAGE OWNERSHIP IN THE COMPANY

28.    In connection with his IGPS employment, Mr. Moore, through the issuance of

class A non-preferred shares, was awarded a 6.5 percent equity stake in IGPS.

29.    Beginning in or about December 2007, as IGPS acquired new investments, the

LLC agreement which set forth the ownership interests of all of the shareholders was amended.

30.    Mr. Moore, along with one or two other senior managers of IGPS, was sent blank

signature pages to the amended LLC agreement to sign.

31.    When Mr. Moore asked for the entire amended LLC agreement so that he could review it along with an attorney, Erica McGrady Johnson, an attorney with the law firm Akin Gump Strauss Hauer & Feld LLP, representing Pegasus and communicating on behalf of Pegasus Group and Kelso Group, refused.

32.    Further, Ms. McGrady Johnson advised him that if he did not return a signed signature page, all funding for IGPS would be cut off.

33.    Mr. Moore, as well as Rex Lowe of IGPS management, had no choice but to sign the signature pages which resulted in the LLC agreement being amended.

34.    The LLC agreement was repeatedly amended in this coerced and fraudulent manner, the most recent amendment occurring in September 2008, resulting in a Sixth Amended LLC Agreement.

35.    In May 2009, Mr. Moore learned that as a consequence of these amendments the cumulative equity stake of IGPS management was fraudulently diluted from twenty to thirteen percent. Mr. Moore's personal equity stake was diluted along with his IGPS senior management colleagues. The equity stakes of defendants, Pegasus and Kelso along with their principles, remained unchanged and undiminished.

36.    On repeated occasions, Pegasus Group and Kelso Group directed the termination of IGPS executives who challenged them on the issue concerning the dilution of IGPS's equity stake in the company.

37.    In May 2010, the management team as a group consulted a law firm that specialized in private equity to attempt to address the fraudulent dilution of their equity stake.

-6-

38.     The law firm composed a demand letter, sent under Mr. Moore's signature, to Pegasus and Kelso that resulted in a meeting to address the issue.

39.     Pegasus Group and Kelso Group agreed to address the inequity by fully allocating management shares to existing management members, and later taking further steps to increase management's equity stake, thereby ultimately restoring IGPS's managers' equity stake to the original agreed to level of twenty percent.

40.     Pegasus Group and Kelso Group never followed through, and at no time, was an agreement executed memorializing the deal that had been reached.

41.     As majority shareholders, defendants, Pegasus Group and Kelso Group, owed a fiduciary duty to Mr. Moore as a minority shareholder.

42.     By their concerted actions to diminish his equity stake in the Company, improperly through deception and coercion, without proportionately diminishing their own stake in the Company, they breached their fiduciary duty to Mr. Moore.

### III.

### MR. MOORE IS TERMINATED AS CEO

43.     In December 2010, Mr. Moore approached the owners of Pegasus and Kelso in an effort to encourage them to finally address the dilution of equity issue.

44.     On December 17, 2010, a meeting was arranged to address the issue. Instead of addressing the issue, Mr. Moore was terminated as CEO.

45.     Two days following his termination, he was replaced as CEO by Steve Marton, a substantially younger executive with no experience as a CEO or, in particular, any executive experience in IGPS' business.

-7-

46.    At the time of his termination, Mr. Moore's original written employment agreement had previously expired.

47.    Mr. Moore was asked to continue his employment as Chairman pending execution of a new written employment agreement.

48.    During one of the many discussions concerning his new employment agreement, defendant, Mr. Berney angrily shouted at Mr. Moore, "You're too old, Bob. You're finished. This is your last gig. You will never work in this supply chain again."

## IV.

## THE NEW EMPLOYMENT AGREEMENT

49.    In early January 2011, an employment agreement was executed between Mr. Moore and IGPS for Mr. Moore to be employed as Chairman of the Company. ["the Agreement"]

50.    The Agreement was for a four-year term ending December 31, 2014.

51.    The Agreement provided that in the event Mr. Moore was terminated without cause during the Agreement's term, Mr. Moore would be entitled to the following payments:

(i)    payment of the Standard Benefit;

(ii)    the Annual Bonus for the year in which the termination occurs, prorated based on the Average Bonus and the number of days worked in the year in which termination occurs, payable by the Company in a lump sum on the first payroll date following the 60th day of termination;

(iii)    continued payment of Base Salary, in accordance with the Company's regular payroll practices, through December 31, 2014 (or the last day of the Extension Term);

(iv)    for as long as the Executive receives continued payments of Base Salary, the Executive also will receive payments, on the same payment schedule as Base Salary, equal to the Average Bonus, pro-rated based on the Base Salary payment schedule (e.g., if Base

Salary is paid monthly, each such payment will include an amount equal to one twelfth of the Average Bonus) (the *"Bonus Payment"*); and

(v)     for so long as the Executive receives continued payments of Base Salary (but in no event longer than 18 months), continued participation at the Company's expense for the Executive and each of the Executive's dependents in all medical, dental, hospitalization and other employee welfare benefit plans, programs and arrangements covered by COBRA in which  each such dependent was participating as of the date of the Executive's termination (the *"COBRA Payment"*), provided, that such company-paid benefits would not cause the imposition of any tax under Section 4980D of the Code, in which case the parties agree to negotiate in good faith towards an alternative arrangement for providing such benefits which does not cause the imposition of such tax.

52.     At the time the Agreement was executed, Mr. Moore owned the following vested and unvested shares of IGPS:

| "A Class Shares" | 32,000,000 shares | Fully vested |
|---|---|---|
| "E Class Shares" | 32,500,000 shares | Fully vested |
| "F Class Shares" | 12,000,000 shares | Fully vested |

[10,000,000 vested if terminated without cause]

| "Preferred Shares" | 11,410,000 shares | Fully vested |
|---|---|---|

53.     The Agreement defined "Cause" as follows:

*"Cause"* means:

(i)     willful refusal by the Executive to substantially perform, or a material breach by the Executive of, his employment-related duties and responsibilities (other than as a result of Disability) which is not remedied within ten days after receipt of written notice from the Company Board specifying such breach;

(ii)     willful misconduct or breach of a fiduciary duty by the Executive;

-9-

(iii)   the Executive's conviction of, or plea of guilty or <u>nolo contendere</u> to, a crime involving moral turpitude or constituting a felony;

(iv)   any act of dishonesty by the Executive that is detrimental in material respect to the interests of the Company;

(v)   failure by the Executive to follow the lawful directives of the Company Board, which directives are consistent with the Executive's duties and responsibilities hereunder which is not remedied within ten days after receipt of written notice from the Company Board specifying each breach; or

(vi)   the Executive's breach or material default under any provision of this Agreement which is not remedied within ten days after receipt of written notice from the Company specifying such breach or material default.

## V.

## MR. MOORE IS TERMINATED WITHOUT CAUSE

54.   Within three weeks of executing the Agreement, Mr. Moore was forced from his office at IGPS and directed not to contact customers, vendors, employees, or lenders.

55.   Mr. Moore was provided no explanation for this directive which so diminished his role within IGPS that it constituted a material breach of the Agreement.

56.   He was advised that IGPS would contact him with a plan moving forward.

57.   On May 10, 2011, Mr. Berney contacted Mr. Moore to advise him that he would be terminated for cause.

58.   On May 25, 2011, Mr. Moore was sent a letter by Stephen M. Baldini, Esq., attorney for IGPS, terminating his employment for cause.

59.   The termination letter provided no details or explanation concerning the basis for IGPS' for cause termination of Mr. Moore's employment.

-10-

60.     Upon information and belief, any reasons utilized by the Company to justify Mr. Moore's for cause termination were known to IGPS, and certain of its principle shareholders and IGPS Executives, prior to executing the Agreement with Mr. Moore.

61.     Upon information and belief, defendants fraudulently induced Mr. Moore to execute the Agreement with full knowledge that they intended to direct his firing for cause for the express purpose of committing him to written non-competition and non-solicitation promises contained within the Agreement. At the time the Agreement was executed, Mr. Moore was not bound by any restrictive covenants.

62.     The Company had no legitimate business rationale for Mr. Moore's termination. In fact, IGPS was materially injured by his termination since, as the foremost expert on pallets in the world, the Company would no longer benefit from his expert Executive leadership. Further, he was replaced by an executive with only a fraction of his experience and skill set.

63.     Mr. Moore's termination was without cause.

64.     Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg fraudulently conspired with one another and jointly directed the Company to terminate Mr. Moore for cause thereby jointly directing the material breach of the Agreement.

65.     Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg knew at the time that they conspired with each other and jointly directed Mr. Moore to be terminated for cause no cause existed for his termination.

66.     Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg personally benefitted from Mr. Moore's termination for cause in so far as Mr. Moore was

deprived of all his equity and these defendants increased the value of their ownership interest in
IGPS as a direct consequence of Mr. Moore's termination.

67.    Mr. Moore has been paid none of the compensation owed to him under the
Agreement, including being entirely deprived of the value of all of his equity, as a consequence
of his termination.

68.    Further, Mr. Moore, sixty-three years old, was terminated because of his age.

69.    Defendant, IGPS, terminated, and/or caused his termination, in reckless disregard
of his civil rights under New York State and New York City Human Rights statutes.

70.    Defendants' conduct has had a continuing impact on plaintiff.

## CAUSE OF ACTION I

71.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through
"70" as if incorporated and realleged herein.

72.    Defendant, IGPS, materially breached the Agreement, within weeks of execution
of the Agreement, by so diminishing his corporate role and function that he was effectively
removed from IGPS and then failing to pay Mr. Moore the compensation owed to him under the
Agreement as a consequence of his termination.

73.    By reason thereof, plaintiff has been damaged in an amount to be determined at
trial, including, but not limited to, all of the compensation delineated in paragraph "51" and "52"
of the Complaint and additionally all of his accumulated equity at the time of his termination,
none of which has been paid to him.

-12-

## CAUSE OF ACTION II

74.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

75.    Defendants, Pegasus Group, Kelso Group, Cogut, and Nichols tortiously interfered with the Agreement, without any legitimate business rationale, by directing IGPS to materially breach the Agreement and for the purpose of enriching their own equity stake in IGPS at Mr. Moore's expense.

76.    Further, defendants acted maliciously to punish Mr. Moore for asserting his legitimate legal rights in connection with dilution of his equity stake in the Company.

77.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, all of the compensation delineated in paragraphs "51" and "52" of the Complaint.

## CAUSE OF ACTION III

78.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

79.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg as majority shareholders of IGPS and as the principles of those majority shareholders, acted in concert to breach their fiduciary duty to Mr. Moore when, through deception and coercion, they forced a dilution of Mr. Moore's equity stake in IGPS from 6.5 to 1.1 percent of the Company.

80.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value differential between Mr. Moore's original equity stake and his diluted equity stake.

-13-

## CAUSE OF ACTION IV

81.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

82.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg as majority shareholders of IGPS and as the principles of those majority shareholders, acted in concert to breach their fiduciary duty to Mr. Moore when they directed his discharge from the position of Chairman for cause when they knew no cause existed and that his termination could harm IGPS in order to strip him of his accumulated equity stake in IGPS and thereby enrich their own equity stakes.

83.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION V

84.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

85.    Defendants fraudulently induced plaintiff into executing the Agreement.

86.    Defendants misrepresented to him that they desired him to continue in the role of Chairman when in fact they had decided prior to execution of the Agreement that they would seek his removal from any role in IGPS.

87.    Within weeks of executing the Agreement, defendants already implemented actions to remove him from IGPS.

-14-

88.     Mr. Moore reasonably relied, to his detriment, upon defendants' representations that they wanted him to remain employed as Chairman of IGPS through the four-year term of the new agreement.

89.     Defendants' motivation for executing the Agreement was to secure a written non-competition and non-solicitation agreement from Mr. Moore that they believed they could rely upon following his removal from IGPS.

90.     By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION VI

91.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

92.     Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nichols, and Weinberg conspired to commit fraud against Mr. Moore, through deception, coercion, and misrepresentation, by diluting, and ultimately eliminating, his equity stake in IGPS and, correspondingly, enriching their own equity stakes in IGPS.

93.     By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's entire equity stake at the time of his termination.

## CAUSE OF ACTION VII

94.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

-15-

95.    Defendants, Pegasus Group and Kelso Group, breached the Sixth Amended LLC Agreement by falsely directing Mr. Moore's termination for cause, thereby denying him his contractual entitlement to his vested equity as per the terms of the Sixth Amended LLC Agreement.

96.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION VIII

97.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

98.    Defendant, IGPS, breach the implied covenant of good faith and fair dealing that is contractually a part of the Agreement when prior to executing the Agreement, IGPS knew it intended to remove Mr. Moore from his Chairman role and function following execution of the Agreement and ultimately terminate Mr. Moore's employment for cause.

## CAUSE OF ACTION IX

99.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "70" and "72" as if incorporated and realleged herein.

100.    Defendant, IGPS, discriminated against Mr. Moore because of his age.

101.    By reason thereof, defendants have violated New York City Administrative Code §8-502(a), and as a consequence, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, lost past and future earnings, other employment benefits, and emotional injuries.

-16-