(iv)    for as long as the Executive receives continued payments of Base Salary, the Executive also will receive payments, on the same payment schedule as Base Salary, equal to the Average Bonus, pro-rated based on the Base Salary payment schedule (e.g., if Base Salary is paid monthly, each such payment will include an amount equal to one twelfth of the Average Bonus) (the *"Bonus Payment"*); and

(v)    for so long as the Executive receives continued payments of Base Salary (but in no event longer than 18 months), continued participation at the Company's expense for the Executive and each of the Executive's dependents in all medical, dental, hospitalization and other employee welfare benefit plans, programs and arrangements covered by COBRA in which  each such dependent was participating as of the date of the Executive's termination (the *"COBRA Payment"*), provided, that such company-paid benefits would not cause the imposition of any tax under Section 4980D of the Code, in which case the parties agree to negotiate in good faith towards an alternative arrangement for providing such benefits which does not cause the imposition of such tax.

61.    At the time the Agreement was executed, Mr. Moore owned the following vested and unvested shares of IGPS:

| | | |
|---|---|---|
| "A Class Shares" | 32,500,000 shares | Fully vested |
| "E Class Shares" | 32,500,000 shares | Fully vested |
| "F Class Shares" | 12,000,000 shares | Fully vested |
| [10,000,000 vested if terminated without cause] | | |
| "Preferred Shares" | 11,410,000 shares | Fully vested |

62.    The Agreement defined "Cause" as follows:

*"Cause"* means:

(i)    willful refusal by the Executive to substantially perform, or a material breach by the Executive of, his employment-related duties and responsibilities (other than as a result of Disability) which is not remedied within ten days after receipt of written notice from the Company Board specifying such breach;

(ii)    willful misconduct or breach of a fiduciary duty by the
Executive;

(iii)    the Executive's conviction of, or plea of guilty or <u>nolo
contendere</u> to, a crime involving moral turpitude or constituting a
felony;

(iv)    any act of dishonesty by the Executive that is detrimental in
material respect to the interests of the Company;

(v)    failure by the Executive to follow the lawful directives of
the Company Board, which directives are consistent with the
Executive's duties and responsibilities hereunder which is not
remedied within ten days after receipt of written notice from the
Company Board specifying each breach; or

(vi)    the Executive's breach or material default under any
provision of this Agreement which is not remedied within ten days
after receipt of written notice from the Company specifying such
breach or material default.

## V.

## MR. MOORE IS TERMINATED WITHOUT CAUSE

63.    Within three weeks of executing the Agreement, Mr. Moore was forced from his

office at IGPS and directed not to contact customers, vendors, employees, or lenders.

64.    Mr. Moore was provided no explanation for this directive which so diminished his

role within IGPS that it constituted a material breach of the Agreement.

65.    He was advised that IGPS would contact him with a plan moving forward.

66.    Defendants never intended for Mr. Moore's employment to continue beyond his

termination as IGPS'S CEO.

67.    The new employment agreement was a ruse to bind him to a written non-

compete and non-solicitation agreement secured through express misrepresentations

communicated to him by Mr. Weinberg and Mr. Berney.

-11-

68.    On May 10, 2011, Mr. Berney contacted Mr. Moore to advise him that he would be terminated for cause.

69.    On May 25, 2011, Mr. Moore was sent a letter by Stephen M. Baldini, Esq., attorney for IGPS, terminating his employment for cause.

70.    The termination letter provided no details or explanation concerning the basis for IGPS' for cause termination of Mr. Moore's employment.

71.    Upon information and belief, any reasons utilized by the Company to justify Mr. Moore's for cause termination were known to IGPS, and certain of its principle shareholders and IGPS Executives, prior to executing the Agreement with Mr. Moore.

72.    Upon information and belief, defendants fraudulently induced Mr. Moore to execute the Agreement with full knowledge that they intended to direct his firing for cause for the express purpose of committing him to written non-competition and non-solicitation promises contained within the Agreement. At the time the Agreement was executed, Mr. Moore was not bound by any restrictive covenants.

73.    The Company had no legitimate business rationale for Mr. Moore's termination. In fact, IGPS was materially injured by his termination since, as the foremost expert on pallets in the world, the Company would no longer benefit from his expert Executive leadership. Further, he was replaced by an executive with only a fraction of his experience and skill set.

74.    Mr. Moore's termination was without cause.

75.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nickell, and Weinberg fraudulently conspired with one another and jointly directed the Company to terminate Mr. Moore for cause thereby jointly directing the material breach of the Agreement.

76.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nickell, and Weinberg knew at the time that they conspired with each other and jointly directed Mr. Moore to be terminated for cause no cause existed for his termination.

77.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nickell, and Weinberg personally benefitted from Mr. Moore's termination for cause in so far as Mr. Moore was deprived of all his equity and these defendants increased the value of their ownership interest in IGPS as a direct consequence of Mr. Moore's termination.

78.    Mr. Moore has been paid none of the compensation owed to him under the Agreement, including being entirely deprived of the value of all of his equity, as a consequence of his termination.

79.    Defendants' conduct has had a continuing impact on plaintiff.

## VI.

**MR. WEINBERG CONCEDED AT HIS DEPOSITION ON JUNE 20,2012 THAT IGPS TERMINATED MOST OF MR. MOORE'S VESTED UNITS AT THE TIME OF HIS TERMINATION, CONFIRMED BY A SUBSEQUENT WRITING, DESPITE AN EXPRESS CONTRACTUAL AGREEMENT THAT HE RETAN THOSE UNITS AT THE TIME OF HIS TERMINATION**

80.    Mr. Moore's Employment Agreement provides at par. 8(f) (i):

> All vested Units owned by the Executive at the time of his termination of employment shall remain in full force and effect and shall be subject to the terms of the LLC Agreement.
>
> .

81.    The Employment agreement in paragraphs that follow par. 8(f) (i) details the fate of Mr. Moore's unvested shares under various circumstances and termination scenarios.

-13-

82.    The Employment Agreement, however, is unambiguous that Mr. Moore retains his vested Units at the time of his termination.

83.    Mr. Moore owned 32,500,000 vested units of Common A Class Shares, 32,500,000 vested common E class units, 2,000,000 common vested F shares, and  1,500,000 preferred A units and 666,667 preferred B units at the time of his May 25, 2011 termination.

84.    Mr. Weinberg testified at his deposition that the IGPS Board of Managers decided to terminate all of Mr. Moore's vested units at the time of his termination, except for his Preferred units.

85.    Mr. Weinberg, a licensed attorney, supervised the drafting of the Employment Agreement.

86.    When asked why Mr. Moore's vested units were terminated in view of par. 8(f)(i)  of the Employment Agreement, Mr. Weinberg testified that he did not know.

87.    The termination of  Mr. Moore's vested units by IGPS was a material breach of Mr. Moore's Employment Agreement.

88.    On March 17, 2012, more than two months prior to Mr. Moore's termination, executives of Pegasus authored a report concerning IGPS management's proposed equity entitlements.

89.    In that report, Mr. Moore is shown to own zero percent of IGPS.

90.    On  September 13, 2012 a document provided by defendants in discovery confirmed that all of Mr. Moore's vested equity was terminated on May 26, 2011.

91.    Defendants in material breach of the Employment Agreement, and without any authority, misappropriated Mr. Moore's vested units of IGPS equity.

92.    By terminating Mr. Moore's vested units Kelso Group and Pegasus Group also breached the LLC Agreement.

93.    The LLC Agreement is the governing document for all unit holders and defines rights and obligations of all units holders.

94.    Mr. Moore was entitled as per the express terms of the LLC Agreement to retain ownership of his vested units following his termination.

95.    Termination of his vested units materially breached the LLC Agreement.

## VII

## PEGASUS GROUP AND KELSO GROUP BREACHED ITS AGREEMENTS WITH PLAINTIFF BY FAILING TO SCALE UP HIS PREFRRED UNITS HOLDINGS AT THE TIME OF KESLO'S INVESTMENT IN IGPS

96.    At the time Kelso invested in IGPS, in December 2008, the existing preferred shareholders, Pegasus and Mr. Moore, were entitled to an increase in their preferred units holding by one and one half times.

97.    Mr. Moore's preferred units holdings were never increased by one and one half times although Pegasus' preferred units were increased by one and one half times.

98.    Defendants failure to increase Mr. Moore's preferred units holdings constituted a material breach of the LLC Agreement and all related agreements between Kelso and the existing preferred shareholders at the time of Kelso's investment.

## VIII.

## DEFENDANTS MATERIALLY BREACHED THE TERMS OF THE LLC AGREEMENT BY TERMINATING MR. MOORE'S EMPLOYMENT CONTRARY TO THE EXPRESS TERMS OF THE LLC AGREEMENT

99.     As per the express terms of the LLC Agreement at Section 5.11, the only entity with the authority to terminate Mr. Moore as either CEO or Chairman of IGPS was the IGPS Board of Managers.

100.     As per the express terms of the LLC Agreement, the Board of Managers may act during Board of Managers meetings. The Board of Managers may act outside of Board of Managers meetings if, and only if, a majority of the Board consents in writing and the writing is filed with the minutes of a Board of Managers meeting prior to the action being taken:

> Any action required or permitted to be taken at any meeting of the Board…may be taken without a meeting, if a majority of the Board…..consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board……

101.     When Mr. Moore was removed as CEO the Board of Managers did not hold a meeting to authorize his removal.

102.     A majority of the IGPS Board did not create written authorization for the removal action and did not file such writing with the minutes of a Board of Managers meeting prior to implementing the action.

103.     Mr. Moore was removed by Richard Weinberg of the Pegasus Group and Phil Berney of the Kelso Group, without Board Authorization, in material breach of the express terms of the LLC Agreement.

-16-

104.     The Board of Managers did not hold a meeting to terminate Mr. Moore as IGPS Executive Chairman.

105.      A majority of the Board did not create written authorization for the termination action and did not file such writing with the minutes of a Board of Managers meeting prior to implementing the action.

106.      Mr. Moore was terminated by Richard Weinberg of the Pegasus Group and Phil Berney of the Kelso Group, without Board of Managers authorization, in material breach of the express terms of the LLC Agreement.

## CAUSE OF ACTION I

107.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106" as if incorporated and realleged herein.

108.     Defendant, IGPS, materially breached the Agreement, within weeks of execution of the Agreement, by so diminishing his corporate role and function that he was effectively removed from IGPS and then failing to pay Mr. Moore the compensation owed to him under the Agreement as a consequence of his termination.

109.     By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, all of the compensation delineated in paragraph "60" and "61" of the Complaint and additionally all of his accumulated equity at the time of his termination, none of which has been paid to him.

## CAUSE OF ACTION II

110.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106" and "108" as if incorporated and realleged herein.

111.    Defendants, Pegasus Group, Kelso Group, Cogut, Nickell, Weinberg, and Berney tortiously interfered with the Agreement, without any legitimate business rationale, by directing IGPS to materially breach the Agreement and for the purpose of enriching their own equity stake in IGPS at Mr. Moore's expense.

112.    Further, defendants acted maliciously to punish Mr. Moore for asserting his legitimate legal rights in connection with dilution of his equity stake in the Company.

113.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, all of the compensation delineated in paragraphs "60" and "61" of the Complaint.

## CAUSE OF ACTION III

114.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" as if incorporated and realleged herein.

115.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nickell, and Weinberg as majority shareholders of IGPS and as the principles of those majority shareholders, acted in concert to breach their fiduciary duty to Mr. Moore when, through deception and coercion, they forced a dilution of Mr. Moore's equity stake in IGPS from 6.5 to 1.1 percent of the Company.

116.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value differential between Mr. Moore's original equity stake and his diluted equity stake.

## CAUSE OF ACTION IV

-18-

117.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112," and "115" as if incorporated and realleged herein.

118.    Defendants, Pegasus Group, Kelso Group, Cogut, Berney, Nickell, and Weinberg as majority shareholders of IGPS and as the principles of those majority shareholders, acted in concert to breach their fiduciary duty to Mr. Moore when they directed his discharge from the position of Chairman for cause when they knew no cause existed and that his termination could harm IGPS in order to strip him of his accumulated equity stake in IGPS and thereby enrich their own equity stakes.

119.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION V

120.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112," "115," "118." as if incorporated and realleged herein.

121.    Mr. Berney and Mr. Weinberg fraudulently induced plaintiff into executing the Agreement.

122.    Mr. Berney and Mr. Weinberg misrepresented to him that they desired him to continue in the role of Chairman and that they required his continued services to grow IGPS's customer base and IGPS' revenue when in fact they already knew at the time the misrepresentations were made Mr. Moore would under no circumstances remain as IGPS's Chairman.

123.    Mr. Moore reasonably relied, to his detriment, upon defendants' false representations that they wanted him to remain employed as Chairman of IGPS through the four-year term of the new agreement.

124.    Messrs. Berney and Weinberg's  motivation for making the misrepresentations was to secure written non-compete and non-solicitation clauses, that did not exist relative to Mr. Moore's employment at the time the misrepresentations were made, that they believed IGPS could rely upon following Mr. Moore's removal from IGPS.

125.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION VI

126.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108," and "111-112,"  "115," "118," "121"-"124," as if incorporated and realleged herein.

127.    Defendants, Messrs. Weinberg and Berney, conspired to defraud Mr. Moore, through misrepresentation, and fraudulently inducing him into signing an employment agreement containing the desired written restrictive covenants.

128.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's entire equity stake at the time of his termination.

## CAUSE OF ACTION VII

129.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112," "115  "118 -"121,"- "124" "127" as if incorporated and realleged herein.

130.    Defendants, Pegasus Group and Kelso Group, breached the Sixth Amended LLC Agreement by falsely directing Mr. Moore's termination for cause, thereby denying him his contractual entitlement to his vested equity as per the terms of the Sixth Amended LLC Agreement.

131.    By reason thereof, plaintiff has been damaged in an amount to be determined at trial, including, but not limited to, the value of Mr. Moore's equity stake at the time of his termination.

## CAUSE OF ACTION VIII

132.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" "115," "118-121," "124," - "127" as if incorporated and realleged herein.

133    Defendant, IGPS, breach the implied covenant of good faith and fair dealing that is contractually a part of the Agreement when prior to executing the Agreement, IGPS knew it intended to remove Mr. Moore from his Chairman role and function following execution of the Agreement and ultimately terminate Mr. Moore's employment for cause.

## CAUSE OF ACTION IX

134.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" "115," "118-121," "124," - "127," "133"  as if incorporated and realleged herein.

135.    By terminating Mr. Moore's vested units at the time of this termination, IGPS materially breached the express terms of the Employment Agreement.

136.    By reason thereof, plaintiff has been damaged in an amount equal to the value of his vested units at the time of his termination and in an amount to be determined at trial.

## CAUSE OF ACTION X

137.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" "115," "118-121," "124,"- "127," "133," and "135" as if incorporated and realleged herein.

138.    By replacing Mr. Moore as CEO and terminating Mr. Moore's employment as Chairman in direct contravention of the terms of the LLC Agreement, Pegasus Group and Kelso Group materially breached the terms of the LLC Agreement.

139.    By reason thereof, plaintiff has been damaged in an amount equal to his salary and bonus owed since the date of his termination, the value of all unvested units that would have vested in the time period since his termination, and other related employment benefits, and in an amount to be determined at trial.

## CAUSE OF ACTION XI

140.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" "115," "118-121," "124,"- "127,"  "133," ""135," and "138" as if incorporated and realleged herein.

141.    By terminating Mr. Moore's vested shares, Pegasus Group and Kelso Group materially breached the terms of the LLC Agreement.

142.    By reason thereof, plaintiff has been damaged in an amount equal to the value of his vested units at the time of his termination and in an amount to be determined at trial.

**CAUSE OF ACTION XII**

143.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "106," "108" and "111-112" "115," "118-121," "124,"- "127," "133," "135," and "138." as if incorporated and realleged herein.

144.    By failing to scale up his preferred shares one and one half times Pegasus Group and Kelso Group materially breached the LLC Agreement and agreements between Kelso and the remaining preferred shareholders to scale up their preferred units holdings at the time of the Kelso investment.

145.    By reason thereof, plaintiff has been damaged in an amount equal to the value of his preferred units not properly delivered in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands judgment against defendants as follows:

(i)    On the First Cause of Action assessing compensatory damages in an amount to be determined at trial;

(ii)    On the Second Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(iii)    On the Third Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

-23-

(iv)     On the Fourth Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(v)     On the Fifth Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(vi)     On the Sixth Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial

(vii)     On the Seventh Cause of Action assessing compensatory damages in an amount to be determined at trial;

(viii)     On the Eighth Cause of Action assessing compensatory damages in an amount to be determined at trial;

(ix)     On the Ninth Cause of Action assessing compensatory damages in an amount to be determined at trial;

(x)     On the Tenth Cause of Action assessing compensatory damages in an amount to be determined at trial;

(xi)     On the Eleventh Cause of Action assessing compensatory damages in an amount to be determined at trial;

(xii)     On the Twelfth Cause of Action assessing compensatory damages in an amount to be determined at trial;

(xiii)     In connection with Causes of Action One through Nine for a Court Order requiring a full accounting of Mr. Moore's equity in IGPS, declaring the value of Mr. Moore's equity holdings in IGPS, and ordering the reinstatement of the full value of his original equity holdings as of the date of the breach and tortious conduct ;

(xiv)    Attorney fees and disbursements; and

(xv)    For such other relief as the Court deems just and proper.

Dated: New York, New York
October 2, 2012

**KAISER SAURBORN & MAIR, P.C.**

By: _____
Daniel J. Kaiser, Esq.

Attorney for plaintiff
111 Broadway, Suite 1805
New York, New York 10006
(212) 338-9100

-25-

FILED: NEW YORK COUNTY CLERK 06/07/2013
NYSCEF DOC. NO. 82
INDEX NO. 651907/2011
RECEIVED NYSCEF: 06/07/2013
95-88888-cgm    Doc 13-4    Filed 12/31/13    Entered 01/08/14 12:52:02    ntcrem.3
Pg 17 of 40

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| BOBBY L. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | ) Index No. 651907/2011 |
| | ) |
| IGPS Company LLC, Pegasus Capital | ) **ANSWER AND AFFIRMATIVE** |
| Advisors LLP, Pegasus Partners III (AIV), L.P., | ) **DEFENSES** |
| Pegasus Investors III, L.P., Pegasus Investors | ) |
| III GP, L.L.C., Pegasus IGPS, LLC, IGPS Co- | ) |
| Investment LLC, IGPS Employee | ) |
| Participation, L.P., IGPS Executive (GP) LLC, | ) |
| PP IV IGPS Holdings, LLC, Kelso & | ) |
| Company, KIA VIII (IGPS), L.P., KIA VIII | ) |
| (IGPS) GP, L.P., KEP VI AIV (IGPS), LLC, | ) |
| Kelso GP VIII,  LLC, Rich Weinberg, Craig | ) |
| Cogut, Frank Nickell, and Phil Berney, | ) |
| | ) |
| Defendants. | ) |

Defendants iGPS Company LLC, Pegasus Capital Advisors LLP, Pegasus Partners III

(AIV), L.P., Pegasus Investors III, L.P., Pegasus Investors III GP, L.L.C., Pegasus iGPS, LLC,

iGPS Co-Investment LLC, iGPS Employee Participation, L.P., iGPS Executive (GP) LLC, PP IV

iGPS Holdings, LLC, Kelso & Company, KIA VIII (iGPS), L.P., KIA VIII (iGPS) GP, L.P., KEP

VI AIV (iGPS), LLC, Kelso GP VIII, LLC, Rich Weinberg, Craig Cogut, Frank Nickell, and Phil

Berney (cumulatively, the "***Defendants***"), by and through their undersigned attorney, Akin Gump

Strauss Hauer & Feld LLP, respond to the Second Amended Complaint filed by plaintiff Bobby

L. Moore ("Moore") or ("Plaintiff") according to the numbered paragraphs herein.  Defendants

deny each allegation of the Second Amended Complaint not expressly admitted, and respond as

follows:

## PARTIES, JURISDICTION, AND NATURE OF ACTION

1. Defendants admit the allegations contained in paragraph 1 of the Second Amended
   Complaint.

2. Defendants admit the allegations contained in paragraph 2 of the Second Amended
   Complaint, except that defendant iGPS Company LLC ("iGPS") filed a Chapter 11 petition
   for bankruptcy relief on June 4, 2013.

3. Defendants admit the allegations contained in paragraph 3 of the Second Amended
   Complaint to the extent that Pegasus IGPS LLC owns 12.55% of the Preferred Units of
   iGPS, as stated in the Chapter 11 bankruptcy petition filed by defendant IGPS on June 4,
   2013.

4. Defendants admit the allegations contained in paragraph 4 of the Second Amended
   Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

5. Defendants admit the allegations contained in paragraph 5 of the Second Amended
   Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

6. Defendants admit the allegations contained in paragraph 6 of the Second Amended
   Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

7. Defendants admit the allegations contained in paragraph 7 of the Second Amended
   Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

8. Defendants admit the allegations contained in paragraph 8 of the Second Amended
   Complaint.

9. Defendants admit the allegations contained in paragraph 9 of the Second Amended
   Complaint to the extent that "the LLC" refers to the Sixth Amended LLC Agreement dated
   April 15, 2009.

10. Defendants admit the allegations contained in paragraph 10 of the Second Amended
    Complaint to the extent that "the LLC" refers to the Sixth Amended LLC Agreement dated
    April 15, 2009.

11. Defendants admit the allegations contained in paragraph 11 of the Second Amended
    Complaint.

12. Defendants deny the allegations contained in paragraph 12 of the Second Amended
    Complaint. Kelso & Co is not a principle shareholder of iGPS. However, Defendants admit
    that KIA VIII (iGPS Sub), LLC and KIA VIII iGPS Blocker, LLC collectively own 43.1%
    of the Preferred Units of iGPS, as stated in the Chapter 11 bankruptcy petition filed by
    defendant IGPS on June 4, 2013.

13. Defendants admit the allegations contained in paragraph 13 of the Second Amended
    Complaint.

14. Defendants admit the allegations contained in paragraph 14 of the Second Amended
    Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

15. Defendants admit the allegations contained in paragraph 15 of the Second Amended
    Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

16. Defendants admit the allegations contained in paragraph 16 of the Second Amended
Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006.

17. Defendants admit the allegations contained in paragraph 17 of the Second Amended
Complaint to the extent that "the LLC" refers to the LLC Agreement dated May 15, 2006
and to the extent that Richard Weinberg is a Senior and Co-Managing Partner at Pegasus
Capital Advisors, LP.

18. Defendants admit the allegations contained in paragraph 18 of the Second Amended
Complaint to the extent that Craig Cogut is a founder a Co-Managing Partner at Pegasus
Capital Advisors, LP.

19. Defendants admit the allegations contained in paragraph 19 of the Second Amended
Complaint to the extent that Frank Nickell is the Chief Executive Officer and Chairman of
the Board of Kelso & Co.

20. Defendants admit the allegations contained in paragraph 20 of the Second Amended
Complaint to the extent that Philip Berney is a Principal at Kelso & Co.

21. Paragraph 21 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants admit that Section 14 of Moore's Chairman Employment
Agreement and Chief Executive Officer Employment Agreement provide for the application
of the laws of the State of New York to enforce and construe the Employment Agreements
and provide that any dispute or controversy arising under or in connection with the
Employment Agreements shall be settled exclusively by the state and/or Federal Courts in
the City, County and State of New York.

4

22. Paragraph 22 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 22 of the Second Amended Complaint.

23. Paragraph 23 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 23 of the Second Amended Complaint.

24. Paragraph 24 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 24 of the Second Amended Complaint.

## BACKGROUND

### I.

25. Defendants admit the allegations contained in paragraph 25 of the Second Amended Complaint.

26. Defendants admit the allegations contained in paragraph 26 of the Second Amended Complaint but deny that Mr. Moore and Mr. Cogut agreed that Mr. Moore would assume the position as Chief Executive Officer and Chairman. Moore's initial position at iGPS was as Chief Executive Officer.

27. Defendants deny the allegations contained in paragraph 27 of the Second Amended Complaint.

5

## II.

28. Defendants admit the allegations contained in paragraph 28 of the Second Amended
Complaint.

29. Defendants admit that the Fourth Amended and Restated LLC Agreement was executed on
December 5, 2007.

30. Defendants deny the allegations contained in paragraph 30 of the Second Amended
Complaint.

31. Paragraph 31 was stricken by the Court in its order on April 9, 2013 on Defendants' Partial
Motion to Dismiss The Second Amended Complaint, and as such no response is required.
To the extent a response is required, Defendants deny all of the factual allegations contained
in paragraph 31 of the Second Amended Complaint.

32. Paragraph 32 was stricken by the Court in its order on April 9, 2013 on Defendants' Partial
Motion to Dismiss The Second Amended Complaint, and as such no response is required.
To the extent a response is required, Defendants deny all of the factual allegations contained
in paragraph 32 of the Second Amended Complaint.

33. Paragraph 33 was stricken by the Court in its order on April 9, 2013 on Defendants' Partial
Motion to Dismiss The Second Amended Complaint, and as such no response is required.
To the extent a response is required, Defendants deny all of the factual allegations contained
in paragraph 33 of the Second Amended Complaint.

34. Paragraph 34 was stricken by the Court in its order on April 9, 2013 on Defendants' Partial
Motion to Dismiss The Second Amended Complaint, and as such no response is required.
To the extent a response is required, Defendants admit that the LLC Agreement was
amended several times and the Sixth Amended and Restated LLC Agreement was executed
on April 15, 2009; Defendants deny the allegations that the LLC agreement was amended in
a coercive or fraudulent manner.

35. Defendants deny the allegations contained in paragraph 35 of the Second Amended
Complaint.

36. Defendants deny the allegations contained in paragraph 36 of the Second Amended
Complaint.

37. Defendants deny knowledge or information sufficient to form a belief as to the truth of the
allegations in paragraph 37 of the Second Amended Complaint.

38. Defendants deny the allegations in paragraph 38 of the Second Amended Complaint.

39. Defendants deny knowledge or information sufficient to form a belief as to the truth of the
allegations in paragraph 39 of the Second Amended Complaint, but admit that Chris Collins
sent Moore an email on May 22, 2010 which includes, among other language and in a
different context, the language paraphrased in paragraph 39 of the Second Amended
Complaint.

40. Defendants deny the allegations contained in paragraph 40 of the Second Amended
Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Second Amended
Complaint.

42. Paragraph 42 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
42 of the Second Amended Complaint.

43. Paragraph 43 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
43 of the Second Amended Complaint.

### III.

44. Defendants admit that Moore contacted Pegasus and Kelso regarding his concerns about his
equity stake in iGPS in December 2010.

45. Defendants admit that Moore was transitioned from CEO of iGPS to a new position as
Chairman of the Board in December 2010. Defendants deny all other factual allegations
contained in paragraph 45 of the Second Amended Complaint.

46. Defendants deny the allegations contained in paragraph 46 of the Second Amended
Complaint.

47. Defendants admit the allegations contained in paragraph 47 of the Second Amended
Complaint.

8

48. Defendants deny the allegations contained in paragraph 48 of the Second Amended
    Complaint, but admit that in January 2011 Moore executed the Chairman Employment
    Agreement.

49. Defendants admit the allegations contained in paragraph 49 of the Second Amended
    Complaint.

50. Defendants deny the allegations contained in paragraph 50 of the Second Amended
    Complaint, but admit that admit that Moore was asked to take on a new role as Chairman of
    iGPS.

51. Defendants deny the allegations contained in paragraph 51 of the Second Amended
    Complaint.

52. Defendants deny the allegations contained in paragraph 52 of the Second Amended
    Complaint.

53. Defendants deny the allegations contained in paragraph 53 of the Second Amended
    Complaint.

54. Defendants deny the allegations contained in paragraph 54 of the Second Amended
    Complaint.

55. Paragraph 55 contains conclusions of law to which no response is required. To the extent a
    response is required, Defendants deny all of the factual allegations contained in paragraph
    55 of the Second Amended Complaint.

9

56. Defendants deny the allegations contained in paragraph 56 of the Second Amended
Complaint.

57. Defendants deny the allegations contained in paragraph 57 of the Second Amended
Complaint.

**IV.**

58. Defendants admit the allegations contained in paragraph 58 of the Second Amended
Complaint.

59. Defendants admit the allegations contained in paragraph 59 of the Second Amended
Complaint.

60. The allegations contained in paragraph 60 of the Second Amended Complaint refer to and
paraphrase Section 8(d) of the Chairman Employment Agreement. The document speaks for
itself.

61. Moore's ownership shares are documented in the Sixth Amended and Restated LLC
Agreement dated April 15, 2009. The document speaks for itself.

62. The allegations contained in paragraph 62 of the Second Amended Complaint refer to and
paraphrase Section 1(e) of the Chairman Employment Agreement. The document speaks for
itself.

**V.**

63. Defendants deny the allegations contained in paragraph 63 of the Second Amended
Complaint.

10

64. Defendants deny the allegations contained in paragraph 64 of the Second Amended Complaint.

65. Defendants deny the allegations contained in paragraph 65 of the Second Amended Complaint.

66. Defendants deny the allegations contained in paragraph 66 of the Second Amended Complaint.

67. Paragraph 67 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 67 of the Second Amended Complaint.

68. Defendants deny the allegations contained in paragraph 68 of the Second Amended Complaint.

69. Defendants admit the allegations contained in paragraph 69 of the Second Amended Complaint.

70. Defendants deny the allegations contained in paragraph 70 of the Second Amended Complaint.

71. Defendants deny the allegations contained in paragraph 71 of the Second Amended Complaint.

72. Paragraph 72 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 72 of the Second Amended Complaint.

11

73. Paragraph 73 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 73 of the Second Amended Complaint.

74. Paragraph 74 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 74 of the Second Amended Complaint.

75. Paragraph 75 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 75 of the Second Amended Complaint.

76. Paragraph 76 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 76 of the Second Amended Complaint.

77. Defendants deny the allegations contained in paragraph 77 of the Second Amended Complaint.

78. Paragraph 78 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 78 of the Second Amended Complaint.

79. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of the Second Amended Complaint.

## VI.

80. The allegations contained in paragraph 80 of the Second Amended Complaint refer to and
paraphrase Section 8(f)(i) of the Chairman Employment Agreement. The document speaks
for itself.

81. The allegations contained in paragraph 81 of the Second Amended Complaint refer to and
paraphrase Section 8(f) of the Chairman Employment Agreement. The document speaks for
itself.

82. Paragraph 82 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
82 of the Second Amended Complaint.

83. Moore's ownership shares are documented in the Sixth Amended and Restated LLC
Agreement dated April 15, 2009. The document speaks for itself.

84. Defendants deny the allegations contained in paragraph 84 of the Second Amended
Complaint.

85. Defendants admit the allegations contained in paragraph 85 of the Second Amended
Complaint.

86. Defendants admit the allegations contained in paragraph 86 of the Second Amended
Complaint.

13

87. Paragraph 87 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 87 of the Second Amended Complaint.

88. Defendants deny the allegations contained in paragraph 88 of the Second Amended Complaint.

89. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Second Amended Complaint.

90. Defendants deny the allegations contained in paragraph 90 of the Second Amended Complaint.

91. Paragraph 91 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 91 of the Second Amended Complaint.

92. Paragraph 92 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 92 of the Second Amended Complaint.

93. Defendants admit the allegations contained in paragraph 93 of the Second Amended Complaint to the extent that "LLC Agreement" refers to the LLC Agreement dated May 15, 2006 and the amendments thereunder.

14

94. Paragraph 94 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 94 of the Second Amended Complaint.

95. Paragraph 95 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 95 of the Second Amended Complaint.

## VII.

96. Paragraph 96 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 96 of the Second Amended Complaint.

97. Defendants deny the allegations contained in paragraph 97 of the Second Amended Complaint.

98. Paragraph 98 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 98 of the Second Amended Complaint.

## VIII.

99. Paragraph 99 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 99 of the Second Amended Complaint.

15

100. Paragraph 100 contains conclusions of law to which no response is required. Additionally, the allegations contained in paragraph 100 of the Second Amended Complaint refer to and paraphrase Section 5.3 of the Sixth Amended and Restated LLC Agreement. The document speaks for itself.

101. Defendants deny the allegations contained in paragraph 101 of the Second Amended Complaint.

102. Defendants admit the allegations contained in paragraph 102 of the Second Amended Complaint.

103. Paragraph 103 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 103 of the Second Amended Complaint.

104. Defendants deny the allegations contained in paragraph 104 of the Second Amended Complaint.

105. Defendants admit the allegations contained in paragraph 105 of the Second Amended Complaint.

106. Paragraph 106 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 106 of the Second Amended Complaint.

16

## CAUSE OF ACTION I

107. Defendants admit and deny the allegations in paragraphs 1 to 106 of the Second Amended Complaint as set forth above.

108. Paragraph 108 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 108 of the Second Amended Complaint.

109. Defendants deny the allegations contained in paragraph 109 of the Second Amended Complaint and repeat and re-allege, with the same force and effect as though set forth fully herein, the responses made to the allegations incorporated by reference into paragraphs 60 and 61.

## CAUSE OF ACTION II

110. Defendants admit and deny the allegations in paragraphs 1 to 106 and 108 of the Second Amended Complaint as set forth above.

111. Paragraph 111 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 111 of the Second Amended Complaint.

112. Paragraph 112 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 112 of the Second Amended Complaint.

17

113. Defendants deny the allegations contained in paragraph 113 of the Second Amended
Complaint and repeat and re-allege, with the same force and effect as though set forth fully
herein, the responses made to the allegations incorporated by reference into paragraphs 60
and 61.

## CAUSE OF ACTION III

114. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, and 111 to 112 of
the Second Amended Complaint as set forth above.

115. Paragraph 115 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
115 of the Second Amended Complaint.

116. Defendants deny the allegations contained in paragraph 116 of the Second Amended
Complaint.

## CAUSE OF ACTION IV

117. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, and 115
of the Second Amended Complaint as set forth above.

118. Paragraph 118 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
118 of the Second Amended Complaint.

119. Defendants deny the allegations contained in paragraph 119 of the Second Amended
Complaint.

18

## CAUSE OF ACTION V

120. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, and 118 of the Second Amended Complaint as set forth above.

121. Paragraph 121 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 121 of the Second Amended Complaint.

122. Paragraph 122 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 122 of the Second Amended Complaint.

123. Paragraph 123 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 123 of the Second Amended Complaint.

124. Defendants deny the allegations contained in paragraph 124 of the Second Amended Complaint.

125. Defendants deny the allegations contained in paragraph 125 of the Second Amended Complaint.

## CAUSE OF ACTION VI

126. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118, and 121 to 124 of the Second Amended Complaint as set forth above.

19

127. Paragraph 127 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 127 of the Second Amended Complaint.

128. Defendants deny the allegations contained in paragraph 128 of the Second Amended Complaint.

## CAUSE OF ACTION VII

129. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118, 121 to 124, and 127 of the Second Amended Complaint as set forth above.

130. Paragraph 130 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 130 of the Second Amended Complaint.

131. Defendants deny the allegations contained in paragraph 131 of the Second Amended Complaint.

## CAUSE OF ACTION VIII

132. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118 to 121, and 124 to 127 of the Second Amended Complaint as set forth above.

133. Paragraph 133 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 133 of the Second Amended Complaint.

20

## CAUSE OF ACTION IX

134. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118 to 121, 124 to 127, and 133 of the Second Amended Complaint as set forth above.

135. Paragraph 135 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 135 of the Second Amended Complaint.

136. Defendants deny the allegations contained in paragraph 136 of the Second Amended Complaint.

## CAUSE OF ACTION X

137. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118 to 121, 124 to 127, 133, and 135 of the Second Amended Complaint as set forth above.

138. Paragraph 138 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny all of the factual allegations contained in paragraph 138 of the Second Amended Complaint.

139. Defendants deny the allegations contained in paragraph 139 of the Second Amended Complaint.

## CAUSE OF ACTION XI

140. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118 to 121, 124 to 127, 133, 135, and 138 of the Second Amended Complaint as set forth above.

21

141. Paragraph 141 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
141 of the Second Amended Complaint.

142. Defendants deny the allegations contained in paragraph 142 of the Second Amended
Complaint.

## CAUSE OF ACTION XII

143. Defendants admit and deny the allegations in paragraphs 1 to 106, 108, 111 to 112, 115, 118
to 121, 124 to 127, 133, 135, and 138 of the Second Amended Complaint as set forth above.

144. Paragraph 144 contains conclusions of law to which no response is required. To the extent a
response is required, Defendants deny all of the factual allegations contained in paragraph
144 of the Second Amended Complaint.

145. Defendants deny the allegations contained in paragraph 145 of the Second Amended
Complaint.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses set forth below, none of the Defendants
acknowledge or concede that any or all of them have the burden of proof for any issues as to
which applicable law places the burden on Plaintiff.

22

## FIRST AFFIRMATIVE DEFENSE

The putative claims alleged against each and all of the Defendants in the Second

Amended Complaint fail to state a cause of action, in whole or in part, upon which relief can be

granted.

## SECOND AFFIRMATIVE DEFENSE

The putative claims alleged against each and all of the Defendants in the Second

Amended Complaint are barred by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

The putative claims alleged against each and all of the Defendants in the Second

Amended Complaint are barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

The putative claims alleged against each and all of the Defendants in the Second

Amended Complaint are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

The putative claims alleged against each and all of the Defendants in the Second

Amended Complaint are barred by Plaintiff's failure to mitigate any damages he allegedly

suffered.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages as a result of the purported conduct alleged against

each and all of the Defendants in the Second Amended Complaint.

## RESERVATION OF RIGHTS

Defendants reserve the right to add additional defenses as they become known during the

course of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint

with prejudice and grant Defendants such other, further and different relief as the Court deems

just and proper.

Dated: New York, New York
June 7, 2013

Akin Gump Strauss Hauer & Feld LLP

By: _____

Stephen M. Baldini
Samidh Guha
Roxanne Tizravesh
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036

*Counsel for Defendants*

24